UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                    Plaintiff,

    vs.

WELLS FARGO BANK, N.A., as Trustee,

                   Defendant.

—————————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 1:14-cv-09764-KPF-SN

CLASS ACTION

REPLY IN SUPPORT OF PLAINTIFF
ROYAL PARK INVESTMENTS SA/NV'S
MOTION FOR CLASS CERTIFICATION
AND APPOINTMENT OF CLASS
REPRESENTATIVE AND CLASS
COUNSEL

1296267_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................................1

II.    ARGUMENT ...............................................................................................................1

      A.    *Petrobras* Demonstrates that Wells Fargo's Ascertainability Contentions
           Are Meritless ....................................................................................................2

      B.    Determining the Extent of Defendants' Contractual and Tort Violations Is
           a Common Question Which Dwarfs Any Potential Individual Question
           that Could Arise ...............................................................................................4

              1.    There Will Be No Difficulties in Managing This Action ...........................8

              2.    Plaintiff's Damages Methodology Supports Certification........................10

      C.    Wells Fargo's Intra-Class Conflict Contentions Are Specious and
           Demonstrate Why Class Certification Is Necessary ...............................................12

      D.    Royal Park Has Established Numerosity ...............................................................15

      E.    Royal Park Has Vigorously Advocated for the Class and Is Both Adequate
           and Typical.....................................................................................................16

      F.    A Class Action Is Superior ...............................................................................19

              1.    Many Investors Will Be Unable to Recover Damages Absent
                      Certification ...............................................................................................19

              2.    The *Lehman* Settlement Is Irrelevant to Superiority or Class
                      Certification ...............................................................................................21

III.   CONCLUSION...........................................................................................................25

1296267_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*,
   No. 15-CV-6314-YGR, 2017 WL 1806583
   (N.D. Cal. May 5, 2017) ..................................................................................23

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 (DLI) (RML), 2013 WL 7044866
   (E.D.N.Y. July 18, 2013) ................................................................................20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..........................................................................................1

*Babcock v. Comput. Assocs. Int'l*,
   212 F.R.D. 126 (E.D.N.Y. 2003) ....................................................................16

*Bd. of Trs. of the S. Cal. Ibew-Neca Defined Contribution Plan v.*
   *Bank of N.Y. Mellon Corp.*,
   287 F.R.D. 216 (S.D.N.Y. 2012) ....................................................................15

*Biediger v. Quinnipiac Univ.*,
   No. 3:09cv621 (SRU), 2010 WL 2017773
   (D. Conn. May 20, 2010) .................................................................................13

*BlackRock Allocation Target Shares: Series S Portfolio v.*
   *Wells Fargo Bank, N.A.*,
   No. 14 Civ. 9371 (KPF) (SN), 2017 WL 1194683
   (S.D.N.Y. Mar. 30, 2017) ..............................................................................5, 7

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) (Opp. ) ....................................................2, 7, 21

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ......................................................................10

*Castano v. American Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) .............................................................................20

*Chambery v. Tuxedo Junction, Inc.*,
   10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014) .....................................................16

*Comcast Corp. v. Behrend*,
   __ U.S. __, 133 S. Ct. 1426 (2013).............................................................1, 11

**Page**

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..................................................................................20

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   296 F.R.D. 261 (S.D.N.Y. 2014) .........................................................................11

*Dungan v. Acad. at Ivy Ridge*,
   344 F. App'x 645 (2d Cir. 2009) .........................................................................20

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*,
   657 F.2d 890 (7th Cir. 1981) ...............................................................................12

*Evans v. State of Conn.*,
   967 F. Supp. 673 (D. Conn. 1997)........................................................................18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ...............................................................................10

*Gonzales v. Arrow Fin. Servs. LLC*,
   233 F.R.D. 577 (S.D. Cal. 2006) .........................................................................23

*Gortat v. Capala Bros.*,
   257 F.R.D. 353 (E.D.N.Y. 2009) ...........................................................................1

*Gregory v. Finova Capital Corp.*,
   442 F.3d 188 (4th Cir. 2006) ...............................................................................25

*Guippone v. BH S&B Holdings LLC*,
   No. 09 Civ. 1029 (CM), 2011 WL 1345041
   (S.D.N.Y. Mar. 30, 2011) ....................................................................................25

*Gulino v. Bd. of Educ.*,
   No. 96 CV 8414 (KMW), 2013 WL 4647190
   (S.D.N.Y. Aug. 29, 2013) ....................................................................................20

*Hart v. Rick's Cabaret Int'l, Inc.*,
   73 F. Supp. 3d 382 (S.D.N.Y. 2014)....................................................................11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1775 (JG) (VVP), 2014 WL 7882100
   (E.D.N.Y. Oct. 15, 2014),
   *report and recommendation adopted by*
   2015 WL 5093503 (E.D.N.Y. July 10, 2015) ........................................................1

1296267_1

**Page**

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ......................................................11

*In re Barrick Gold Sec. Litig.*,
314 F.R.D. 91 (S.D.N.Y. 2016) ........................................................11

*In re Facebook, Inc.*,
312 F.R.D. 332 (S.D.N.Y. 2015) ......................................................17

*In re IndyMac Mortg.-Backed Sec. Litig.*,
286 F.R.D. 226 (S.D.N.Y. 2012) ......................................................21

*In re Interpublic Sec. Litig.*,
No. 02 Civ. 6527 (DLC), 2003 WL 22509414
(S.D.N.Y. Nov. 6, 2003) ..................................................................11

*In re J.P. Morgan Stable Value Fund Erisa Litig.*,
No. 12-CV-2548 (VSB), 2017 WL 1273963
(S.D.N.Y. Mar. 31, 2017) ..................................................................5

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521-WHO, 2017 WL 679367
(N.D. Cal. Feb. 21, 2017)...................................................................7

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
MDL No. 1658 (SRC), 2009 WL 331426
(D.N.J. Feb. 10, 2009).....................................................................13

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
241 F.R.D. 435 (S.D.N.Y. 2007) ......................................................16

*In re MF Glob., Inc.*,
512 B.R. 757 (Bankr. S.D.N.Y. 2014).............................................25

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016), *cert. denied*,
__ U.S. __, 137 S. Ct. 1374 (2017).............................................13, 14

*In re Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016),
*aff'd in part and vacated in part on other grounds*,
No. 16-1914-cv, 2017 WL 2883874
(2d Cir. July 7, 2017) .....................................................................11

1296267_1

Page

*In re Petrobras Sec.*,
   No. 16-1914-cv, 2017 WL 2883874
   (2d Cir. July 7, 2017) ................................................................................ *passim*

*In re Rezulin Prods. Liab. Litig.*,
   210 F.R.D. 61 (S.D.N.Y. 2002) ...................................................................7

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................11

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   606 F. Supp. 2d 166 (D.N.H. 2009).............................................................13

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) .................................................................7

*Johnson v. Aljian*,
   257 F.R.D. 587 (C.D. Cal. 2009) .................................................................17

*Kalkstein v. Collecto, Inc.*,
   304 F.R.D. 114 (E.D.N.Y. 2015) .................................................................12

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) .................................................................10

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) .......................................................................13

*Lapin v. Goldman Sachs & Co.*,
   254 F.R.D. 168 (S.D.N.Y. 2008) .................................................................17

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   756 F. Supp. 2d 928 (N.D. Ill. 2010) ...........................................................9

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
   No. 02 C 5873, 2004 WL 574665
   (N.D. Ill. Mar. 22, 2004).............................................................................9

*Lee v. ABC Carpet & Home*,
   236 F.R.D. 193 (S.D.N.Y. 2006) .................................................................15

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).........................................................................1

- v -

**Page**

*Markham v. White*,
    171 F.R.D. 217 (N.D. Ill. 1997) .................................................................................23

*MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v.*
    *UBS Real Estate Sec. Inc.*,
    No. 12-cv-7322 (PKC), 2015 WL 797972
    (S.D.N.Y. Feb. 25, 2015) ............................................................................................5

*McDaniel v. Cty. of Schenectady*,
    No. 1:04-CV-757, 2005 WL 1745566
    (N.D.N.Y. July 21, 2005) ...........................................................................................19

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ....................................................................................7, 20

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
    No. 08 Civ. 5653 (PAC), 2014 WL 1013835
    (S.D.N.Y. Mar. 17, 2014) ............................................................................................5

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd sub nom.*
    *N.J. Carpenters Health Fund v. Rali Series 2006-Q01*,
    477 F. App'x 809 (2d Cir. 2012) ...............................................................................12

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    No. 08-CV-5310 (DAB), 2016 WL 7409840
    (S.D.N.Y. Nov. 4, 2016) .............................................................................................12

