October 31, 2017

<u>VIA ECF</u>

The Honorable Katherine Polk Failla
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2103
New York, NY 10007

   Re: *Coordinated RMBS Trustee Litigation Against Wells Fargo Bank, N.A.*,
      Nos. 14-cv-09371, 14-cv-09764, 14-cv-10067, 14-cv-10102, 15-cv-10033
      (S.D.N.Y.)

Dear Judge Failla:

  Plaintiffs in the five above-referenced cases respectfully request a pre-motion conference to exclude evidence or argument that defendant Wells Fargo Bank, N.A. ("Wells Fargo") failed to obtain discovery or receipt of notice of breaches of representations and warranties ("R&Ws"), and actual knowledge of Events of Default ("EODs") (collectively, "Breaches").

  Wells Fargo contends it did not learn of such Breaches, but the truth of its assertion cannot be fairly assessed because Wells Fargo has invoked privilege to shield numerous documents concerning its awareness of Breaches. Having elected to shield critical documents throughout discovery, Wells Fargo should be precluded from claiming it lacked the requisite awareness of those Breaches at summary judgment and trial. Alternatively, the Court should hold Wells Fargo has waived privilege claims over documents concerning its awareness of Breaches because fairness requires providing plaintiffs an opportunity to fully assess Wells Fargo's defense.

  Plaintiffs' request is properly directed to this Court, as it pertains to defenses alleged in Wells Fargo's recently filed Answers, not a discovery dispute. From May 12 to October 2, 2017, Wells Fargo filed its Answers to the operative complaints in these cases. *E.g.*, RP Dkt. No. 334; NCUA Dkt. No. 365; BlackRock Dkt. No. 435; Commerzbank Dkt. No. 264; Phoenix Light Dkt. No. 343. Through its Answers, Wells Fargo denied plaintiffs' allegations that "Wells Fargo 'discovered,' . . . that the Warrantors had breached their R&Ws as to thousands of Mortgage Loans within the Covered Trusts." *See, e.g.*, RP Dkt. No. 334, ¶10; RP Dkt. No. 24, ¶10; *see also* NCUA Dkt. No. 365, ¶93; NCUA Dkt. No. 354, ¶93. Wells Fargo further claimed through its fifth affirmative defense that plaintiffs' "claims are barred, in whole or in part, by . . . the failure to establish an express condition precedent . . . of the Governing Agreements." *See, e.g.*, RP Dkt. No. 334 at 57. Further, this Court recently held that plaintiffs may establish Wells Fargo's discovery of R&W breaches not just through actual knowledge but also through direct or circumstantial evidence of willful blindness, conscious avoidance, or implied actual knowledge. *BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 9371 (KPF) (SN), 2017 WL 3610511, at *10 (S.D.N.Y. Aug. 21, 2017).

  On September 22, 2017, plaintiff Royal Park Investments SA/NV ("Royal Park") informed Wells Fargo that withholding documents demonstrating its state of mind on privilege grounds while claiming that it failed to discover R&W breaches and lacked actual knowledge of EODs was

- 1 -

improper and that all such documents should be produced. On October 2, 2017, Wells Fargo refused to comply and the parties reached impasse.

**The Court Should Exclude Evidence or Argument that Wells Fargo Failed to Discover and Lacked Knowledge of Breaches in this Action**

Wells Fargo has deprived plaintiffs of the ability to test the veracity of its non-awareness defense by withholding numerous documents going to its awareness of pertinent facts. *E.g.*, WF RP Priv. Log (Aug. 2, 2017) at ADI_0017_000103068 ███████████████████████████████████████████████████████████████; *id.* at Ricoh_BR_VOL002_000051249 ███████████████████████████████████████████████████; *id.* at ADI_0015_000033823 ███████████████████████████████████████████████████████████████████████. Wells Fargo cannot simultaneously withhold evidence of its awareness of Breaches and maintain an affirmative defense of lack of awareness.

