UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

ROYAL PARK INVESTMENTS SA/NV,
Individually and on Behalf of All Others
Similarly Situated,

                           Plaintiff,

         vs.

WELLS FARGO BANK, N.A., as Trustee,

                         Defendant.

———————————————————— x

:   Civil Action No. 1:14-cv-09764-KPF-SN
:
:   <u>CLASS ACTION</u>
:
:   CORRECTED MEMORANDUM OF LAW
:   IN SUPPORT OF PLAINTIFF ROYAL
:   PARK INVESTMENTS SA/NV'S MOTION
:   FOR CLASS CERTIFICATION AND
:   APPOINTMENT OF CLASS
:   REPRESENTATIVE AND CLASS
:   COUNSEL
:

# [REDACTED]

# TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

        A.     Wells Fargo's Obligations to the Class......................................................2

        B.     Wells Fargo's Breaches of Contract and Duty of Trust...............................3

III.    ARGUMENT ...................................................................................................5

        A.     This Case Satisfies the Requirements of Rule 23(a)..................................6

               1.     The Class Is Numerous ....................................................................6

               2.     There Are Questions of Law and Fact Common to the Class.............7

               3.     Plaintiff's Claims Are Typical of the Class ......................................8

               4.     Plaintiff Is Adequate ......................................................................10

        B.     The Requirements of Rule 23(b)(3) Are Also Satisfied ..........................13

               1.     Common Questions of Law and Fact Predominate ...................13

               2.     A Class Action Is Superior ...........................................................18

        C.     The Court Should Appoint Plaintiff's Counsel as Class Counsel ...........20

        D.     The Proposed Class Is Ascertainable ....................................................21

               1.     The Standard for Ascertainability Is Not Demanding ...............21

               2.     Class Members Can Be Identified Through Trading Data .........22

               3.     Class Members Are Identifiable Through a Claims Process .........23

               4.     Potential Assignment of Claims Is Irrelevant ............................25

IV.     CONCLUSION.................................................................................................25

1295059_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Allapattah Servs. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) ...................................................14

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    269 F.R.D. 340 (S.D.N.Y. 2010) ........................................................................1, 7, 19, 20

*Billhofer v. Flamel Techs., S.A.*,
    281 F.R.D. 150 (S.D.N.Y. 2012) ..............................................................................20

*Brecher v. Republic of Arg.*,
    806 F.3d 22 (2d Cir. 2015)..........................................................................21, 23, 24

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017),
    *petition for cert. filed*, (Apr. 10, 2017) ...................................................................22

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)..........................................................................................5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
    *Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)..........................................................................................6

*Dodona I, LLC v. Goldman, Sachs & Co.*,
    296 F.R.D. 261 (S.D.N.Y. 2014) ................................................................... *passim*

*Dover v. British Airways, PLC (UK)*,
    No. 12 CV 5567 (RJD) (CLP), 2017 WL 1251083
    (E.D.N.Y. Mar. 31, 2017) .............................................................................................21

*Dunnigan v. Metro. Life Ins. Co.*,
    214 F.R.D. 125 (S.D.N.Y. 2003) ..............................................................................21

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ........................................................................21, 22

*Farey-Jones v. Buckingham*,
    132 F. Supp. 2d 92 (E.D.N.Y. 2001) .........................................................................25

Page

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11 Civ. 8405 (CM), 2013 WL 12224042
  (S.D.N.Y. July 12, 2013) ........................................................................1, 7, 9, 14

*Fogarazzo v. Lehman Bros.*,
  263 F.R.D. 90 (S.D.N.Y. 2009) ...................................................................................6

*Freeland v. Iridium World Commc'ns, Ltd.*,
  233 F.R.D. 40 (D.D.C. 2006)......................................................................................22

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  No. 05 Civ. 10240 (CM), 2007 WL 2230177
  (S.D.N.Y. July 27, 2007) ............................................................................................19

*In re Facebook, Inc.*,
  312 F.R.D. 332 (S.D.N.Y. 2015) ................................................................................21

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)..............................................................................8, 10, 12

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012) ..................................................................... *passim*

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2017 WL 679367
  (N.D. Cal. Feb. 21, 2017)............................................................................21, 23, 25

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) ...............................................................................21

*In re US Foodserv. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013).............................................................................. *passim*

*In re US Foodserv. Pricing Litig.*,
  No. 3:07-md-1894 (CFD), 2011 WL 6013551
  (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).................................7

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001)........................................................................................22

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ..................................................................................21

- iii -

**Page**

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) ........................................................................6, 8

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3
    (2d Cir. 2015) ...............................................................................................18

*Kalkstein v. Collecto, Inc.*,
    304 F.R.D. 114 (E.D.N.Y. 2015) ...................................................................10

*Kottler v. Deutsche Bank AG*,
    No. 05 Civ. 7773 (PAC), 2010 WL 1221809
    (S.D.N.Y. Mar. 29, 2010) ..............................................................................8

*Kurtz v. Kimberly-Clark Corp.*,
    No. 14-CV-1142, 2017 WL 1155398
    (E.D.N.Y. Mar. 27, 2017) ........................................................................21, 23

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ...................................................................17

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)............................................................................7

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
    No. 08 Civ. 5653 (PAC), 2014 WL 1013835
    (S.D.N.Y. Mar. 17, 2014) ....................................................................10, 11, 16

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd*, 477 F. App'x 809
    (2d Cir. 2012)................................................................................................12

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
    No. 08 CV 8781 (HB), 2013 WL 6839093
    (S.D.N.Y. Dec. 27, 2013)................................................................................6

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    No. 08-CV-5310 (DAB), 2016 WL 7409840
    (S.D.N.Y. Nov. 4, 2016) ................................................................................12

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)...........................................................................16

- iv -

Page

*Policemen's Annuity & Benefit Fund v. Bank of Am., N.A.*,
   No. 1:12-CV-02865-KBF, 2015 U.S. Dist. LEXIS 177151
   (S.D.N.Y. Mar. 16, 2015) ....................................................................................9

*Ret. Fund v. J.P. Morgan Chase & Co.*,
   301 F.R.D. 116 (S.D.N.Y. 2014) .............................................................. *passim*

*Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
   277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................ *passim*

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ..............................................................................17

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .........................................................................7, 8

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
   No. 14-CV-04394 (AJN) (BCM), 2016 WL 4613390
   (S.D.N.Y. Aug. 31, 2016) ..................................................................................12

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
   109 F. Supp. 3d 587 (S.D.N.Y. 2015) ...............................................................13

*Seekamp v. It's Huge, Inc.*,
   No. 1:09-CV-00018, 2012 WL 860364
   (N.D.N.Y. Mar. 13, 2012) .........................................................................1, 7, 19

*Seijas v. Republic of Arg.*,
   No. 04-cv-400 (TPG), 2017 WL 1511352
   (S.D.N.Y. Apr. 27, 2017) ...................................................................................24

*Sgalambo v. McKenzie*,
   268 F.R.D. 170 (S.D.N.Y. 2010) .......................................................................20