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ........................................................................................8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) .......................................................................................20

*Pa. Ave. Funds v. Inyx Inc.*,
    No. 08 Civ. 6857 (PKC), 2011 WL 2732544
    (S.D.N.Y. July 5, 2011) .............................................................................................18

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
    277 F.R.D. 97 (S.D.N.Y. 2011) ............................................................................12, 21

Page

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of*
  *City of Chi. v. Bank of N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014), *cert. denied*,
  __ U.S. __, 136 S. Ct. 796 (2016) ........................................................................13

*Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) ...................................................................19, 20

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ..........................................................................15

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  No. 14-CV-04394 (AJN) (BCM), 2016 WL 4613390
  (S.D.N.Y. Aug. 31, 2016) ............................................................................14, 19

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
  319 F.R.D. 122 (S.D.N.Y. 2016) .......................................................................19

*Spagnola v. Chubb Corp.*,
  264 F.R.D. 76 (S.D.N.Y. 2010) ....................................................................13, 14

*Sykes v. Mel Harris & Assocs., LLC*,
  285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd*,
  780 F.3d 70 (2d Cir. 2015) ..........................................................................13

*Sykes v. Mel S. Harris & Assocs. LLC*,
  780 F.3d 70 (2d Cir. 2015) ...........................................................................8

*Tibble v. Edison Int'l*,
  729 F.3d 1110 (9th Cir. 2013) .......................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
  __ U.S. __, 136 S. Ct. 1036 (2016) ..................................................................4

*United States Fid. & Guar. Co. v. Madison Fin. Corp.*,
  No. 01 Civ. 3998 CM, 2002 WL 31731020
  (S.D.N.Y. Dec. 4, 2002) ..............................................................................15

*United States v. City of New York*,
  276 F.R.D. 22 (E.D.N.Y. 2011) ......................................................................20

*Vaccariello v. XMSatellite Radio*,
  295 F.R.D. 62 (S.D.N.Y. 2011) .......................................................................7

- vii -

**Page**

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................................................5

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982).........................................................................................20

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b)........................................................................................................................9

Federal Rules of Civil Procedure
  Rule 23...............................................................................................................1, 7, 21
  Rule 23(b)(3)(D)..........................................................................................................8

## I.    INTRODUCTION

This is the epitome of an action that should be certified for class treatment.  The time and effort required to prove Class members' claims will both generate common answers, and dwarf any individual issues, none of which predominate or render class treatment unmanageable.

Wells Fargo's pretextual objections to certification, asserted solely to avoid liability for its wide-scale failures to comply with its obligations as trustee, contradict controlling case law and are unsupported by the record.  Certification is the most efficient mechanism to provide common answers regarding the Class' claims, avoids the likelihood of inconsistent findings, and conserves the parties and the Court's resources.  The Motion should be granted.

## II.    ARGUMENT

The "'general preference'" of the Second Circuit Court of Appeals is "'granting rather than denying class certification.'"  *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (citing *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).  Rule 23 should be construed "'liberal[ly] rather than restrictive[ly].'"  *Id.*[1]  While it "''may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,'''" *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426, 1432 (2013), class certification is not a "free-ranging merits inquir[y]."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).  The overarching purpose is "'not to adjudicate the case [but] to select the method best suited to adjudication of the controversy fairly and efficiently.'"  *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG) (VVP), 2014 WL 7882100, at *29 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted by* 2015 WL 5093503, at *1 (E.D.N.Y. July 10, 2015).

---

[1]    Citations are omitted and emphasis is added throughout, unless otherwise noted.  Defined terms have the same meaning as in Royal Park's opening memorandum (Dkt. No. 359) ("Motion").  Unless otherwise noted, exhibits are to the Wood Decl. (Dkt. No. 360).

- 1 -

A.    ***Petrobras* Demonstrates that Wells Fargo's Ascertainability Contentions Are Meritless**

*In re Petrobras Sec.*, No. 16-1914-cv, 2017 WL 2883874 (2d Cir. July 7, 2017), undermines Wells Fargo's ascertainability contentions ***in their entirety***, and confirms that defendant's overreaching interpretation of *Brecher* was wrong.  *See* Opp. at 3-13.

*Petrobras* holds that a class is ascertainable when "it is defined using objective criteria that establish a membership with definite boundaries," and found plaintiffs had established ascertainability with respect to a proposed class which purchased Petrobras debt securities in "'domestic transactions,'" notwithstanding the need to "assess each class member's over-the-counter transactions for markers of domesticity under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010)," and in spite of defendants' "concerns over the availability and content of the necessary transaction records."[2]  *Id.* at *1, *6.  In other words, the Second Circuit rejected ***the identical*** contentions made here by Wells Fargo concerning ascertainability.[3]  *See* Opp. at 4-7.  The Second Circuit also rejected any "administrative feasibility" requirement for determining whether putative class members fall within the class definition, again refuting Wells Fargo's contentions to the contrary.  *Petrobras*, 2017 WL 2883874, at *8; Opp. at 3. And it rejected the appellants contentions (also advanced by Wells Fargo) that plaintiffs were required to "provide adequate 'assurance that there can be "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition,"'" holding that ascertainability "does not directly concern itself with the plaintiffs' ability to offer ***proof***

---

[2]    *Petrobras* confirms that Wells Fargo's (misplaced) contentions about purported difficulties in identifying Class members (*see, e.g.*, Opp. at 1, 4-9) are irrelevant to ascertainability.  *Petrobras*, 2017 WL 2883874, at *12 ("Appellants vigorously challenge the ***practicality*** of making the domesticity determination for each putative class member, but as we explain above, the ascertainability analysis is limited to narrower question of whether those determinations are objectively ***possible***.") (emphasis in original).

[3]    While Wells Fargo disparages certain of the authority relied on by Royal Park, such as *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1129 (9th Cir. 2017) (Opp. at 7), the *Petrobras* court itself relied upon *Briseno* and endorsed its reasoning in rejecting defendants' interpretation of *Brecher*.  *Petrobras*, 2017 WL 2883874, at *10 n.17.

- 2 -

*of membership* under a given class definition." *Petrobras*, 2017 WL 2883874, at *11-*12 (emphasis in original).

> *Petrobras* acknowledged that the domesticity determination at issue there can be complex:

> [A] transaction is considered "domestic if [1] irrevocable liability is incurred or [2] title passes within the United States." In other words, for a transaction to qualify as domestic, either (1) the purchaser must have "incurred irrevocable liability within the United States to take and pay for a security, or . . . the seller [must have] incurred irrevocable liability within the United States to deliver a security," or (2) legal title to the security must have transferred in the United States. The location or residency of the buyer, seller, or broker will not necessarily establish the situs of the transaction. Rather, plaintiffs demonstrate the location where irrevocable liability was incurred or legal title transferred by producing evidence "including, but not limited to, facts concerning the formation of the contracts, the placement of purchase orders, . . . or the exchange of money."

*Id*. at *6. As with the factors relevant to Wells Fargo's purportedly necessary conflict of law analysis, the court found these to be "clearly objective," while stressing that the ***legal analysis*** required to determine domesticity from these criteria is relevant only to predominance, "***and are not properly analyzed as issues of ascertainability***." *Id.* at *12 & n.21. Wells Fargo's contention that "the objective criteria that the court identified as necessary to bounding a class in *Petrobras* and *Brecher* . . . are not present in this case," ignores this portion of *Petrobras*. *See* Dkt. No. 372 at 2.

Here, the proposed Class meets the "modest threshold requirement" articulated by *Petrobras*. The proposed Class definition uses the objective criteria of holders of the Covered Trusts during a defined period of time, and who suffered harm as result of Wells Fargo's alleged breaches. Motion at 8. In fact, other than arguing that the proposed Class definition creates a "fail-safe class[]"[4] (an argument that was already rejected in *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.* ("*Deutsche Bank*"), No. 14-CV-4394 (AJN), Dkt. No. 350 at 25 (S.D.N.Y. Apr. 4, 2017)), Wells Fargo has not contended that the proposed Class definition was indeterminate in any way.

---

[4]    Opp. at 13.

**B.      Determining the Extent of Defendants' Contractual and Tort Violations Is a Common Question Which Dwarfs Any Potential Individual Question that Could Arise**

The predominance inquiry asks whether determining the extent of Wells Fargo's contractual and tort violations is a "more substantial" task than resolving any individual issues that may arise. *See* Motion at 16; *Petrobras*, 2017 WL 2883874, at *13 (court should "'ask whether the common, aggregation-enabling, issues in the case are ***more prevalent or important*** than the non-common, aggregation-defeating, individual issues'") (citing *Tyson Foods, Inc. v. Bouaphakeo*, __ U.S. __, 136 S. Ct. 1036, 1045 (2016)).  Here, common questions clearly predominate.