Further, the leader of Wells Fargo's Default and Restructuring Group ("DRG"), ████████ testified that █████████████████████████████████████████████████████████ Deposition Transcript of ████████ dated March 30, 2017 ("████ Depo. Tr.") at 49:4-6. ██████████████████████████ Depo. Tr. at 315:23-316:3. ████████ *Id.* at 287:11-17. Thus, ████████████████████████████████████████████████████ *Id.* at 311:10-16.

Documents produced, only to be clawed back, by Wells Fargo illustrate its decision to shield documents demonstrating its discovery and actual knowledge of Breaches by asserting privilege. For example, as Judge Netburn explained in her March 24, 2017 Order (issued before Wells Fargo served its Answer), Wells Fargo asserted privilege over a document "prepared by external counsel to be used by its Default and Restructuring Group." RP Dkt. No. 289 at 4. This document began with a "Deal Name" column and a corresponding column titled "***Does EoD exist?***" *Id.* (emphasis added). It cannot seriously be disputed that this document is entirely relevant to Wells Fargo's contention that it lacked actual knowledge of EODs at the time this document was created, yet the most relevant portions were redacted at Wells Fargo's insistence because they "clearly reflect[ed] legal conclusions as to whether an event of default occurred." *Id.* Consequently, plaintiffs were deprived of the opportunity to examine the veracity of Wells Fargo's contention that it lacked actual knowledge of EODs.

In another example, Wells Fargo claimed privilege over an e-mail ████████████ ██████████████████████████████████████████████████ BlackRock Dkt. No. 374 at 8 (Ex. 10). The content of this e-mail, which Judge Netburn previously examined but was clawed back by Wells Fargo, is clearly relevant to Wells Fargo's defense that it failed to discover R&W breaches, particularly in light of the fact that plaintiffs are entitled to prove discovery through a showing of implied actual knowledge based on awareness of facts that would lead a reasonable person to

inquire further, willful blindness, or express actual knowledge. *Blackrock*, 2017 WL 3610511, at *10.

Because Wells Fargo's privilege assertions deprived plaintiffs of the opportunity to examine documents relevant to Wells Fargo's state of mind, the Court should exclude evidence and argument that Wells Fargo failed to discover and lacked actual knowledge of Breaches in this action. In *Cary Oil Co. v. MG Ref. & Mktg.*, 257 F. Supp. 2d 751 (S.D.N.Y. 2003), the plaintiffs sought to exclude all mentions of a consent order entered into by a defendant and the Commodity Futures Trading Commission except for the fact that the defendant entered into the agreement and that it barred performance of the underlying contracts at issue in the case. *Id.* at 758-59. Plaintiffs argued that defendant should not be allowed to introduce any type of evidence regarding its motive in agreeing to the consent order because plaintiffs were unable to inquire into the subject due to defendant's attorney-client privilege assertion. *Id.* at 760-61. The court agreed, holding that it was "prepared to exclude any testimony or evidentiary presentations by the Defendants at trial if that same testimony or evidence was withheld from Plaintiffs during discovery based on attorney-client privilege." *Id.* at 761; *see also id.* ("[T]o the extent that Defendants have withheld facts from discovery that relate to the Consent Order, they will not be allowed to introduce such facts in any form at trial.").

Here, Wells Fargo has made the intentional and strategic decision to withhold documents directly relevant to its discovery and actual knowledge of Breaches throughout the discovery process. Accordingly, the Court should bar Wells Fargo from arguing or providing any testimony or evidence at trial regarding its purported lack of actual knowledge and failure to discover Breaches. *See also Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 303-04 (S.D.N.Y. 2001) (holding that defendant waived a defense by refusing discovery on the basis of attorney-client privilege); *In re Buspirone Antitrust Litig.*, 208 F.R.D. 516, 522 (S.D.N.Y. 2002) ("[A] party must disclose during the discovery period whether it intends to rely on factual assertions or corresponding defenses that would require a waiver of the attorney-client privilege."); *Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 593-95 (S.D.N.Y. 2015) ("[Plaintiff] used the protections of the Federal Rules of Civil Procedure to shield . . . documents relating to those topics from disclosure. This was a choice that was within [plaintiff's discretion] – but not a choice that allows them to have it both ways at trial."), *aff'd*, 864 F.3d 1343 (Fed. Cir. 2017).