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010) ..............................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................7

*Wallace v. Intralinks*,
   302 F.R.D. 310 (S.D.N.Y. 2014) .......................................................................10

*Wu v. Pearson Educ., Inc.*,
  277 F.R.D. 255 (S.D.N.Y. 2011) ...................................................................................14

## STATUTES, RULES AND REGULATIONS

N.Y. Gen. Oblig. Law
  §13-101 ..........................................................................................................................25

Federal Rules of Civil Procedure
  Rule 23 ................................................................................................................1, 5, 25
  Rule 23(a)....................................................................................................................5, 6
  Rule 23(a)(1) ..................................................................................................................6
  Rule 23(a)(2) ..................................................................................................................7
  Rule 23(a)(3) ..................................................................................................................8
  Rule 23(a)(4) ..................................................................................................10, 11, 20
  Rule 23(b) ......................................................................................................................5
  Rule 23(b)(3) ......................................................................................................*passim*
  Rule 23(c)(4) ................................................................................................................18
  Rule 23(g) ....................................................................................................................20
  Rule 23(g)(1)(A) ..........................................................................................................20
  Rule 23(g)(4) ................................................................................................................20

17 C.F.R.
  §240.10b-5 ....................................................................................................................25

Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), plaintiff Royal Park Investments

SA/NV ("plaintiff" or "Royal Park") moves the Court to certify the following Class:

> All persons and entities who held Certificates in the Covered Trusts at any time
> between the date of issuance to no later than 60 days after notice of class certification
> and opportunity to opt out is issued and were damaged as a result of Wells Fargo
> Bank, N.A.'s conduct alleged in the Complaint.  Excluded from the Class are
> defendant, the loan originators, the Warrantors, the Master Servicers and the
> Servicers to the Covered Trusts, and their officers and directors, their legal
> representatives, successors or assigns, and any entity in which they have or had a
> controlling interest.[1]

## I.    PRELIMINARY STATEMENT

Plaintiff's two causes of action are ideally suited for class certification pursuant to Rule 23.

Courts in the Second Circuit recognize that cases alleging breach of contract and trust are readily

amenable to class certification and resolution.[2]  This case is no different.  Defendant Wells Fargo

Bank, N.A. ("Wells Fargo"), as trustee for the Covered Trusts, assumed substantially identical duties

under the Governing Agreements[3] for each of the Covered Trusts and breached those duties in a

substantially identical manner.  The evidence to date demonstrates that the Governing Agreements

imposed substantially identical obligations on Wells Fargo as trustee, that all of the Covered Trusts

were administered by a small group of employees within Wells Fargo, and that a single set of

---

[1]    The "Covered Trusts" are the residential mortgage-backed securities ("RMBS") identified as:
ABFC 2006-OPT1 and Structured Asset Securities Corporation Mortgage Loan Trust 2007-BC1
("SASCO 2007-BC1"); *see also* Amended Class Action Complaint and Alternative Verified
Derivative Action for Breach of the Trust Indenture Act, Breach of Contract, Breach of Trust and
Violation of the Streit Act ("Complaint"), Dkt. No. 24, ¶1.  All paragraph references ("¶__" or "¶¶__")
and defined terms contained herein refer to the Complaint unless otherwise noted.  Citations and
footnotes are omitted unless otherwise noted.

[2]    *See, e.g.*, *In re US Foodserv. Pricing Litig.*, 729 F.3d 108, 112, 123-27 (2d Cir. 2013); *Seekamp
v. It's Huge, Inc.*, No. 1:09-CV-00018 (LEK/DRH), 2012 WL 860364, at *11 (N.D.N.Y. Mar. 13,
2012); *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), 2013 WL 12224042, at *9
(S.D.N.Y. July 12, 2013); *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269
F.R.D. 340 (S.D.N.Y. 2010).

[3]    The "Governing Agreements" consist of Pooling and Servicing Agreements ("PSAs") or Trust
Agreements ("TAs") and other agreements related thereto, such as the Mortgage Loan Purchase
Agreements and Servicing Agreements.

uniform procedures governed Wells Fargo's administration of the Covered Trusts.[4]  Plaintiff's case presents a single, predominant issue of liability that is common to all Class members.

## II.    STATEMENT OF FACTS

### A.    Wells Fargo's Obligations to the Class

Wells Fargo is granted certain rights that it is obligated to exercise for the benefit of the Class.  ¶¶4-7; Opinion and Order, Dkt. No. 291 ("MTD Order") at 6-10.  If Wells Fargo discovers that loans underlying the Covered Trusts (the "Loans") breach one of the representations and warranties ("R&Ws") made by a "Depositor," "Loan Sellers/Sponsors" and/or an originator or Other Transferor of the Loans (*i.e.*, one of the "Warrantors") concerning the Loan's characteristics, Wells Fargo is required to notify the Warrantor of the violation and to enforce the breaching Warrantor's obligation to either substitute or repurchase the defective Loan.  ¶¶6-8; MTD Order at 8.

Wells Fargo is also required to protect the Class when it becomes aware of loan servicing failures by the "Master Servicers" or "Servicers"[5] amounting to "Events of Default."  ¶¶11, 23 n.5; MTD Order at 9.  An Event of Default occurs whenever a Master Servicer or Servicer fails to "observe or perform, in any material respect, any . . . covenants, obligations or agreements of the Servicer [or Master Servicer] as set forth in [the Governing] Agreement[s]."  ¶56; MTD Order at 9.

The Governing Agreements require Wells Fargo to act promptly to protect the Covered

---

[4]    The fact that this action includes two RMBS trusts is not a bar to certification.  Numerous courts have found that analogous class actions involving multiple RMBS trusts are particularly appropriate for class treatment. *See, e.g.*, *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014) (granting class certification across nine trusts in an RMBS class action); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) (granting class certification across ten RMBS trusts); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (granting class certification across 18 RMBS trusts).

[5]    For the Covered Trusts, the Master Servicers and Servicers were: American Home Mortgage Servicing, Inc.; Countrywide Home Loan Servicing LP; GMAC Mortgage, LLC; GreenPoint Mortgage Funding, Inc.; IndyMac Bank, FSB; National City Mortgage Co.; PHH Mortgage Corporation; and Select Portfolio Servicing Inc.; and these entities' successors. *See* ¶106.

- 2 -

Trusts and the Class once it becomes aware of an Event of Default. ¶¶60-61; MTD Order at 9, 19-20. Upon an Event of Default, the Governing Agreements require Wells Fargo to: (1) notify and demand that the offending Master Servicer or Servicer cure the Event of Default; and (2) give notice of uncured Events of Default to the Class. *Id*. If the offending Master Servicer or Servicer does not timely cure the Event of Default, the Governing Agreements give Wells Fargo the power to institute legal action, terminate the offending Master Servicer or Servicer or take over its servicing duties. *Id*. Wells Fargo is also required to notify Certificateholders of any uncured Events of Default so that the beneficiaries of the Covered Trusts, including members of the Class, can direct Wells Fargo how to proceed. *Id.* The occurrence of an Event of Default also gives rise to a heightened duty requiring Wells Fargo to act as a fiduciary, *i.e*., as a reasonably prudent person would act with regard to his own property under the circumstances. ¶61; MTD Order at 9, 19-20.