The Motion established that evidence developed in this action will provide common answers establishing Wells Fargo's disregard of its contractual obligations and breaches of trusts.  Motion at 13-18.  Fundamentally, as Royal Park's expert W. Scott Dalrymple explains and Wells Fargo's expert Dr. Ethan Cohen-Cole demonstrates in his exhibits, each trust is bounded together by its common waterfall. Ex. 17, ¶¶27-40 (citing Cohen-Cole Report, Ex. 7).  Regardless of the different Certificates within each trust, the individual loans or originators, or the timing of alleged breaches, the economic impact of Wells Fargo's misconduct as to any individual loan, group of loans, or servicer, must necessarily be determined first at the trust level before it can be extrapolated to individual Certificates and investors through the waterfall. Ex. 17, ¶35.  In addition to Wells Fargo's common policies and procedures, which themselves support liability and imprudence on a class-wide basis, the waterfalls are the glue that bind the Class together.  Ex. 6, ¶¶14, 30-15; Ex. 17, ¶65.

The fact that a trust's ***entire waterfall*** must be recreated in a "but-for" world where Wells Fargo complied with its obligations in order to determine any individual Class member's damages strongly demonstrates why class certification is appropriate.  Ex. 17, ¶¶59-60.  This process necessarily computes both trust-level and certificate-level damages in "'one stroke,'" through which

the damages of individual Class members can be determined.  Ex. 17, ¶¶41-44; *In re J.P. Morgan Stable Value Fund Erisa Litig.*, No. 12-CV-2548 (VSB), 2017 WL 1273963, at *15 (S.D.N.Y. Mar. 31, 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 WL 1013835, at *5 (S.D.N.Y. Mar. 17, 2014).

Wells Fargo contends that determining damages from its failure to notify investors requires a "holder-by-holder inquiry into what holders would have done differently."  Opp. at 17.  But the PSAs required Wells Fargo to provide notice *and* enforce the relevant warrantor's obligation for the benefit of the trust without reference to any individual Certificateholders' preferences.  Complaint, ¶50; *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, N.A.*, No. 14 Civ. 9371 (KPF) (SN), 2017 WL 1194683, at *10-*11 (S.D.N.Y. Mar. 30, 2017) (rejecting the same contention).  What investors hypothetically "would have done differently" is irrelevant.

Wells Fargo also contends that servicer breach claims must be proven "loan-by-loan and holder-by-holder," citing its own expert's, Dr. Christopher James, contention that a servicer default only affects "'investors in the particular tranche or tranches of Certificates experiencing realized losses.'"  Opp. at 17-18.  Dr. James' contention is misleading because he ignores that losses caused by servicer breaches, or any other breaches which cause losses, will not just affect the Certificates experiencing the losses, but will reduce the value of more senior Certificates through a reduction in subordination.  Ex. 17, ¶35.  Dr. James admitted that this could be the case, and that he had himself performed such analyses in his career.[5]  Wood Reply Decl., Ex. R at 47:18-49:14.  Wells Fargo contends in its July 14, 2017 letter that certain of the issues it previously identified as being relevant

---

[5]   Wells Fargo's contentions regarding "materiality" support certification.  *See* Opp. at 18.  Because "materiality" is determined based on "how the deviation affects the Certificateholders," such analyses must be conducted on a classwide basis by definition.  *MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec. Inc.*, No. 12-cv-7322 (PKC), 2015 WL 797972, at *3 (S.D.N.Y. Feb. 25, 2015); *see also* Dkt. No. 273 at 10.

to ascertainability (Opp. at 4-13) nevertheless preclude certification because they show that common questions do not predominate.  Dkt. No. 372 at 2.  Not so.

*Petrobras* held that the district court failed to analyze whether individual questions regarding domesticity predominated over common questions.  2017 WL 2883874, at *14-*16.  But the Second Circuit took no position on the ultimate outcome.  To the contrary, the court "emphasize[d]"

> that district courts are authorized to implement management strategies tailored to the particularities of each case. In addition to modifying class definitions and issuing class-wide rulings, district courts can, for example, bifurcate the proceedings to home in on threshold class-wide inquiries; sever claims not properly adjudicated on a class-wide basis to isolate key common issues; or certify subclasses that separate class members into smaller, more homogenous groups defined by common legal or factual questions.

*Id*. at *16.  In addition, the court held that individual questions regarding domesticity, however complex, **did not necessary predominate** over common questions, and that, as relevant to that case, there are a "wide range of conceivable circumstances in which plaintiffs may assert class claims in connection with foreign-issued securities that do not trade on a domestic exchange":

> For instance, a district court might find that the transaction records for a particular security among particular parties display certain common indicia of domesticity. Class plaintiffs may propose a mechanism for assembling a representative sample of the manner in which a given security will trade, with an emphasis on the domesticity factors highlighted in *Absolute Activist*.  A district court could also carefully weigh the relationship between common and individual questions in the case and determine that any variation across plaintiffs is, on balance, insufficient to defeat predominance.

*Id.* at *16 n.27.

Here, the speculative issues identified by Wells Fargo fail to defeat predominance, and can be easily dealt with in accordance with *Petrobras*, including through "sampling."  *Id.*

For example, Wells Fargo contends that while claims against a trustee transfer automatically under New York law, this rule "is unique," and that "'New York is the only state to have enacted such a provision for the automatic assignment of bondholders' claims.'"  Opp. at 5.  If this is the

- 6 -

case, there will be no dispute whatsoever regarding such transfers – either they occurred solely in New York and New York law applies, or they occurred outside of New York and there is no automatic transfer. The possibly of a dispute between two parties (hypothetically involving different states), to say nothing of a dispute which would overwhelm the common questions at issue, is entirely speculative and cannot be a basis for defeating certification. *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017).[6]

Wells Fargo's contentions regarding the trade data produced to date are misleading. Opp. at 9-10. Because Royal Park is not required to identify any Class members at the certification stage, it did not set out to obtain complete transaction records regarding the Certificates at this time. Instead, it merely subpoenaed the largest DTC participants for documents sufficient to establish numerosity.[7] *See* Wood Decl., ¶4; Ex. 6, ¶45. Those records show that identifying individual Class members is not just "possible," it is entirely feasible and already partially complete.[8]

---

[6]   Wells Fargo's contention regarding statute of limitation differences, if even relevant, are similarly resolvable and there is no basis to believe they would overwhelm common questions. *E.g.*, *BlackRock Allocation*, 2017 WL 1194683, at *32 ("The silver lining of the 'proliferation of RMBS litigation in America involving claims that accrued in Germany' is that 'American courts have recently had the opportunity to interpret the German statute of limitations applicable to this case.'"). In any event, "'the mere fact that [an affirmative statute of limitations defense] may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 303 (S.D.N.Y. 2003). If determinations of which statute of limitations applies are required, the application of such statute is formulaic and subject to common proof, as it will be Wells Fargo's knowledge of a breach of R&W or EOD that initiates its obligations under the Governing Documents and commences any statute of limitation. Thus, Wells Fargo's cases are inapposite because in each, the affirmative defenses were predicated on individualized issues of plaintiffs' knowledge. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) (statute of limitations defense required individual proof where statute began based on individual plaintiffs' discovery of alleged fraud); *Vaccariello v. XMSatellite Radio*, 295 F.R.D. 62, 67-68 (S.D.N.Y. 2011) (issues of individual plaintiffs' knowledge implicated by voluntary payment doctrine); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 67 (S.D.N.Y. 2002) (individual issues as to whether each plaintiff followed doctor's instructions with regard to drug usage).

[7]   While there is no evidence to suggest that complete trade data is unavailable, even if this were the case it would not defeat certification, it would at worst result in some potential Class members who would be unable to perfect their claims, which would accrue to Wells Fargo's benefit. *See ConAgra*, 844 F.3d at 1129 (Rule 23 "'recognizes it might be ***impossible*** to identify some class members'") (emphasis in original).

[8]   The BlackRock plaintiffs characterized the process of identifying prior owners as a "multi-layered inquiry." Kcehowski Decl. (Dkt. No. 383), Ex. 1 at 2; *see* Opp. at 9. To the extent the BlackRock plaintiffs contended that the process was unreasonable or impossible, the discovery of DTC participants undertaken by Royal Park demonstrates that with the appropriate discovery, identifying prior owners is indeed possible. Ex. 17, ¶¶34-36, 74.