**In the Alternative, the Court Should Find that Wells Fargo Waived Privilege over Documents Underlying Its Claim that It Failed to Discover and Lacked Actual Knowledge of Breaches**

"It is well established doctrine that in certain circumstances a party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003). Such waiver applies to "a party mak[ing] "'factual assertions the truth of which can only be assessed by examination of the privileged communications.'"" *Pereira v. United Jersey Bank*, No. 94 Civ. 1595 (LAP), 1997 WL 773716, at *5 (S.D.N.Y. Dec. 11, 1997) (citations omitted). Underlying any determination that a privilege was waived is the notion of fairness, implicating "the type of unfairness to the adversary that results in litigation circumstances

when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *John Doe Co.*, 350 F.3d at 306.

      Courts in this Circuit have found waiver under similar circumstances. In *Pereira*, a check cashing company, Payroll, went bankrupt due to a check-kiting scheme and its bankruptcy trustee, Pereira, attempted to recover transfers to two defendant banks. 1997 WL 773716, at *1. Defendant United Jersey Bank ("UJB") asserted a defense of setoff and, as the court stated, "a critical issue is when UJB first became aware of Payroll's check-kiting scheme." *Id.* Pereira attempted to depose UJB's attorney and requested UJB produce a broad category of documents. *Id.* at *2. In response to UJB's objection, Pereira argued, *inter alia*, that UJB had waived any claim of privilege under the "at issue" waiver doctrine. *Id.* The court agreed, holding that "'"privilege [may be waived] if [the privilege holder] makes factual assertions the truth of which can only be assessed by examination of the privileged communication,"'" and found that UJB had waived its privilege due to the "critical role that UJB's counsel played in matters intimately related to the setoff defense." *Id.* at *4, *6. Similarly, in *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991), the Second Circuit held that a securities fraud defendant could not testify to his purported good faith *without* being subject to cross-examination concerning his communications with counsel. *Id.* as 1292. Relying on the notion of fairness, the court held that defendant's "conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge" and that "the jury would be entitled to know the basis of his understanding that his actions were legal." *Id.* at 1292, 1294.

      As in *Pereira* and *Bilzerian*, Wells Fargo's discovery or actual knowledge is important in determining its liability, and Wells Fargo is making a similar factual assertion, the truth of which can only be assessed by examination of purportedly privileged communications. Further, as in *Pereira*, Wells Fargo's attorneys "played a substantial and significant role" (1997 WL 773716, at *6) given that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Depo. Tr. at 315:23-316:3. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See, e.g., id.* at 290:22-281:6 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. And as in *Pereira* and *Bilzerian*, it is entirely unfair to allow Wells Fargo to claim it lacked the requisite state of mind regarding Breaches while simultaneously denying plaintiffs access to documents that may refute Wells Fargo's position.

      As a result, the Court should exclude evidence or argument that Wells Fargo failed to discover and lacked actual knowledge of Breaches in this action or, in the alternative, the Court should find that Wells Fargo waived any privilege over documents underlying its state-of-mind claim and defense it placed directly at issue in this action.

                                                          Respectfully submitted,

| /s/ Christopher M. Wood | /s/ Scott K. Attaway | /s/ Ryan A. Kane |
|---|---|---|
| Christopher M. Wood | Scott K. Attaway | Ryan A. Kane |

- 4 -

1322934_2

| | | |
|---|---|---|
| Robbins Geller Rudman & Dowd LLP<br>*Counsel for Plaintiff Royal Park Investments SA/NV* | Kellogg, Hansen, Todd Figel & Frederick, P.L.L.C.<br>*Counsel for Plaintiffs National Credit Union Administration Board, et al.* | Wollmuth Maher & Deutsch LLP<br>*Counsel for Plaintiffs Phoenix Light SF Limited, et al. and Commerzbank AG* |

*/s/ Benjamin Galdston*

Benjamin Galdston
Bernstein Litowitz Berger & Grossmann LLP
*Counsel for Plaintiffs BlackRock Balanced Capital Portfolio (FI), et al.*

Attachment
cc:  All Counsel of Record