## B.   Wells Fargo's Breaches of Contract and Duty of Trust

The Complaint alleges that Wells Fargo discovered and had actual knowledge of R&W breaches but failed to act as contractually obligated under the Governing Agreements. *See, e.g.*, ¶¶145-146; MTD Order at 10-13. For example, in addition to the litany of news reports, lawsuits, governmental actions and congressional testimony publicizing the widespread lending failures by the Warrantors, the disastrous performance of the Loans and astoundingly high delinquency rates caused Wells Fargo to have actual knowledge of R&W breaches. *See generally* ¶¶70-136; MTD Order at 18-19. Moreover, according to the trustee's Repurchase Database, a "database that was created to track repurchase issues and progress,"[6] Wells Fargo received at least 28 separate notices describing R&W breaches corresponding to loans underlying SASC 2007-BC1. Ex. 5. The majority of these

---

[6]   Declaration of Christopher M. Wood in Support of Plaintiff Royal Park Investments SA/NV's Motion for Class Certification and Appointment of Class Representative and Class Counsel ("Wood Decl."), Ex. 4 at 30:15-17. Unless otherwise noted, all exhibit references are to the Wood Decl.

R&W breach notices was based on mortgage insurance rescission; and, as Wells Fargo was aware, "the reason why a loan's mortgage insurance was rescinded could lead to a breach of rep and warranty." Ex. 4 at 163:4-8. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Ex. 7 at 5. Despite this and other similar warnings, Wells Fargo took no action to cause the breaching entity to repurchase or cure these loans. *See* Ex. 5. Despite actual knowledge of R&W breaches, Wells Fargo failed to take the action it was obligated to take to protect the Covered Trusts and the Class. ¶¶145-146.

Wells Fargo had obtained actual knowledge that the Master Servicers and Servicers were engaged in widespread improper and/or illegal foreclosure proceedings and other loan servicing misconduct with respect to the Loans. ¶15; *see, e.g.*, Ex. 8 (e-mail to Wells Fargo's head of Structured Product Services regarding the "revelations that mortgage servicers [including SASCO 2007-BC1 servicer JPMorgan Chase] have operated with deficient policies and procedures with respect to the legal requirements for execution of certain documents necessary to foreclose"); Ex. 9 (WF_RP_000090642) (e-mail to Wells Fargo from Freddie Mac stating its belief that it "may have been materially and adversely impacted" by servicer Nationstar's alleged conduct that it "improperly auctioned off non-performing loans").

In addition, Wells Fargo was aware that the Master Servicers and Servicers knew of but failed to report countless Loans underlying the Covered Trusts that breached the Warrantors' R&Ws and, as a result, were likely to default. *See* ¶15. ██████████████████████████████

████████████████████████████████████████████████████

- 4 -

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ Ex. 11, §7.01(a)(v) (ABFC 2006-

OPT1 PSA). This event, in turn, triggered Wells Fargo's fiduciary duty to act prudently on behalf of

Class members. Ex. 11, §8.01(a). However, Wells Fargo failed to take the actions necessary to

protect the Covered Trusts and the Class. *See* ¶12. In fact, Wells Fargo failed to provide notice of

the delinquency trigger to the Certificateholders, as mandated by the Governing Agreement. Ex. 11,

§7.03(b). Instead, Wells Fargo acted to preserve its longstanding and lucrative business

relationships with the Master Servicers, Servicers and Warrantors – namely, by ignoring or assisting

in conduct leading to the Events of Default. *See* ¶¶19-20. Consequently, defective Loans that

breached R&Ws were not replaced, repurchased or cured, and Events of Default went unchecked, in

violation of the Governing Agreements. *See, e.g.*, ¶¶21-27; *see also* ¶16. The Class has suffered

significant damages as a result of Wells Fargo's common failures. *See, e.g.*, ¶¶153-158.

## III.    ARGUMENT

Plaintiff's allegations present a predominant question of liability that is susceptible to

common proof – whether Wells Fargo's course of conduct breached the Governing Agreements.

The predominance of common issues, and the impracticability of bringing individual actions to

redress Wells Fargo's wrongful conduct, renders this case ideally suited for class certification.

Pursuant to Rule 23, class certification requires a two-step analysis. First, a plaintiff must

show that all four of the prerequisites of Rule 23(a) are satisfied: (i) numerosity; (ii) commonality;

(iii) typicality; and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *Brown v. Kelly*, 609 F.3d

467, 475 (2d Cir. 2010). Second, a plaintiff must demonstrate that the action satisfies at least one of

the subcategories of Rule 23(b). In this action, plaintiff seeks certification under Rule 23(b)(3),

- 5 -

which requires a showing that: (i) common questions of fact and law predominate over any individual questions; and (ii) a class action is superior to other available methods for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Each of the Rule 23(a) and 23(b)(3) requirements is met.

### A.    This Case Satisfies the Requirements of Rule 23(a)

#### 1.    The Class Is Numerous

A class is properly certified where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims."  *Fogarazzo v. Lehman Bros.*, 263 F.R.D. 90, 96 (S.D.N.Y. 2009) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007)).  The precise quantification or identification of potential class members is unnecessary at class certification "'because a court may make common sense assumptions regarding numerosity.'"  *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 83 (S.D.N.Y. 2007).  Numerosity is presumptively satisfied where there are 40 or more class members. *See J.P. Morgan*, 301 F.R.D. at 131.  Numerosity is satisfied even where putative class members purchased across multiple RMBS offerings.  *See id.* ("'decisions in this district have concluded that a class may be certified even where certain sub-groups of that class do not meet the presumptive 40-member requirement'") (quoting *IndyMac*, 286 F.R.D. at 232); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 266 (S.D.N.Y. 2014); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, No. 08 CV 8781 (HB), 2013 WL 6839093, at *2 (S.D.N.Y. Dec. 27, 2013).

Employing a conservative method of counting investors, plaintiff's expert has determined that there are at least 185 potential Class members in the Covered Trusts. Ex. 6, ¶4.  Accordingly, the proposed Class clearly satisfies the numerosity requirement.  Further, investors in the Covered

- 6 -

1295059_1

Trusts are geographically dispersed institutions and individuals with a wide range of investment amounts, from less than $10,000 to tens of millions of dollars.  Ex. 6, ¶48; *see also Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions [and] geographic dispersion of class members . . . .").  The joinder of these investors would be impractical.  *See, e.g.*, *Merrill Lynch*, 277 F.R.D. at 105.