- 7 -

Far from supporting their contentions, Wells Fargo's purported "example" of Royal Park's standing and assignment **contradicts** their apocalyptic prognostications of individual inquires and fact-intensive determinations. *See* Opp. at 10. Royal Park acquired its Certificates in February 2010 from the liquidation of the Nassau CDO. Complaint, ¶¶30-32. At that time, they had a combined $24.4 million in remaining principal balance, and Royal Park alleges that it suffered losses caused by Wells Fargo's contractual violations and breach of trust which took place after its acquisition of the Certificates. Wood Reply Decl., ¶2; Complaint, §IV.C. Because Royal Park alleges it was damaged by Wells Fargo's misconduct after the date its acquired the Certificates, no inquires whatsoever are necessary to demonstrate Royal Park's standing. *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 162 (2d Cir. 2012). Further, while Royal Park alleges it was assigned claim rights by the Nassau CDO for prior damages, and Wells Fargo provides no evidence to the contrary, the inquiry is irrelevant. *See* Opp. at 10. As the former owner of the super-senior tranches of the CDO, any recovery payable to the Nassau CDO would flow directly to Royal Park.[9] *See* Wood Reply Decl., Ex. A. The example of Royal Park's ownership demonstrates that there will be no actual issues with identifying Class members and the extent of their claims.

### 1. There Will Be No Difficulties in Managing This Action

Fundamentally, predominance is a pragmatic inquiry, and the Court should ask, "'how a trial on the merits would be conducted if a class were certified.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 86 (2d Cir. 2015); *see also* Fed. R. Civ. P. 23(b)(3)(D) (court should consider "the likely difficulties in managing a class action"); *Petrobras*, 2017 WL 2883874, at *13.

---

[9]     Wells Fargo cites Commerzbank as an example of an investor that acquired and retained litigation rights against a trustee. Opp. at 10-11. But Wells Fargo raised the issue of Commerzbank's standing in its motion to dismiss, and Judge Failla did not credit its contentions. *See* Dkt. No. 115 at 35.

Here, a trial can be conducted in the same way that other complex securities class actions are conducted. For example, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-C-5893 (N.D. Ill.), was a securities class action, litigated by proposed class counsel here, where plaintiffs alleged that defendants pumped up the price of Household's stock by engaging in undisclosed predatory-lending practices, hiding the negative effects of those practices on the quality of Household's loan portfolio, and inflating net income through improper accounting. *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02 C 5873, 2004 WL 574665 (N.D. Ill. Mar. 22, 2004). As the truth was revealed to the market, investors lost billions. *See id.*

Recognizing that there were both common questions regarding defendants' liability, as well as individual questions regarding class members' damages and reliance, the court divided the trial into two phases. *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 930 (N.D. Ill. 2010). In Phase I, the court held a jury trial wherein the jury determined that certain of the defendants violated §10(b) of the Securities Exchange Act of 1934 with respect to numerous statements made from March 23, 2001 to October 11, 2002, and determined the corresponding inflation per share in Household's stock price from March 23, 2001 to October 11, 2002.[10] *Id.* Thereafter, the court conducted Phase II, wherein the court addressed defendants' purported affirmative defenses "as well as the calculation of damages as to each plaintiff." *Id.* In this phase, defendants sent interrogatories to class members, served discovery on 131 entities including the plaintiffs, custodian banks, absent class members, and class members' outside investment advisors,

---

[10]   The fact that *Household* made multiple misstatements and that the inflation per share varied over time is consistent with the allegations here, where plaintiff intends to prove that Wells Fargo's contractual violation occurred throughout the Class Period, resulting in damages that varied over the life of the Certificates. It is also consistent with this case in that Dr. James, whose opinion Wells Fargo relies on here, offered unreliable opinions in *Household*. *Household*, No. 02-C-5893, Pretrial Conference Transcript at 51:6-12 (N.D. Ill. May 18, 2016) (Dkt. No. 2281) ("I don't believe that under Daubert it would be appropriate for [Professor James] to testify. I don't believe that the reasoning or methodology underlying his testimony is – has been shown to be scientifically valid under Daubert. So that testimony is going to be excluded."). When asked if his opinions have ever been excluded during his deposition, Dr. James failed to disclose *Household*, contending that he could not recall any instances. Wood Reply Decl., Ex. R at 26:24-27:1, 29:15-19.

1296267_1

and took depositions of certain class members.  Wood Reply Decl., Ex. B at 20-21.  As a result of this process, and with the assistance of a special master, thousands of class members' claims were approved and still more were in the process of being resolved categorically when defendants appealed the judgment.[11]  Ultimately, the case settled for $1.575 billion, and thousands of class members received recoveries for losses caused by defendants' misconduct.

There is no reason why the Court cannot manage this action in a similar fashion, and *Petrobras* expressly encourages such an approach.  *Petrobras*, 2017 WL 2883874, at *16 ("we emphasize that district courts are authorized to implement management strategies tailored to the particularities of each case . . . district courts can, for example, bifurcate the proceedings to home in on threshold class-wide inquiries"); *see also* Motion at 18.  The extent of Wells Fargo's contractual and tort liability – the overarching issues in this case – can be determined in an initial phase, and any individual questions, to the extent there are any, can be resolved in a subsequent phase.  Therefore, common issues predominate.

### 2.    Plaintiff's Damages Methodology Supports Certification

While "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification,'" *Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 382 (S.D.N.Y. 2015), Royal Park has demonstrated that the method of calculating damages *is* common to the Class, even if the amount of a Class members' damages may vary, and that such method supports predominance.  Motion at 16-18.  Royal Park's proposed methodology easily meets the low threshold required for commonality.  *Carpenters Pension Tr. Fund of St. Louis v. Barclays*

---

[11]    The Seventh Circuit reversed the district court's judgment and remanded for a new trial on discrete issues. *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015).  However, the Seventh Circuit expressly approved of the court's Phase II procedure, and held that "the district court may rely on the results from Phase II." *Id.*

*PLC*, 310 F.R.D. 69, 99 (S.D.N.Y. 2015); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 271 (S.D.N.Y. 2014) (same).  Wells Fargo's critiques are unavailing.

Wells Fargo contends that Dalrymple "has not built a damages model" (Opp. at 21), but he was not required to.  *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 105 (S.D.N.Y. 2016); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015).  Wells Fargo contends that Dalrymple has not committed to a cash flow or certificate value measure of damages (Opp. at 21), but Royal Park alleges ***both*** measures of damages, making Dalrymple's proposal consistent with Royal Park's "liability case." *Comcast*, 133 S. Ct. at 1433.  Wells Fargo contends that Dalrymple's methodology lacks specifics (Opp. at 21), but Dalrymple and Wells Fargo's own experts confirm that such specifics can be incorporated, and the level of detail demanded by Wells Fargo is not required at this stage.  *See, e.g.*, Ex. 17, ¶¶25, 65; *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 371-72 (S.D.N.Y. 2016) ("It is not necessary, however, to resolve the detailed disputes over plaintiffs' damages model at the class certification stage."), *aff'd in part and vacated in part on other grounds*, No. 16-1914-cv, 2017 WL 2883874 (2d Cir. July 7, 2017).  Wells Fargo contends that Dalrymple does not measure impact to investors (Opp. at 21), but there is no prohibition on aggregate damage calculations.  *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 391 (S.D.N.Y. 2014).  In any case, calculating damages for each Class member is routine and never a basis to deny certification. Ex. 17, ¶¶28-29; *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 277 (S.D.N.Y. 2008); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2003 WL 22509414, at \*5 (S.D.N.Y. Nov. 6, 2003) ("If individualized damage issues do arise, an appropriate allocation may be made at a later stage . . . . ").  Finally, Wells Fargo's contention that Dalrymple's methodology is not consistent with Royal Park's theory of liability is based on cherry-picked and distorted snippets of testimony.  Opp. at 22.  Dalrymple has

- 11 -

clearly articulated Royal Park's theory of liability, as well as how his methodology is consistent with that theory.[12]  *See, e.g.*, Ex. 6, ¶¶36-39; Ex. 17, ¶¶72-84.  Nothing more is required.

### C.    Wells Fargo's Intra-Class Conflict Contentions Are Specious and Demonstrate Why Class Certification Is Necessary

Wells Fargo's conflict contentions must be viewed with skepticism:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," . . . it is a bit like permitting a fox, although with pious countenance, to take charge of the chicken house.