##  2.  There Are Questions of Law and Fact Common to the Class

The "commonality" requirement prescribes that a plaintiff show "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This requirement is construed liberally, and courts demand only that the plaintiff's and class members' claims "share a common question of law or of fact."  *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The "commonality" requirement is a "'low hurdle.'"  *Dodona I*, 296 F.R.D. at 267.  The Supreme Court held that "'"[e]ven a single [common] question'" will do."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).  A question is common if its answer will resolve an issue relevant to the claims on a class-wide basis "in one stroke" (*id.* at 350), regardless of whether it will "overshadow potential individual issues."  *In re US Foodserv. Pricing Litig.*, No. 3:07-md-1894 (CFD), 2011 WL 6013551, at *4 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d 108 (2d Cir. 2013).

Courts find that commonality is satisfied in cases where a defendant has: (a) breached a fiduciary duty it owed to a particular group (*see, e.g.*, *AFTRA*, 269 F.R.D. at 348); (b) breached an obligation in a form contract (*see, e.g.*, *US Foodserv.*, 729 F.3d at 123-27; *Seekamp*, 2012 WL 860364, at *11; *Fleisher*, 2013 WL 12224042, at *9); *or* (c) made a statement in RMBS documents that is untrue in light of a common course of conduct (*see, e.g.*, *J.P. Morgan*, 301 F.R.D. at 116; *IndyMac*, 286 F.R.D. at 233-35; *Merrill Lynch*, 277 F.R.D. at 106).

Commonality is satisfied in light of the liability issues to be answered and the evidence

obtained to date.  Plaintiff alleges that Wells Fargo breached identical or substantially identical contractual terms to which all Class members were beneficiaries and that such breaches gave rise to both contractual and common-law claims.  *See, e.g.*, ¶¶49-50, 144-152.  The Governing Agreements for the Covered Trusts contain substantially identical terms.  *Compare* Ex. 11, *with* Ex. 12 (SASCO 2007-BC1 TA).  The Complaint alleges, and the evidence confirms, that Wells Fargo engaged in a common course of behavior, undertaken by many of the same individuals at Wells Fargo, using common (yet flawed) policies and procedures.  *See, e.g.*, §III.D.1., *infra*.  Each Class member must answer the same common questions in order to prove her claims, including: (i) whether Wells Fargo discovered that the Loans breached R&Ws; (ii) whether Wells Fargo had knowledge of Events of Default; (iii) whether Wells Fargo violated its duties by failing to declare Events of Default and enforce the R&Ws rights; and (iv) whether Class members were damaged as a result of Wells Fargo's conduct.  Commonality's "'low hurdle'" is easily cleared.  *Dodona I*, 296 F.R.D. at 267.

### 3.     Plaintiff's Claims Are Typical of the Class

Rule 23(a)(3)'s "typicality" requirement is satisfied where a plaintiff's claims are typical of the proposed Class.  *See* Fed. R. Civ. P. 23(a)(3); *Vivendi*, 242 F.R.D. at 84-85.  Typicality is satisfied where "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux*, 987 F.2d at 936-37; *Kottler v. Deutsche Bank AG*, No. 05 Civ. 7773 (PAC), 2010 WL 1221809, at *2 (S.D.N.Y. Mar. 29, 2010) ("The focus of the typicality inquiry is not on the plaintiffs' behavior, but rather on the defendant's actions."); *see also*

*Fleisher*, 2013 WL 12224042, at \*11; *Merrill Lynch*, 277 F.R.D. at 106. Typicality "'does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'" *Dodona I*, 296 F.R.D. at 267.

Plaintiff's claims here arise from the same course of events as do the other Class members' claims. *See, e.g.*, §III.A.2., *supra*. Uniform practices employed by Wells Fargo that were applied across all of the Covered Trusts – namely, failure to give notice of servicing breaches and failure to enforce R&Ws rights – give rise to plaintiff's and the Class' claims equally. *Id.*

Indeed, plaintiff and the Class allege that Wells Fargo breached the same contractual and common law duties it owed to all Class members under the Governing Agreements for each Covered Trust. That is, the course of conduct that gives rise to each Class member's claims is identical – Wells Fargo repeatedly failed to (i) give notice to each Covered Trust's Master Servicer or Servicer of its failure to fulfill its obligations; (ii) declare Events of Default when it knew they had occurred; and (iii) take any action regarding Loans that breached their R&Ws. Multiple courts have found the typicality requirement satisfied under similar circumstances, including against an RMBS trustee. *See, e.g.*, *Policemen's Annuity & Benefit Fund v. Bank of Am., N.A.*, No. 1:12-CV-02865-KBF, 2015 U.S. Dist. LEXIS 177151 (S.D.N.Y. Mar. 16, 2015) (approving settlement class against RMBS trustee); *U.S. Foodserv.*, 729 F.3d at 125-26 (certifying breach of contract claim class where underlying contracts varied); *Merrill Lynch*, 277 F.R.D. at 106-09 (recognizing that "as a global matter, Plaintiffs are not required, in proving typicality, to show that the situations of the named representatives and the class members are identical"). Typicality is satisfied where, as here, "[t]he claims of the class members arise from the same course of events," *i.e.*, Wells Fargo's failure to fulfill its obligations owed to all Class members. *J.P. Morgan*, 301 F.R.D. at 132.

- 9 -

### 4.     Plaintiff Is Adequate

"Rule 23(a)(4) requires a showing that the class representative will fairly and adequately protect the interests of other class members. . . .  [A] finding of typicality usually suggests that the class representative will also satisfy the adequacy requirement." *Wallace v. Intralinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).  "The adequacy requirement is not demanding." *Id*.  "'[A]dequacy of representation entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"  *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2014 WL 1013835, at *7 (S.D.N.Y. Mar. 17, 2014).  "[T]o defeat . . . certification [any conflict of interest] must be fundamental." *Flag Telecom*, 574 F.3d at 35.

Royal Park is a limited liability company created by the Belgian State, Ageas and BNP Paribas for the purpose of acquiring and managing a portion of Fortis Bank SA/NV's structured credit portfolio, which included interests in the Certificates at issue here (*i.e.*, the "legacy portfolio"). *See* ¶30; *see also* Ex. 13, ¶3.  Royal Park also acquired RMBS in 2010 that were originally included within collateralized debt obligations ("CDOs") as part of the legacy portfolio.  ¶32.  The CDOs were liquidated in 2010; and Royal Park acquired certain of the RMBS within the CDOs, along with all rights, title and interest in such RMBS, including the Certificates at issue here.  *Id.*

Royal Park's mission is to minimize the downside risk and maximize recoveries on the legacy portfolio.  *See* Ex. 13, ¶3.  Royal Park, like other members of the Class, suffered damages arising from Wells Fargo's conduct in failing to enforce R&W claims and failing to protect investors in the Covered Trusts from loan servicing failures of which it was aware.  *See* ¶16.  Royal Park's interests are directly aligned with those of Class members – to maximize the amount recovered from Wells Fargo for its failure to fulfill its duties to the Class.  *See* Ex. 13; *see, e.g.*, *Kalkstein v.*

*Collecto, Inc.*, 304 F.R.D. 114, 121 (E.D.N.Y. 2015) (no conflict of interest between class members and class representative candidate where interests in maximizing class recovery aligned).