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

Courts have rejected the notion that purported conflicts between holders in different tranches are sufficient to defeat certification, and Wells Fargo fails to distinguish *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08-CV-5310 (DAB), 2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016), which wholly rejected identical assertions.[13]  Motion at 11-12; *see also Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 108 (S.D.N.Y. 2011) ("'While investors' repayment rights may vary slightly based on the seniority of the tranches they purchased, this does

---

[12]   Dalrymple did discuss his understanding of Royal Park's allegations, as well as what constitutes "a breach." Wood Reply Decl., Ex. Q at 266:2-267:3.  The fact that he would rely on other experts to provide inputs into his damage is entirely appropriate, and Dr. James testified that he has done the same thing. Wood Reply Decl., Ex. R at 112:18-114:3. And Dr. James confirmed that many of his critiques of Dalrymple may not even be legally relevant because he is not qualified to opine on their relevance as a matter of law.  *E.g.*, *id.* at 179:14-180:9, 187:18-189:3.

[13]   Wells Fargo's perfunctory attempt to distinguish *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd sub nom. N.J. Carpenters Health Fund v. Rali Series 2006-Q01*, 477 F. App'x 809 (2d Cir. 2012), and *Royal Bank of Scot.*, 2016 WL 7409840, is unavailing.  The fact that both *Residential Capital* and *Royal Bank of Scot.* were Securities Act cases played no role in each court's determination regarding defendants' concerns being "largely conjectural."  272 F.R.D. at 164-65; 2016 WL 7409840, at *6-*7.  Moreover, Wells Fargo's contention that its "inactions . . . may have benefited some holders, harmed others, and had no effect on still others" (Opp. at 28) is inapposite to this action. Ex. 17, ¶96 ("I understand the Trustee's obligations, along with any corresponding wrongful actions or inactions, are governed by contractual and common law terms and are independent of the 'incentives' of individual class members."). Wells Fargo's attempt to distinguish *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114 (E.D.N.Y. 2015), is equally unavailing.  The court in *Kalkstein* found that the plaintiff was an adequate class member because his interests were not "'antagonistic to the interests of the other members of the Class'" given that their claims arose from the same course of conduct by the defendant.  *Id.* at 121.  As here, all Class claims arise from the same course of conduct – Wells Fargo's failure to fulfil its duties as a trustee for the two Covered Trusts.

1296267_1

not present a "fundamental" conflict within the class.'"). To the extent any Certificateholders actually "'have not realized any losses'" (Opp. at 25), from the alleged misconduct, there would be no conflict because they would not be Class members by definition. Motion at 1.[14] *See Biediger v. Quinnipiac Univ.*, No. 3:09cv621 (SRU), 2010 WL 2017773, at *7 (D. Conn. May 20, 2010) ("[B]ecause they are likely to benefit . . . are not class members. Therefore, there is no conflict.").[15]

Wells Fargo's timing and "different remedies" contentions are pretextual and unsupported by any admissible evidence. *See* Opp. at 26; *see also Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) ("'The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage.'"), *aff'd*, 780 F.3d 70 (2d Cir. 2015). They presuppose that the dates of Wells Fargo's breaches and recoveries, as well as the form of relevant recovery, are arbitrary determinations subject to manipulation; not so. *See* Ex. 6, ¶¶93-98. They will be determined by the facts adduced in discovery. Ex. 17, ¶¶24-25. *Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010), supports certification. *See* Opp. at 27.[16] There, the court found that class representatives'

---

[14]   During his testimony, Dr. James admitted that he did not know whether there were any actual conflicts between Class members, only that there was "a potential for conflict" – a conclusion he reached without any discernable methodology. Wood Reply Decl., Ex. R at 91:10-12.

[15]   Defendant's contentions are also irreconcilable with its contractual obligations, which did not permit it to ignore its contractual obligations based on the individual Certificateholder preferences. Dkt. No. 291 ("The PSAs, Trust Agreements, MLPAs, and SSA (together, the 'Governing Agreements') . . . dictate the scope of Defendant's duties to Plaintiffs."); *Ret. Bd. of the Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 156 (2d Cir. 2014) ("'The terms of the securitization trusts as well as the rights, duties, and obligations of the trustee, seller, and servicer are set forth in [governing agreements, frequently styled as PSAs].'"), *cert. denied*, __ U.S. __, 136 S. Ct. 796 (2016).

[16]   Wells Fargo's other authority is not persuasive. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 310-11 (5th Cir. 2007), has been repeatedly criticized inside and outside the Second Circuit. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 606 F. Supp. 2d 166, 169 (D.N.H. 2009) ("I am unpersuaded by the Fifth Circuit's reasoning . . . ."); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, MDL No. 1658 (SRC), 2009 WL 331426, at *12 (D.N.J. Feb. 10, 2009) ("Defendants have failed to persuade this Court to follow *Langbecker*."); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1123 (9th Cir. 2013) ("Respectfully, we disagree."). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016), *cert. denied*, __ U.S. __, 137 S. Ct. 1374 (2017), does not remotely stand for the proposition cited by defendants. That case, in which there were actual objections by class members (there are none here), involved a conflict between the "(b)(3) class, which are pursuing solely monetary relief, and merchants in the

divergent interpretations of a contract were irrelevant because "whatever the contract meant, it had the same meaning with respect to all policyholders, and the final determination of that meaning does not depend on Plaintiffs' own subjective understanding."[17]  *Spagnola*, 264 F.R.D. at 94.

For the same reasons, Wells Fargo's contention that "theories differ on what those contractual and common law terms mean in practice" (Opp. at 27) is irrelevant and not supported by the record.  "The historical opinion of a non-party to a contract (even if the non-party became a third party beneficiary) can neither alter the contractual terms nor assist the Court in interpreting them." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co*., No. 14-CV-04394 (AJN) (BCM), 2016 WL 4613390, at *12 n.11 (S.D.N.Y. Aug. 31, 2016).  And as this Court knows from its own experience, the largest disputes regarding the "contractual and common law terms" at issue, were ones in which **all** of the separate plaintiffs in these coordinated actions were required to, and did, file joint briefing taking **identical**, not disparate, positions.  *See, e.g.*, Dkt. No. 33; Dkt. No. 220; Dkt. No. 300.

Wells Fargo's contention that Royal Park will take positions "that advance its own interests to the detriment of absent class members" (*see* Opp. at 27) is baseless rhetoric, and is contradicted by the fact that Royal Park is itself a senior holder in a number of the trusts on which it has brought litigation, and yet has proposed a consistent damages methodology across all of its cases.[18] Moreover, Royal Park's Chairman has declared that "Royal Park understands that, as class

---

(b)(2) class, defined as those seeking only injunctive relief," and lacked a "'structural assurance of fair and adequate representation.'" *Id.* Here, there is no evidence whatsoever of actual conflicts regarding the transfer of litigation claims, and even if there were, such conflicts would not impact the Class members' desire to maximize the recovery from Wells Fargo.

[17]   The court found that the class representatives were inadequate for a combination of other reasons. *Id.*

[18]   *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-02590 ("*U.S. Bank*"), Class Action Complaint and Verified Derivative Action for Breach of the Trust Indenture Act, Breach of Contract, and Breach of Trust, ¶27 (S.D.N.Y. Apr. 11, 2014) (Dkt. No. 2); *U.S. Bank*, Plaintiff Royal Park Investments SA/NV's Memorandum of Law in Support of Its Motion For Class Certification and Appointment of Class Representative and Class Counsel (S.D.N.Y. Dec. 21, 2016) (Dkt. No. 151); *Deutsche Bank*, No. 14-CV-04394, Class Action Complaint and Verified Derivative Action for Breach of the Trust Indenture Act, Breach of Contract, and Breach of Trust, ¶30 (S.D.N.Y. June 18, 2014) (Dkt. No. 1).

1296267_1

representative, it owes a fiduciary duty to all members of the class and will seek to obtain the largest recovery for the class."[19] Ex. 13, ¶6. Potential conflicts with the BlackRock plaintiffs are similarly specious. *See* Opp. at 28. The BlackRock plaintiffs **have not** contested Royal Park's bid to be a Class representative in *any* of Royal Park's trustee actions. Nor have *any* of the other plaintiffs in these coordinated actions, or any other investors whatsoever. It speaks volumes that the only party contending that Royal Park is inadequate to lead this action against Wells Fargo is Wells Fargo itself. No conflicts preclude certification.

### D. Royal Park Has Established Numerosity

Dalrymple has identified at least 185 potential Class members.[20] Ex. 6, ¶185; Ex. 17, ¶¶100-105. Although numerosity is presumed in the Second Circuit where there are at least 40 class members, Wells Fargo argues that no Class member can be counted for purposes of numerosity until it is proven to be an eligible claimant. That is not the law.[21] *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y. 2006) ("Although the number of plaintiffs might change [the putative class of 44], currently is at least 40, and thus numerosity is presumed."); *United States Fid. & Guar. Co. v.*

---

[19]   Wells Fargo deposed Mr. de Clercq and never questioned Royal Park's commitment to the Class.