Royal Park has taken its obligations to the Class seriously and has acted to protect the interests of the Class.  Plaintiff has actively participated in, supervised and monitored the litigation. *See* Ex. 13, ¶4.  Through its experienced counsel, plaintiff has authorized the investigation of the facts and the filing of the Complaint, defeated Wells Fargo's motion to dismiss, pursued discovery from Wells Fargo and third parties, responded to substantial discovery requested by Wells Fargo and sat for depositions.  *See id.*  In fact, Royal Park's discovery efforts have led to the production by Wells Fargo of over 100,711 documents and an additional 420,487 documents from relevant third parties.  For its part, Royal Park has already produced nearly 176,761 documents (totaling over 2,839,831 pages) to date.  Royal Park "understands that, as class representative, it owes a fiduciary duty to all members of the class and will seek to obtain the largest recovery for the class."  Ex. 13, ¶6.  Royal Park's actions, along with the common interest it shares with the Class in prosecuting this case to a successful resolution, fully satisfy Rule 23(a)(4)'s adequacy standard.

There are no antagonistic interests between plaintiff and the Class; plaintiff "'possess[es] the same interest and suffer[ed] the same injury as the class members.'"  *DLJ*, 2014 WL 1013835, at *7. Plaintiff holds Certificates in each of the Covered Trusts and was damaged as a result of Wells Fargo's failure to comply with its contractual and common-law obligations.  Likewise, each Class member acquired and held Certificates in the Covered Trusts, was similarly damaged and shares the common goal of maximizing the amount recovered.  *See* ¶16.

Wells Fargo's experts' contentions that the plaintiff's damages methodology "creates and cannot resolve conflicts among Royal Park and other class members" are without merit.[7]

---

[7]   *See* Ex. 14, ¶115 (James Report); Ex. 15, ¶¶121-129 (Dolan Report); Ex. 16, ¶¶77-91 (Cohen-

Irrespective of any investor preference, the Governing Agreements "dictate the scope of Defendant's duties to Plaintiffs." MTD Order at 7. Any purported conflict between investor preferences is irrelevant given that "the Trustee's obligations . . . are governed by contractual and common law terms and are independent of the 'incentives' of individual class members." Ex. 17, ¶96 (Dalrymple Rebuttal Report); *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 WL 4613390, at *12 n.11 (S.D.N.Y. Aug. 31, 2016) (holding that "[t]he historical opinion of a non-party to a contract (even if the non-party became a third party beneficiary) can[not] . . . alter the contractual terms"). In fact, concerns regarding purported conflicts between investor preferences supports class treatment given the damages model "would apply a single set of counterfactual assumptions to compute damages for all class members" – an approach that would ensure consistent treatment among Certificateholders while maximizing judicial resources. *See* Ex. 17, ¶97.

Courts in this Circuit have rejected identical intraclass conflict contentions. In *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160 (S.D.N.Y. 2011), *aff'd*, 477 F. App'x 809 (2d Cir. 2012), defendants argued that "purchasers of the more senior certificates will be in conflict with purchasers of subordinate certificates." *Id.* at 164. The court disagreed, characterizing defendants' concerns as "largely conjectural" and ruling that, even if such conflicts existed, they were not "fundamental." *Id.* at 164-65 (citing *Flag Telecom*, 574 F.3d at 35); *see also N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, No. 08-CV-5310 (DAB), 2016 WL 7409840, at *6-*7 (S.D.N.Y. Nov. 4, 2016) (same). The conflict concerns raised by Wells Fargo's experts do not bar class treatment.

Cole Report).

- 12 -

1295059_1

**B.      The Requirements of Rule 23(b)(3) Are Also Satisfied**

**1.      Common Questions of Law and Fact Predominate**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  "The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'"  *US Foodserv.*, 729 F.3d at 118 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).  This standard "'does not require a plaintiff to show that there are no individual issues.'"  *IndyMac*, 286 F.R.D. at 236.  Instead, it requires that "'a court's inquiry [be] directed primarily toward whether the issue of liability is common to members of the class.'"  *See J.P. Morgan*, 301 F.R.D. at 136 (quoting *IndyMac*, 286 F.R.D. at 236).

In order to prevail on its breach of contract claims, the Class must demonstrate "'(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages suffered as a result of the breach.'"  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 596-97 (S.D.N.Y. 2015).  The primary common questions the Class must address will be whether Wells Fargo: (1) failed to enforce R&W breaches; (2) failed to notify Master Servicers and Servicers of their failures to fulfill their obligations; (3) failed to declare Events of Default; (4) failed to act as a reasonable person would to protect its own assets; and (5) failed to notify investors upon learning of breaches and Events of Default.  With respect to the Class' breach of trust claims, the predominant question will be whether Wells Fargo put its own interests ahead of the Class when it failed to take the necessary actions despite knowing of Events of Default and R&W breaches.  These questions will be answered through common proof.

- 13 -

The existence and scope of Wells Fargo's contractual obligations will be established through common evidence – the substantially identical provisions of the Governing Agreements.  With respect to these obligations, the requirements imposed on and conduct expected of Wells Fargo is the same for all of the Covered Trusts and as to all Class members.  *US Foodserv.*, 729 F.3d at 124.

Each of the Covered Trusts' Governing Agreements used substantially identical language to outline Wells Fargo's duties.  *Compare* Ex. 11, *with* Ex. 12.  Thus, while there are several contracts at issue in the action, no individualized inquiries will be necessary.  Under similar circumstances, courts in this Circuit have found predominance to be satisfied.  *See, e.g.*, *Fleisher*, 2013 WL 12224042, at *13 ("certification under Rule 23(b)(3) is warranted for claims that involve contracts that . . . contain the same or essentially the same terms").[8]

Common evidence will also be used to demonstrate that Wells Fargo breached its obligations.  Wells Fargo's administration of the Covered Trusts was guided by a uniform set of policies.  Wells Fargo established uniform procedures regarding: (1) "rout[ing repurchase] notices that came in to the correct group to process them" (Ex. 18 at 46:2-7); (2) "determin[ing] whether or not a breach of a rep[resentation] and warrant[y] was a material breach" (Ex. 19 at 107:13-18); (3) "sending [breach] notices to responsible parties" (Ex. 18 at 46:8-12); *see also* Ex. 20 (WF_RP_000855103) ███████████████████ (4) entering information into the Repurchase Database (Ex. 18 at 73:12-16); (5) ██████████████████████████████████ ██████████████████ (Ex. 21); (6) "monitor[ing] trusts . . . to ensure that a servicer termination trigger has not been triggered" (Ex. 22 at 160:18-161:12); (7) tickler maintenance (Ex. 23 at 270:11-21); (8) "determin[ing] what is [a m]aterial and what is not [a] material" exception (Ex.

---

8    Even where multiple contracts are at issue, class treatment is nonetheless appropriate so long as the relevant provisions are similar.  *Wu v. Pearson Educ., Inc.*, 277 F.R.D. 255, 265 (S.D.N.Y. 2011); *see also Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005).