[20]   Wells Fargo's contention that Dalrymple did not identify the "unique investors" he counted is erroneous. *See* Opp. at 29. In fact, Wells Fargo's own expert identified various individual investors who owned Certificates during the relevant time period. Ex. 15, ¶¶27-28, 33, 45, 47, 57-58. And Dalrymple described his process during his deposition. Wood Reply Decl., Ex. Q at 24:16-25:15.

[21]   *Bd. of Trs. of the S. Cal. Ibew-Neca Defined Contribution Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 225 (S.D.N.Y. 2012), does not support Wells Fargo's contentions. Opp. at 30. In *Bd. of Trs.*, defendants established that there were only nine class members. *Bd. of Trs.*, 287 F.R.D. at 223. Wells Fargo has not even attempted to make such a showing. The court in *Bd. of Trs.* also denied class certification because it found that a class of nine members was "not so numerous that joinder is impracticable." *Id.* at 225 ("'Generally, courts will find that the numerosity requirement . . . has not been satisfied when the class comprises 21 or fewer.'"). Wells Fargo, by contrast, has not challenged Royal Park's showing that joinder is impractical. Motion at 6-7. And unlike in *Bd. of Trs.*, Wells Fargo's own expert submitted evidence that the class members are "geographically dispersed." *Id.*; Ex. 15, ¶38 ("The data, for example, shows investors in states throughout the country . . . .").

- 15 -

*Madison Fin. Corp.*, No. 01 Civ. 3998 CM, 2002 WL 31731020, at *5 (S.D.N.Y. Dec. 4, 2002) ("rough estimate" sufficient).[22]

Wells Fargo is wrong that Royal Park is required to show that particular absent Class members have standing to establish numerosity. *Babcock v. Comput. Assocs. Int'l*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003) ("Standing and numerosity are two separate unrelated inquiries."). Nor need Royal Park prove that such individuals' claims are meritorious. *Methyl Tertiary Butyl Ether Prods.*, 241 F.R.D. at 444 ("[T]he sole question with regard to numerosity is whether the class of people who may bring claims against the Companies is 'so numerous that joinder of all members is impracticable,' not whether that class of people will ultimately prevail in those claims.").

Moreover, because Wells Fargo does not challenge Royal Park's showing that joinder is impractical, numerosity is satisfied in any event. *E.g.*, *Chambery v. Tuxedo Junction, Inc.*, 10 F. Supp. 3d 415, 420 (W.D.N.Y. 2014) (classes of fewer than 40 members appropriate "where joinder would be impracticable due to geographic dispersion or other factors").

### E. Royal Park Has Vigorously Advocated for the Class and Is Both Adequate and Typical

Citing no authority whatsoever, Wells Fargo contends that "Royal Park is not a typical investor." Opp. at 31. Wells Fargo's desperate protestations to the contrary all fail.

Wells Fargo's contention that Royal Park's witnesses are "non-party, compensated consultants who lack personal knowledge of the claims or class," is pitiful. Opp. at 31. The "compensated consultants" defendant decries, Messrs. Danny Frans and Koen Weemaes, are both former Fortis and Royal Park employees, testified about their detailed knowledge of the case and

---

[22] Even assuming arguendo that 75% of the potential Class members identified by Dalrymple were to be excluded for the reasons put forward by Wells Fargo, there would still be more than 40 putative Class members. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 442 (S.D.N.Y. 2007) (emphasizing that courts "'may make common-sense assumptions that support a finding of numerosity'").

- 16 -

claims.[23]  *See, e.g.*, Wood Reply Decl., Ex. M at 90:11-92:6, 94:6-97:23, 102:11-103:9, 111:20-24;

Wood Reply Decl., Ex. L at 14:12-19:14, 29:14-33:8, 35:13-39:20, 54:23-56:3, 59:12-65:7, 104:4-

109:24; Wood Reply Decl., Ex. J at 31:21-37:21.  In addition, Royal Park made available two of its

directors, both of whom testified regarding their active involvement in the litigation.  Wood Reply

Decl., Ex. N at 33:12-25, 34:22-35:8, 54:23-59:3; Wood Reply Decl., Ex. O at 41:18-43:7, 43:20-

44:11, 89:11-15, 256:22-258:16, 263:10-264:19.  Wells Fargo also deposed the collateral manager of

the Nassau CDO (Princeton Advisory Group), as well as a former Fortis employee, Ron Portnoy,

neither of whom received compensation for their time from Royal Park.

   In any case, the "'Supreme Court . . . [has] expressly disapproved of attacks on the adequacy

of a class representative based on the representative's ignorance.'"  *In re Facebook, Inc.*, 312 F.R.D.

332, 345 (S.D.N.Y. 2015).  Like the court's observation in *Johnson v. Aljian*, defendants' "attacks on

the proposed Class Members' knowledge of and willingness or ability to supervise the litigation . . .

are, at best, hyperbolic and, at worst, consist of taking deposition testimony out of context and

presenting it in a manner that borders on misleading."  257 F.R.D. 587, 596 (C.D. Cal. 2009).

   The purported "individualized defenses," raised by Wells Fargo, once again citing no case

law, fare no better.  Opp. at 32-33.[24]  First, class certification is only inappropriate where a unique

defense "'"threaten[s] to become the focus of the litigation."'"  *Lapin*, 254 F.R.D. at 179.  Here,

none of the issues raised by Wells Fargo have become the focus of the litigation.  Second, none of

Wells Fargo's purported defenses (even if they were meritorious) are "unique" to Royal Park.  *See*

---

[23] The fact that Frans and Weemaes receive compensation from Royal Park is irrelevant.  Wells Fargo's employee witnesses receive compensation from Wells Fargo.  As this Court previously noted, "I agree that this has been overblown."  Wood Reply Decl., Ex. P at 143:14-15.

[24] As a threshold matter, "'[t]he rule barring certification of plaintiffs subject to unique defenses is not "rigidly applied in this Circuit"; in fact, "a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him [or her] that would not impact other class members."'"  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) (collecting cases).  "'[T]he court should not disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate.'"  *Id.*

- 17 -

*Pa. Ave. Funds v. Inyx Inc*., No. 08 Civ. 6857 (PKC), 2011 WL 2732544, at *5 (S.D.N.Y. July 5, 2011) (Defendants "have not articulated any unique defense that defendants may assert against lead plaintiff but not the other class members."). Third, the purported defenses are frivolous. Royal Park has provided multiple documents evidencing the ownership chain of the Certificates, all of which are admissible, and those facts are not seriously subject to dispute.[25]  Wood Reply Decl., Exs. E-I.

Royal Park also has standing. The CDO documents themselves confirm that they are subject to New York law. Wood Reply Decl., Exs. D at RPI-WF003053 (Nassau CDO I, Ltd. Collateral Administration Agreement), C at RPI-WF01558587 (Nassau CDO I, Ltd. Collateral Management Agreement). Regardless, Royal Park has standing for the damages it suffered ***after*** it acquired the Certificates, and as the owner of the super senior tranches of the CDOs, it would be entitled any recovery received by the CDO. *Supra*, §II.B. Wells Fargo has not come close to meeting its high burden of establishing a failure to mitigate defense, nor that any of the issues it raised would have had an impact on the losses Royal Park suffered as a result of Wells Fargo's misconduct. *See Evans v. State of Conn.*, 967 F. Supp. 673, 680 (D. Conn. 1997) (a defendant's burden of proving failure to mitigate is "'extremely high'").

Finally, Wells Fargo's contentions that Royal Park has failed to comply with its discovery obligations regarding documents in the possession of its assignors are based on a complete fabrication of what those obligations actually were.[26]  *See* Opp. at 33-34.  Simply put, there have

---

[25]   Portnoy's testimony is inapposite.  Opp. at 32.  Wells Fargo's questioning was intentionally misleading; the document itself reflects the fact that the trade was executed in 2009, while Portnoy was at Fortis, and Portnoy confirmed that he likely approved the transactions in separate testimony.  Wood Reply Decl., Ex. K at 119:14-16 ("Q: Do you think your name appears on here because you approved the sale perhaps? A.  It's possible, yes."); *see also id*. at 54:2-12 ("Q. Is it your understanding that a collateral manager for the CDO would select the securities? A.  Correct.  Q.  Would Fortis approve those selections prior to the securities inclusion in a CDO?  A.  Yes.  Q.  And is it your testimony that you were involved in that approval process?  A.  Yes.").