- 14 -

24 at 172:2-10); and (9) ███████████████████████████████████████

████████████████████████ (Ex. 25). ███████████████████████████████

███████████ *See, e.g.*, Ex. 26 at 149:5-16 ("[T]here is a template per se that we use for the

demands"); Ex. 27 at 3 ███████████████████████████████████████████

██████████████████████████████████████████ Ex. 28.

To administer the Covered Trust, Wells Fargo relied on its Trust Administration Group. *See,*

*e.g.*, Ex. 23 at 38:25-41:17; Ex. 29 at 51:21-25 ("So they are the ones monitoring for compliance

. . . ."). Other groups within the Corporate Trust Services division include: the Default and

Restructuring team, which would address "escalated matters within Corporate Trust" that include

"pending litigation; threatened litigation; bankruptcy of a deal party; [and] potential events of

default" (Ex. 30 at 15:14-16:2); Mortgage Asset Services Servicer Oversight, which was the "main

or primary contact group that [Wells Fargo] would use to reach out to servicers to resolve servicer-

related issues" (Ex. 23 at 77:16-22); and the Repurchase Management team, responsible for

"overseeing the repurchase process" (Ex. 26 at 34:20-35:9). Accordingly, "'[e]ach of the

Certificates purchased by the Plaintiffs and the Class were [administered] . . . pursuant to [the] same

process by the same Defendants.'" *Merrill Lynch*, 277 F.R.D. at 113. "The alleged flaws common

to that process" would "be the subject of common proof." *Id*.

Wells Fargo's conduct, which was subject to the common controls established by its various

policies and procedures, will predominate as to each Covered Trust. *See J.P. Morgan*, 301 F.R.D. at

136 (common questions predominate where "[t]he class members' proof of liability will principally

require an examination of the [defendant's conduct] pursuant to the same basic process"); *Merrill*

*Lynch*, 277 F.R.D. at 113 (same). Wells Fargo's discovery that a vast number of underlying Loans

violated R&Ws made in the Governing Agreements will also be subject to common proof. *See*

- 15 -

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 163 (2d Cir. 2012).

For example, the Class will seek to prove that the Loans underlying the Covered Trusts breached the R&Ws through loan re-underwriting. Courts have regularly found loan re-underwriting to be an appropriate method to answer common questions of whether loans in multiple offerings were originated in breach of stated guidelines. *See DLJ*, 2014 WL 1013835, at *11 ("'[I]nformation . . . to the effect that underwriting guidelines were actually followed . . . [is] largely subject to generalized proof.'"); *J.P. Morgan*, 301 F.R.D. at 137 (same). Common evidence of the Covered Trusts' economic losses, widely disseminated investigative reports of origination, and servicing failures and predatory schemes will all be common to the Class – and will collectively, together with evidence adduced during discovery, demonstrate Wells Fargo's liability.

Finally, each Class member's damages will be measured by a common methodology based on published data with respect to the performance of the Loans and a re-underwriting analysis of the Loans. With respect to R&W breaches, the impact of Wells Fargo's alleged failure to act can be measured by analyzing the extent to which losses in each Covered Trust were associated with Loans that breached the Warrantor's R&Ws. Ex. 6, ¶¶51-58. The analysis will include an examination of Loans within a Covered Trust to identify those that were materially and adversely affected by R&W breaches and to determine the extent to which losses on these Loans would have been avoided if Wells Fargo had enforced the Warrantors' obligations to repurchase, replace or cure defective loans. *Id*. Similar to claims related to Wells Fargo's alleged failure to enforce R&W provisions, the impact of the alleged servicing failures will also involve the analysis of Loans within a Covered Trust to identify Events of Default and to assess the extent to which these resulted in higher losses to the collateral pool. *Id*. The damage calculations are formulaic, such that each Class member's damages calculation is performed in the same manner. *Id*.

Although the amount of a Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class." *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *see also Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)"); *Dodona I*, 296 F.R.D. at 271 (where plaintiff's expert has offered a "class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance"). As a result, plaintiff will be able to establish Wells Fargo's liability and the amount of any damages through generalized proof and a class-wide, common methodology, respectively. Thus, Rule 23(b)(3)'s predominance requirement is satisfied.

Wells Fargo's experts contend that plaintiff has not demonstrated that damages are calculable on a class-wide bases. *See* Ex. 31 at 67:13-18; Ex. 32 at 8:16-19. These contentions are false. Wells Fargo did not even ask its experts to determine whether damages were calculable on a class-wide basis. *See* Ex. 16, ¶20; Ex. 15, ¶9; Ex. 14, ¶17. And their reports do not contain an analysis of whether or not damages can be calculated on a class-wide basis. Ex. 32 at 9:6-11 ("Q: Have you done an analysis to determine whether or not damages can be calculated on a class-wide basis? A: I wasn't asked to put forward a damages analysis."); Ex. 31 at 68:8-21; Ex. 33 at 121:12-122:8.

Regardless, damages are necessarily calculable on a class-wide basis. First, the methodology proposed by plaintiff's counsel can "clearly account for any relevant factors related to damages calculations, including those raised by Defendant's Experts." Ex. 17, ¶20. The proposed damages methodology can accommodate the following assumptions, if necessary: (1) one or more "but-for" repurchase scenarios; (2) repurchase requests made of multiple Warrantors; (3) different resolutions of each repurchase request; (4) costs of enforcing the contractual obligations; and (5) different

- 17 -

waterfall rules across time for both Covered Trusts.  Ex. 17, ¶25.  Wells Fargo's own expert report demonstrates how applying damages to the trusts is formulaic.  Ex. 17, ¶29 (citing Ex. 16 (Ex. 7 thereto)).  Second, contrary to Wells Fargo's expert's contention, any consideration regarding a Class member's ownership of the relevant Certificates is irrelevant to the calculation of class-wide damages.  Ex. 17, ¶42.  Such a concern erroneously "conflates issues pertaining to the *allocation* of damages with the *calculation* of class-wide damages."  Ex. 17, ¶44 (emphasis in original).  And third, class-wide damages are calculable irrespective of market efficiency or secondary market prices "[b]ecause the value of RMBS certificates at any point in time depends on the expected future cash flows."  Ex. 17, ¶91.

Even if damages were not calculable on a class-wide basis, the correct result would not be to deny class certification but rather to certify the Class for liability purposes pursuant to Fed. R. Civ. P. 23(c)(4), which allows an action to be "'maintained as a class action with respect to particular issues.'"  *J.P. Morgan*, 301 F.R.D. at 142 (certifying liability-only class of RMBS purchasers based on showing that "liability may be proven on a classwide basis," declining to find that damages can be calculated on a classwide basis "at this time"); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015).  Here, although not necessary, the Court could certify a class for purposes of determining Wells Fargo's liability while reserving questions about individual class members' damages until after a liability determination were reached.

## 2. A Class Action Is Superior

Rule 23(b)(3) requires plaintiff to establish "superiority" that a class action is a better way to proceed versus some other method.  To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions;

- 18 -

> (B)     the extent and nature of any litigation concerning the controversy already begun by . . . class members;
>
> (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Here, each factor weighs strongly in favor of class certification.