[26]   Contrary to Wells Fargo's contentions, this Court never ordered Royal Park to produce any documents from Princeton Advisory Group or the "Cayman CDO," and the Court's order was limited to documents in the possession of "Fortis."  Dkt. No. 188.  In fact, Wells Fargo never even sought such documents.  Dkt. No. 149 at 1 ("Fortis was not

- 18 -

been no findings that Royal Park has failed to comply with any of its discovery obligations.[27]   In

fact, Royal Park has produced voluminous documents (979,663 pages) from Fortis/BNP.  Wells

Fargo cannot cite a single case finding a class representative inadequate under such circumstances.[28]

### F.   A Class Action Is Superior

#### 1.   Many Investors Will Be Unable to Recover Damages Absent Certification

A class action is not only superior to the individual actions Wells Fargo proposes, it is the

*only* way that many investors would ever be able to recover damages.  While the named plaintiffs'

claims may be large, other investors made purchases of as little as $10,000.  Ex. 6, ¶48; *Fort Worth*

*Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 143 (S.D.N.Y. 2014).  The costs of

a single deposition would dwarf any losses from such a purchase, making clear that no investor

would pursue an individual suit on such a claim.  For these investors, the class mechanism provides

the *only* possible redress.  *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI) (RML), 2013 WL

7044866, at *6 (E.D.N.Y. July 18, 2013).

---

[27]   even responsible for the decisions to buy and sell the certificate at issue; those decisions were made by Princeton Advisory Group, an investment adviser located in New Jersey that Wells Fargo has, for its own strategic purposes, intentionally failed to subpoena."); *see also Deutsche Bank*, No. 14-CV-04394, Order at 6-8 (S.D.N.Y. Jan. 26, 2017) (Dkt. No. 324) (holding that Royal Park has no obligation to produced documents from third-party CDO managers).  Nor did the Court order Royal Park to produce any documents regarding "investment decisions," finding that "Wells Fargo has not established a basis for requiring further discovery related to . . . the purchase and monitoring of the securities." Dkt. No. 188; *see also Deutsche Bank*, 2016 WL 4613390, at *11-*12 ("Since reliance is not an element of either of RPI's surviving claims, Deutsche Bank is not entitled to additional documents concerning the 'state of mind,' 'knowledge,' and 'conduct' of the original purchasers of the Certificates at issue here, or the CDO managers advising them at that time.").

[27]   Faced with a much more extensive (albeit also misleading) record, Magistrate Judge Francis denied a motion for sanctions filed by U.S. Bank against Royal Park seeking the disqualification of Royal Park from serving as class representative in that action, finding that U.S. Bank has failed to establish either prejudice or relevance.  *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 129-31 (S.D.N.Y. 2016).

[28]   In *McDaniel v. Cty. of Schenectady*, No. 1:04-CV-757 GLS/RFT, 2005 WL 1745566, at *3 (N.D.N.Y. July 21, 2005), the class representative failed to participate in a deposition despite being ordered to do so on three occasions, then vanished. Here, Royal Park representatives have made themselves available for deposition in the U.S. and Europe, and Royal Park has responded in good faith to Wells Fargo's ceaseless discovery demands.

Defendants' authority is inapposite. *Castano v. American Tobacco Co.*, 84 F.3d 734, 747-48 (5th Cir. 1996), upon which Wells Fargo relies (Opp. at 34, 35 n.23), has been rejected in the Second Circuit. *Dungan v. Acad. at Ivy Ridge*, 344 F. App'x 645, 647 (2d Cir. 2009); *McLaughlin*, 522 F.3d at 224. "[T]he proper comparison is not between class litigation and no litigation at all, but between class litigation and actions conducted separately by individual class members." *United States v. City of New York*, 276 F.R.D. 22, 49 (E.D.N.Y. 2011); *Gulino v. Bd. of Educ.*, No. 96 CV 8414 (KMW), 2013 WL 4647190, at *11 (S.D.N.Y. Aug. 29, 2013). In *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 192-93 (3d Cir. 2001), "determining actual injury would require hundreds of millions of individual assessments," something plainly not relevant here. *Id.* at 191-92; Opp. at 34. And courts in the Second Circuits have also declined to rely on *Newton*. *E.g.*, *Gulino*, 2013 WL 4647190, at *12 n.10.

Royal Park's claims are anything but "novel and undefined." Opp. at 34. At least one class action settlement against an RMBS trustee has been approved in this District, where Judge Forrest found that all prerequisites for certifying the settlement class had been met, and where the standards for approving the settlement class were ***higher*** than the standard here. Motion at 9; *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (judges who approve settlement before formal certification "are bound to scrutinize the fairness of the settlement agreement with ***even more*** than the usual care"); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness."). Further, there is a long and well-developed body of law regarding RMBS class actions in this District. *See, e.g.*, *J.P. Morgan*, 301 F.R.D. 116 (certifying liability class of investors in nine trusts in an RMBS class action); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226

(S.D.N.Y. 2012) (granting class certification across ten RMBS trusts); *Merrill Lynch*, 277 F.R.D. 97 (granting class certification across 18 RMBS trusts).

Wells Fargo's contention that "Royal Park has been unable to define its own claims," is outlandish.[29]  Opp. at 34. Royal Park pled their claims in excruciating detail, and the majority of their claims were upheld by the Court. Dkt. No. 291 at 3-4.  Royal Park's damage methodology is clear, in large part undisputed, and closely tethered to its allegations. Ex. 17, ¶¶20-26. Finally, there is nothing unmanageable about the proposed Class.  Courts routinely allow class actions to proceed whereby a defendant's liability is adjudicated first, and any individual issues are resolved later through a claims process or further proceedings.[30]  Motion at 23-25; *supra*, §II.B.1.  Wells Fargo provides no basis to believe such a process will not be manageable here.

## 2. The *Lehman* Settlement Is Irrelevant to Superiority or Class Certification

The express language of the bankruptcy court order approving the Lehman Settlement (the "Approval Order")[31] directly refutes Wells Fargo's assertions that the Lehman Settlement is in any way determinative of, or even relevant to, the issues of superiority and class certification in this action.  The Approval Order provides, in pertinent part, as follows:

---

[29]   This Court has rejected similar contentions in connection with HSBC's advice of counsel contentions.  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 1:14-cv-08175, Report and Recommendation at 5 (S.D.N.Y. May 8, 2017) (Dkt. No. 343) (rejecting HSBC's contention that it did not have sufficient information to assert an advice of counsel defense until plaintiffs identified  "'specific claims of breach' . . . and the specific actions or inactions that HSBC took in response").

[30]   *E.g.*, *ConAgra*, 844 F.3d at 1131-32 ("Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability. . . .  [W]e see no reason to refuse class certification simply because [a class member] will present her [standing] affidavit in a claims administration process after a liability determination has already been made.").

[31]   Wells Fargo fails to mention that the Approval Order, which was prepared by the Lehman debtors in connection with their motion for approval of the Lehman Settlement, was revised as a result of negotiations among numerous parties – including plaintiff and, with respect to ¶I thereof, Wells Fargo (even though it is not even a party to the Lehman Settlement) – in order to resolve plaintiff's objection to the Lehman Settlement, and thus was presented to the bankruptcy court on an essentially uncontested basis.

- 21 -

This Order is not intended to, and does not release, enjoin, or preclude any claim or cause of action that any investor in any of the Accepting Trusts (including any former investors that have retained their claims) has against any Accepting Trustee or **any other person or entity**, other than (i) claims against the Accepting Trustees[32] arising out of the Accepting Trustees' evaluation and acceptance of the RMBS Settlement Agreement and implementation of the Settlement Agreement in accordance with its terms, and (ii) claims against the Released Parties to the extent released under the RMBS Settlement Agreement.[33]  Moreover, for the avoidance of any doubt, **the entry of this Order does not and is not intended to extinguish or prevent the prosecution of the claims and causes of action, or the assertion of defenses, that have been asserted in** the cases styled as *Royal Park Investments SA/NV v. U.S. Bank National Association, as Trustee*, No. 14-cv-09764-KPF-SN (S.D.N.Y.) and *Royal Park Investments SA/NV v. Wells Fargo Bank, N.A., as Trustee*, No. 14-cv-09764-KPF-SN (S.D.N.Y.), and the parties to those cases reserve all rights to present arguments and evidence in those cases as to any impact that the RMBS Settlement Agreement and the facts underlying the RMBS Settlement Agreement may have on those cases **to the extent not inconsistent with the balance of this paragraph**.

Dkt. No. 372-2 at p.6 of 7 (emphasis and footnotes added).