First, there is no overwhelming interest by Class members to proceed individually.  "'[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class,'" particularly where, as here, "'the advantages of unitary adjudication exist to determine the defendant's liability.'"  *AFTRA*, 269 F.R.D. at 355; *accord IndyMac*, 286 F.R.D. at 243; *Merrill Lynch*, 277 F.R.D. at 121; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *14 (S.D.N.Y. July 27, 2007) (noting that any class members who "would prefer to individually control the prosecution of their claims . . . have the opportunity to opt out or be represented by counsel of their own choice").

Additionally, the maintenance of a class action in this District ensures an efficient expenditure of resources, will save an enormous amount in litigation costs for all parties, and will allow the parties to more efficiently prosecute their claims and defenses.  *See IndyMac*, 286 F.R.D. at 243; *Seekamp*, 2012 WL 860364, at *12.  Because the proposed Class members are located in geographically dispersed areas (*see* Ex. 6, ¶48) and this District has overseen the majority of complex cases relating to mortgage-backed securities, the Southern District of New York is a desirable forum for this class action.  Finally, plaintiff does not foresee any management difficulties that will preclude this case from being maintained as a class action.  Consistent with the requirements of Rule 23(b)(3), the certification of this case as a class action would not only be superior to other available methods for fairly adjudicating the controversy, it would also be the ***best method*** for fairly and efficiently litigating the claims of all members of the proposed Class.

### C.      The Court Should Appoint Plaintiff's Counsel as Class Counsel

The last requirement of Rule 23(g)(4) is that the Court must appoint counsel who will fairly and adequately represent the Class.  In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors:

> (i)      the work counsel has done in identifying or investigating potential claims in the action;
> (ii)      counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii)      counsel's knowledge of the applicable law; and
> (iv)      the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *AFTRA*, 269 F.R.D. at 346.

Plaintiff is represented by Robbins Geller, whose lawyers have served as class counsel in hundreds of securities class actions.  *See* Ex. 13, ¶10.  Courts have repeatedly recognized the ability of Robbins Geller to effectively litigate complex class actions, including RMBS class actions.  *See, e.g.*, *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 158 (S.D.N.Y. 2012); *Sgalambo v. McKenzie*, 268 F.R.D. 170, 174 (S.D.N.Y. 2010); *J.P. Morgan*, 301 F.R.D. at 135; *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, No. 1:08-cv-10783 (LAP), Tr. at 11 (S.D.N.Y. May 2, 2016) (The court noted in connection with precedent-setting RMBS action that Robbins Geller can be "proud of what you've done for your clients.  You've done an extraordinarily good job.") (Ex. 34); Ex. 35 (firm resume).  Robbins Geller has demonstrated its willingness to commit substantial resources to representing the proposed Class and has undertaken significant discovery to uncover the evidence needed to support the claims.  *See* §III.A.4., *supra*.  The ability of Robbins Geller to represent the interests of the Class leads to the conclusion that the requirements of Rule 23(a)(4) and Rule 23(g) are satisfied and that plaintiff's counsel should be appointed as Class Counsel.

**D.      The Proposed Class Is Ascertainable**

**1.      The Standard for Ascertainability Is Not Demanding**

A class definition must be "'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015). "'The standard for ascertainability is not demanding. It is designed only to prevent the certification of a class whose membership is truly indeterminable.'" *In re Facebook, Inc.*, 312 F.R.D. 332, 352-53 (S.D.N.Y. 2015). The fact that it might be "'administratively burdensome'" does not render the class unascertainable. *See Dunnigan v. Metro. Life Ins. Co.*, 214 F.R.D. 125, 136 & n.9 (S.D.N.Y. 2003); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 116 (E.D.N.Y. 2012). Even "formidable" ascertainability difficulties "should not be made into a device for defeating the action." *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014).

Class membership need only be ascertainable at some point in the case. *Brecher*, 806 F.3d at 26 n.2; *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). Courts approve of numerous mechanisms by which class members can be ascertained, including through a claims process, transactions records and class member affidavits. *See, e.g.*, *Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2017 WL 1155398, at *44 (E.D.N.Y. Mar. 27, 2017); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *25 (N.D. Cal. Feb. 21, 2017); *Dover v. British Airways, PLC (UK)*, No. 12 CV 5567 (RJD) (CLP), 2017 WL 1251083, at *8 (E.D.N.Y. Mar. 31, 2017).

Ascertainability is satisfied even if the process required to identify class members proves burdensome. *See, e.g.*, *Dunnigan*, 214 F.R.D. at 136 (where "an examination of the individual files of each of the participants" will determine class membership, "[t]he fact that this manual process may be slow and burdensome cannot defeat the ascertainability requirement"); *Vitamin C*, 279

- 21 -

F.R.D. at 116; *accord Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (noting that Fed. R. Civ. P. 23(c)(2)(B) "'recognizes it might be *impossible* to identify some class members'") (emphasis in original), *petition for cert. filed*, (Apr. 10, 2017); *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 45-46 (D.D.C. 2006) ("any difficulty by individual class members in tracing their particular [securities] . . . is a secondary issue to be resolved after the predominant issue of Defendant Underwriters' liability has been decided") (collecting cases).  The "'failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule.'"  *Ebin*, 297 F.R.D. at 567 (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001)).

### 2. Class Members Can Be Identified Through Trading Data

The members of the Class can be identified through trading data, much of which has already been gathered.  The Certificates at issue are legally owned by the Depository Trust Company ("DTC") in "Book-Entry" form.  *See* Ex. 11 at 23-24 (PDF page numbers); Ex. 12 at 22-24.  DTC receives payments on the Certificates and distributes payments to DTC "Participants," who either own the Certificates or hold assets on behalf of the beneficial owners.  Determining the identity of the beneficial owners is therefore an administratively feasible process.

DTC maintains records of the payments it has made with respect to the Certificates. *See* Wood Decl., ¶¶2-3.  Those records have already been produced by DTC and indicate that, ████ ████████████████████████████████████████████████████ Ex. 17 at 74 (Supplemental Attachment 1).  Of these Participant IDs, just eight separate institutions received over 95% of all payments from DTC with respect to the Certificates. Ex. 17, ¶57.

Royal Park subpoenaed 26 DTC participants seeking records sufficient to identify "'all persons or entities who owned, held, or beneficially owned or held any Certificate, or any portion of

- 22 -

any Certificate, at any point throughout the Relevant Period.'"  Wood Decl., ¶4.  Royal Park

received responses from all but one of these DTC participants or their affiliates identifying beneficial

owners, some of which included detailed trade data.  *See* Wood Decl., ¶4.  The availability of these

records demonstrates that it is administratively feasible to identify the beneficial owners of the

Certificates.[9]

### 3.     Class Members Are Identifiable Through a Claims Process

While the identity of Class members is determinable through the records maintained by DTC

and DTC Participants, courts also routinely utilize claims administrators to determine the identity of

class members and calculate and apportion damages.  *Kurtz*, 2017 WL 1155398, at *44; *Lidoderm*,

2017 WL 679367, at *25.  Indeed, in *Brecher*, the parties settled the claims following the Second

Circuit's decision; and the court approved a claims process that ascertained class members based on

transaction documents and affidavits.  Ex. 38 at 2-3; Ex. 39 at 3.