None of the claims released or settled through the Lehman Settlement involve, duplicate, or overlap with the separate claims asserted in this action.  The Lehman Settlement established a framework for settling the claims that certain RMBS trustees (not Wells Fargo) asserted against the Lehman debtors for alleged breaches of representations and warranties in connection with the securitization of residential mortgage loans (the "Lehman R&W Claims"), with any recovery from the Lehman debtors on account of the Lehman R&W Claims to be allocated among numerous trusts pursuant to an estimation proceeding in the bankruptcy court.  The only plausible impact the settlement of the Lehman R&W Claims eventually **might** have on this action is that, if any distribution by the Lehman bankruptcy estate on account of the Lehman R&W Claims flows through the SASCO 2007-BC1 trust to class members, those funds might reduce such class members' actual

---

[32]  Wells Fargo is not one of the Accepting Trustees.  In any event, none of the claims asserted in this action pertain in any way to the Accepting Trustees' evaluation or acceptance of the Lehman Settlement.

[33]  Wells Fargo is not a "Released Party" under the Lehman Settlement, nor were any of the claims asserted in this action released through the Lehman Settlement.

- 22 -

damages against Wells Fargo in this action.  However, that issue will not even be before this Court until a plan of allocation is under consideration in this action.  In any event, the Lehman Settlement simply provides a mechanism for estimating and allocating a limited claim – against a bankrupt entity – among numerous trusts.  Under the terms of the plan of liquidation confirmed by the bankruptcy court in the Lehman bankruptcy proceedings in December 2011, that claim will not be paid in full and thus will never provide any trust (or, once any recovery flows through the trusts, any investor) with a complete recovery.  For investors in the SASCO 2007-BC1 trust, this action remains the only possible means for Class members to be made whole.

Moreover, notwithstanding the fact that double recovery is not even a possibility, Wells Fargo's contentions regarding the "possibility of double recovery" (Dkt. No. 372 at 2) are, as a matter of law, irrelevant to class certification.  *Gonzales v. Arrow Fin. Servs. LLC*, 233 F.R.D. 577, 581 (S.D. Cal. 2006) ("[T]he issue of whether plaintiff is impermissibly seeking double recovery is irrelevant to the issue of class certification.  As such, it is not properly brought in opposition to a motion for class certification."); *Markham v. White*, 171 F.R.D. 217, 222 n.6 (N.D. Ill. 1997) (finding contentions regarding double recovery irrelevant to class certification); *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *9-*10 (N.D. Cal. May 5, 2017) (double recovery contentions irrelevant to superiority).  Nor does the Lehman Settlement indicate in any way – or even suggest – that certain class member prefer "a different approach to resolving these claims" (Dkt. No. 372 at 3), because "these claims" – direct claims against Wells Fargo for its own actions and omissions – are not claims against the Lehman debtors, were not at issue in the Lehman bankruptcy, and were not settled, released, or otherwise at issue in the Lehman Settlement.  The Lehman R&W Claims at issue in the Lehman Settlement involved

- 23 -

Lehman's obligation to repurchase defective loans, not Wells Fargo's failures to comply with its independent contractual and legal obligations to class members.[34]

For the same reasons, Wells Fargo's assertion that the Lehman Settlement "will fully and finally resolve many of the R&W claims in this case" (Dkt. No. 372 at 3), is misleading and inaccurate. First and foremost, none of the claims asserted in this action are claims for breaches of representations and warranties like the Lehman R&W Claims. They are claims against Wells Fargo for failing to properly discharge its duties as trustee. Second, the Lehman Settlement, which will not provide anywhere near a complete recovery to Class members (if they receive any recovery through that settlement at all) simply highlights Wells Fargo's failure and the merits of the claims asserted in this action. Had Wells Fargo acted prudently, it might have avoided the need for a last-ditch effort to salvage *some* recovery in the Lehman bankruptcy. *See, e.g.*, Wood Reply Decl., Ex. S (proof of claim filed by Wells Fargo in the Lehman bankruptcy, demonstrating that Wells Fargo knew of material exceptions in over $20 million of loans in the SASCO 2007-BC1 trust *as early as 2009*, if not before); *In re Lehman Bros. Holdings, Inc.*, No. 1:08-BK-13555-SCC, Declaration of Charles A. Parekh, Ph.D. (Dkt. Nos. 46080, 46080-5, 46080-6, and 46080-9) (Bankr. S.D.N.Y. Aug. 22, 2014) (Declaration of Charles A. Parekh and Part 1, Part 2, and Part 5 of Attachment V showing that 100% of the loans sampled from the SASCO 2007-BC1 trusts breached at least one of the applicable representations and warranties).

Finally, Wells Fargo stretches the facts beyond credulity by suggesting that any Class members chose to limit their recovery to whatever distribution, if any, they might receive through the SASCO 2007-BC1 trust as a result of the Lehman Settlement. That argument ignores the plain

---

[34] The Lehman Settlement also has no relevance whatsoever to Wells Fargo's failure to prudently administer the trust following an event of default, remedy separate servicing violations, and failure to demand repurchase of non-Lehman loans. Ex. 6, ¶¶17-27.

　
language of the Approval Order and suggests that Class members chose to forego any recovery on account of the claims asserted in this action directly against a solvent and well-capitalized defendant for its own missteps as trustee.  Indeed, the Lehman Settlement cannot possibly be superior because it is not an ""other available method[]"" for resolving the Class' claims against Wells Fargo.  *In re MF Glob., Inc.*, 512 B.R. 757, 767 (Bankr. S.D.N.Y. 2014); *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029 (CM), 2011 WL 1345041, at *8 (S.D.N.Y. Mar. 30, 2011) (finding question of superiority of bankruptcy proceedings irrelevant where defendants was not in bankruptcy).[35]  Wells Fargo did not participate in the Lehman Settlement, the claims against Wells Fargo were not asserted in the Lehman bankruptcy (nor could they have been), and the Approval Order makes clear that the Lehman Settlement does not preclude the prosecution of those claims in this action, let alone impact class certification with respect to those claims.

## III.     CONCLUSION

The Court should certify the Class and appoint Royal Park as Class Representative and Robbins Geller as Class Counsel.

DATED:  July 24, 2017                         Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

---

[35]     The court in *Gregory v. Finova Capital Corp.*, 442 F.3d 188 (4th Cir. 2006), found an adversary proceeding superior where the: (i) "the adversary proceeding will likely adjudicate this controversy in the normal course of [defendant]'s bankruptcy"; (ii) the adversary proceeding "will yield a single result for all of the noteholders"; and (iii) plaintiffs admitted that the adversary proceeding could make them "'more or less whole.'"  *Id*. at 191-92; *see* Dkt. No. 372 at 3. None of those facts or considerations are present here.

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
J. MARCO JANOSKI GRAY
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jsanchez@rgrdlaw.com

Attorneys for Plaintiff

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 10, 2017.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
   & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)
E-mail:  cwood@rgrdlaw.com

# Mailing Information for a Case 1:14-cv-09764-KPF-SN Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Amherst Advisory & Management, LLC**
  gklein@mckoolsmith.com

- **Joseph James Boylan**
  jboylan@jonesday.com,rwestrom@jonesday.com

- **Harold Keith Gordon**
  hkgordon@jonesday.com,rwestrom@jonesday.com

- **Kurt Michael Gosselin**
  kgosselin@jonesday.com,rwestrom@jonesday.com

- **Paul Bartholomew Green**
  bartgreen@jonesday.com,rwestrom@jonesday.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jason Jurgens**
  jjurgens@jonesday.com,rwestrom@jonesday.com,jtreanor@JonesDay.com,tesolomon@JonesDay.com

- **Rebekah B. Kcehowski**
  rbkcehowski@jonesday.com

- **Gayle Rosenstein Klein**
  gklein@mckoolsmith.com,kmtrahan@mckoolsmith.com,gpineiro@mckoolsmith.com,gayle-klein-4119@ecf.pacerpro.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,susanw@rgrdlaw.com

- **Elisa Lee**
  elee@mckoolsmith.com,elisa-lee-0388@ecf.pacerpro.com

- **Traci Leigh Lovitt**
  tlovitt@jonesday.com,rwestrom@jonesday.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Clay J. Pierce**
  clay.pierce@dbr.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Tracy V. Schaffer**
  tschaffer@jonesday.com,rwestrom@jonesday.com

- **Howard Fredrick Sidman**
  hfsidman@jonesday.com,rwestrom@jonesday.com

- **Eric Peter Stephens**
  epstephens@jonesday.com,rwestrom@jonesday.com

- **Jayant W. Tambe**
  jtambe@jonesday.com,mmarcucci@jonesday.com,rwestrom@jonesday.com

- **Michael O. Thayer**
  mothayer@jonesday.com,rwestrom@jonesday.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,HDeshmukh@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing. You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`