In *Brecher* the court approved a notice program that took numerous steps to ensure that

potential class members were notified of the action and ascertained.  These steps included:

(i) mailing notice to "251 brokerages, custodial banks, and other institutions ('Nominal Holders')

that hold securities in 'street name' as nominees for the benefit of their customers who are the

beneficial owners of the securities"; (ii) causing the notice "to be published by the Depository Trust

Company ('DTC') on the DTC Legal Notice System ('LENS').  LENS enables the participating

bank and broker nominees to review the Claim Package and contact the Claims Administrator for

copies of the Claim Package for their beneficial holders"; (iii) causing the notice "to be transmitted

---

[9]     Wells Fargo's own records can also be used to identify Class members.  For example, Wells
Fargo admitted that its Trust Administration Group has access to Certificateholder lists.  Ex. 23 at
38:25-39:11.  Moreover, Wells Fargo is the Paying Agent for both Covered Trusts.  Ex. 11, ¶5.05(a);
Ex. 36 (WF_RP_000573305); Ex. 12, ¶3.08(a); Ex. 37 (WF_RP_000127748).  If Wells Fargo can
make payments to Certificateholders, there is no reason why the same process cannot be used to
identify, and distribute payments to, Class members.

over the *PR Newswire* and . . . over *Euroclear*"; and (iv) collecting "claim forms" requiring class members to provide identifying information concerning themselves, their investments, any sales, and trade data, if applicable.  Ex. 40, ¶¶5-6, 13; Ex. 39 at 2.  Wells Fargo's experts have provided no evidence whatsoever to suggest that such efforts will be insufficient to ascertain the members of this Class.

Contrary to what Wells Fargo will likely contend, *Brecher* in no way forecloses ascertaining the class members through this type of process and, in fact, supports the methodology proposed here. The record here is drastically different from the record presented in *Brecher*, where the plaintiff's brief failed to cite evidence regarding ascertainability.  Ex. 41 at 19-27; *see also* Ex. 42 at 8-14. According to the defendant in *Brecher*, "after six years of litigation, no member of this class other than the named purported class representative . . . has ever been identified."  Ex. 43 at 18 (emphasis omitted).  Here, Royal Park has presented robust evidence regarding the ascertainability of the Class and has already identified 185 potential Class members.  Ex. 6, ¶4.  Notwithstanding the Second Circuit's conclusion that the plaintiff had failed to establish ascertainability at that time, Judge Griesa issued an Opinion and Order granting final approval to "settlements reached in nine class action cases against the Republic of Argentina," including the *Seijas* and *Brecher* actions.  *Seijas v. Republic of Arg.*, No. 04-cv-400 (TPG), 2017 WL 1511352, at *1 (S.D.N.Y. Apr. 27, 2017).  Judge Griesa approved of a notice process designed to identify class members.  Ex. 38 at 2-3.  Identifying, and determining the validity of the submitted claims from, the class required no court intervention. Ex. 39 at 7 ("As a result of their extensive negotiations, with two very minor exceptions explained below, the parties have been able to agree upon the validity of all of the filed claims.").  To the extent ascertainability was relevant in *Brecher*, any deficiencies were driven by a failure of proof by the plaintiff, not with any intrinsic inability to identify purchasers of the bonds.  Royal Park has

- 24 -

demonstrated ascertainability by the preponderance of the evidence, and the Class should be certified.

### 4.      Potential Assignment of Claims Is Irrelevant

Contrary to the unsupported opinions of Wells Fargo's experts, potential assignment of claims is not a bar to ascertainability.  That claims related to the Certificates may have been assigned is not unique to this case; indeed, virtually any claim related to any security is assignable – and that fact has never been a bar to class certification.  *See* N.Y. Gen. Oblig. Law §13-101; *see also Farey-Jones v. Buckingham*, 132 F. Supp. 2d 92 (E.D.N.Y. 2001) (Rule 10b-5 securities claims assignable). The mere fact that a claim could be assigned, therefore, is not a bar to certification.  Despite thousands of securities class actions, Royal Park is aware of no situation where a court had to adjudicate assignment disputes in resolving a class action.  Wells Fargo's attempt to manufacture speculative issues to defeat class certification should be rejected.  *Lidoderm*, 2017 WL 679367, at *25.

## IV.     CONCLUSION

Royal Park respectfully requests the Court: (a) certify this as a class action pursuant to Rule 23; (b) appoint Royal Park as Class Representative; and (c) appoint Robbins Geller as Class Counsel.

DATED:  August 10, 2017                   Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD


                                          s/ Christopher M. Wood
                                          CHRISTOPHER M. WOOD

- 25 -

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
J. MARCO JANOSKI GRAY
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jsanchez@rgrdlaw.com

Attorneys for Plaintiff

- 26 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 19, 2018.

s/ CHRISTOPHER M. WOOD
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
   & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)

E-mail:cwood@rgrdlaw.com

# Mailing Information for a Case 1:14-cv-09764-KPF-SN Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Amherst Advisory & Management, LLC**
  gklein@mckoolsmith.com

- **Joseph James Boylan**
  jboylan@jonesday.com,nydocket@jonesday.com

- **Harold Keith Gordon**
  hkgordon@jonesday.com,nydocket@jonesday.com

- **Kurt Michael Gosselin**
  kgosselin@jonesday.com,nydocket@jonesday.com

- **Paul Bartholomew Green**
  bartgreen@jonesday.com,nydocket@jonesday.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jason Jurgens**
  jjurgens@jonesday.com,nydocket@jonesday.com,jtreanor@JonesDay.com,tesolomon@JonesDay.com

- **Rebekah B. Kcehowski**
  rbkcehowski@jonesday.com,nydocket@jonesday.com

- **Gayle Rosenstein Klein**
  gklein@mckoolsmith.com,kmtrahan@mckoolsmith.com,gpineiro@mckoolsmith.com,gayle-klein-4119@ecf.pacerpro.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,susanw@rgrdlaw.com

- **Elisa Lee**
  elee@mckoolsmith.com,elisa-lee-0388@ecf.pacerpro.com

- **Traci Leigh Lovitt**
  tlovitt@jonesday.com,nydocket@jonesday.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Clay J. Pierce**
  clay.pierce@dbr.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Tracy V. Schaffer**
  tschaffer@jonesday.com,nydocket@jonesday.com

- **Howard Fredrick Sidman**
  hfsidman@jonesday.com,nydocket@jonesday.com

- **Eric Peter Stephens**
  epstephens@jonesday.com,nydocket@jonesday.com

- **Jayant W. Tambe**
  jtambe@jonesday.com,mmarcucci@jonesday.com,nydocket@jonesday.com

- **Michael O. Thayer**
  mothayer@jonesday.com,nydocket@jonesday.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)