UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
ROYAL PARK INVESTMENTS SA/NV,        :   Civil Action No. 1:14-cv-09764-KPF-SN
Individually and on Behalf of All Others    :
Similarly Situated,                  :   CLASS ACTION
                                     :
                  Plaintiff,         :   MEMORANDUM OF LAW IN SUPPORT
                                     :   OF PLAINTIFF ROYAL PARK
       vs.                           :   INVESTMENTS SA/NA'S RULE 72
                                     :   OBJECTION AND MOTION TO VACATE
WELLS FARGO BANK, N.A., as Trustee,  :   THE MAGISTRATE JUDGE'S OPINION &
                                     :   ORDER AND REPORT &
                  Defendant.         :   RECOMMENDATION CONCERNING ITS
———————————————————— x   MOTION FOR CLASS CERTIFICATION

# [REDACTED]

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................1

II.  BACKGROUND ......................................................................................................2

III.  STANDARD OF REVIEW APPLICABLE TO THE R&R ...............................4

IV.  STANDARD APPLICABLE TO CLASS CERTIFICATION UNDER FED. R. CIV. P. 23 .............................................................................................................5

V.  ARGUMENT ..........................................................................................................6

    A.  The R&R Erred in Finding that Individual Issues Predominate ..............................6

        1.  The Central Question in This Case – Wells Fargo's Liability – Is Indisputably Common to All Class Members ...............................................7

        2.  The Individual Issues Identified by the R&R Do Not Predominate and Are Irrelevant as a Matter of Law ........................................................8

            a.  Proving a Class Member's Standing Does Not Predominate over Establishing Wells Fargo's Liability ......................................8

                (1)  The Availability of Trading Records Strongly Support Predominance .......................................................10

                (2)  Hypothetical Issues Regarding Assignment of Litigation Rights Are Insufficient to Defeat Predominance ...............................................................13

            b.  A Hypothetical Statute of Limitations Defense Is Insufficient to Defeat Predominance ..............................................15

            c.  Individual Damage Calculations Do Not Predominate .................16

            d.  Conducting the Appropriate Comparative Analysis, Common Issues Predominate ....................................................17

    B.  The R&R Erred in Finding that a Class Action Is Not Superior ...........................18

        1.  Royal Park Established Manageability ....................................................19

        2.  Most Class Members Do Not Have the Ability to Individually Prosecute the Claims..............................................................................21

**Page**

C.      The R&R Erred in Declining to Recommend that the Court Certify a
         Liability-Only Class Pursuant to Rule 23(c)(4) ....................................................22

VI.      CONCLUSION ..................................................................................................................25

- ii -

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................21

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   No. CV 13-02529 MMM, 2015 WL 12732462
   (C.D. Cal. May 29, 2015) ......................................................................14

*Bd. of Tr. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
   269 F.R.D. 340 (S.D.N.Y. 2010) ...........................................................22

*Blyden v. Mancusi*,
   186 F.3d 252 (2d Cir. 1999) ...................................................................23

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ...........................................................9, 12

*Brown v. China Integrated Energy, Inc.*,
   No. CV 11-02559 BRO, 2015 WL 12720322
   (C.D. Cal. Feb. 17, 2015) ......................................................................10

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) .....................................................................8

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004) ..................................................................22

*Charron v. Pinnacle Grp. N.Y. LLC*,
   269 F.R.D. 221 (S.D.N.Y. 2010) ...........................................................23

*Commerzbank AG v. Deutsche Bank Nat'l Trust Co.*,
   234 F. Supp. 3d 462 (S.D.N.Y. 2017) ....................................................16

*Demmick v. Cellco P'ship*,
   No. 06-2163 (JLL), 2010 WL 3636216
   (D.N.J. Sept. 8, 2010) ............................................................................19

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ...............................................................................21

*Deutsche Bank Nat'l Tr. Co. v. WMC Mortg., LLC*,
   No. 3:12-CV-933 (CSH), 2015 WL 1650835
   (D. Conn. Apr. 14, 2015) .......................................................................23

1367476_1

Page

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   296 F.R.D. 261 (S.D.N.Y. 2014) ........................................................................16

*Dover v. British Airways, PLC (UK)*,
   321 F.R.D. 49 (E.D.N.Y. 2017) ...........................................................................8

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
   89 F.R.D. 87 (S.D.N.Y. 1981) ............................................................................18

*Farley v. Baird, Patrick & Co.*,
   No. 90 Civ. 2168 (MBM), 1992 WL 321632
   (S.D.N.Y. Oct. 28, 1992) ....................................................................................11

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11 Civ. 8405(CM), 2013 WL 12224042
   (S.D.N.Y. July 12, 2013) ......................................................................................8

*Fogarazzo v. Lehman Bros.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ..........................................................................5

*Freeland v. Iridium World Commc'ns, Ltd.*,
   233 F.R.D. 40 (D.D.C. 2006) ...............................................................................9

*Gortat v. Capala Bros.*,
   No. 07-cv-3629 (ILG), 2010 WL 1423018
   (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 F. App'x 78 (2d Cir. 2014) ..........................4

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
   242 F.R.D. 568 (W.D. Wash. 2007) ...................................................................16

*Green v. Wolf Corp.*,
   406 F.2d 291 (2d Cir. 1968) ..................................................................................5

*Houser v. Pritzker*,
   28 F. Supp. 3d 222 (S.D.N.Y. 2014) ...................................................................23

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100
   (E.D.N.Y. Oct. 15, 2014) ....................................................................................20

*In re Alstom SA Sec. Litig.*,
   253 F.R.D. 266 (S.D.N.Y. 2008) ..........................................................................5

- iv -

**Page**

*In re Amaranth Nat. Gas Commodities Litig.*,
 269 F.R.D. 366 (S.D.N.Y. 2010) ............................................................. 5

*In re Amla Litig.*,
 No. 16-cv-6593, 2017 WL 4792256
 (S.D.N.Y. Oct. 24, 2017) ......................................................................... 8

*In re Baldwin-United Corp. Litig.*,
 122 F.R.D. 424 (S.D.N.Y. 1986) .......................................................... 10

*In re Bayer AG Sec. Litig.*,
 No. 03 Civ. 1546 (WHP), 2008 WL 5336691
 (S.D.N.Y. Dec. 15, 2008) ...................................................................... 11

*In re Beacon Assocs. Litig.*,
 No. 09 Civ. 777 (LBS) (AJP), 2012 WL 1569827
 (S.D.N.Y. May 3, 2012) ........................................................................... 5

*In re Deepwater Horizon*,
 739 F.3d 790 (5th Cir. 2014) .................................................................. 25

*In re Dig. Music Antitrust Litig.*,
 321 F.R.D. 64 (S.D.N.Y. 2017) ............................................................. 15

*In re DVI Inc. Sec. Litig.*,
 249 F.R.D. 196 (E.D. Pa. 2008),
 *aff'd*, 639 F.R.D. 623 (3d Cir. 2011) .................................................... 11

*In re IndyMac Mortg.-Backed Sec. Litig.*,
 286 F.R.D. 226 (S.D.N.Y. 2012) .................................................... 11, 20

*In re Initial Pub. Offering Sec. Litig.*,
 671 F. Supp. 2d 467 (S.D.N.Y. 2009) .................................................... 14

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
 204 F.R.D. 330 (N.D. Ohio 2001) ......................................................... 21

*In re JPMorgan Chase & Co. Sec. Litig.*,
 No. 12 Civ. 03852 (GBD), 2015 WL 1043343
 (S.D.N.Y. Sept. 29, 2015) ...................................................................... 10

*In re Linerboard Antitrust Litig.*,
 305 F.3d 145 (3d Cir. 2002) ................................................................... 15

Page

*In re Nassau Cty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)....................................................................6, 7, 8, 23

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017)...................................................................6, 9, 17, 25

*In re Prograf Antitrust Litig.*,
    No. 1:11-md-02242-RWZ, 2014 WL 4745954
    (D. Mass. June 10, 2014) ......................................................................................24

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .............................................................................5

*In re Revco Sec. Litig.*,
    142 F.R.D. 659 (N.D. Ohio 1992) .........................................................................21

*In re Syngenta AG MIR 162 Corn Litig.*,
    No. 14-md-2591-JWL, 2016 WL 5371856
    (D. Kan. Sept. 26, 2016) .......................................................................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)......................................................................13, 19, 25

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) .....................................................................15, 16

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013) .......................................................................6, 23

*Kaye v. Amicus Mediation & Arbitration Grp., Inc.*,
    300 F.R.D. 67 (D. Conn. 2014)..............................................................................13

*Kazolias v. IBEW LU 363*,
    806 F.3d 45 (2d Cir. 2015)........................................................................................5

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) .............................................................................19

*Krakauer v. Dish Network L.L.C.*,
    311 F.R.D. 384 (M.D.N.C. 2015) .....................................................................13, 15

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ......................................................................16, 21

- vi -

Page

*Makaeff v. Trump Univ., LLC*,
  309 F.R.D. 631 (S.D. Cal. 2015) ........................................................................25

*Marin v. Apple-Metro, Inc.*,
  No. 12 CV 5274 (ENV) (CLP), 2017 WL 4950009
  (E.D.N.Y. Oct. 4, 2017) .........................................................................................8

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016)..................................................................................14

*McCarthy v. Manson*,
  714 F.2d 234 (2d Cir. 1983)....................................................................................3

*McNeill v. N.Y. City Hous. Auth.*,
  719 F. Supp. 233 (S.D.N.Y. 1989).........................................................................5

*Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*,
  280 F. Supp. 2d 184 (S.D.N.Y. 2003).....................................................................4

*Osberg v. Foot Locker, Inc.*,
  No. 07-cv-1358 (KBF), 2014 WL 5800501
  (S.D.N.Y. Nov. 7, 2014) ..................................................................................7, 15

*Pall Corp. v. Entegris, Inc.*,
  249 F.R.D. 48 (E.D.N.Y. 2008) ..............................................................................4

*Phillips Petro. Co. v. Shutts*,
  472 U.S. 797 (1985)...............................................................................................21

*Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014) ..............................................................11, 22, 24

*Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ......................................................................11, 18

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)..................................................................................16

*Robinson v. Metro-North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)............................................................................23, 25

*Seijas v. Republic of Arg.*,
  No. 04-cv-400 (TPG), 2017 WL 1511352
  (S.D.N.Y. Apr. 27, 2017).....................................................................................12

- vii -

*Page*

*Steinberg v. Nationwide Mut. Ins. Co.,*
   224 F.R.D. 67 (E.D.N.Y. 2004) ...................................................................................15

*Sterling v. Velsicol Chem. Corp.,*
   855 F.2d 1188 (6th Cir. 1988) ....................................................................................22

*Suchanek v. Sturm Foods, Inc.,*
   764 F.3d 750 (7th Cir. 2014) ......................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo,*
   ___ U.S. ___, 136 S. Ct. 1036 (2016) ...........................................................7, 14, 17

*United States v. City of New York,*
   276 F.R.D. 22 (E.D.N.Y 2011) ...................................................................................19

*West v. Prudential Sec., Inc.,*
   282 F.3d 935 (7th Cir. 2002) ......................................................................................18

**STATUTES, RULES AND REGULATIONS**

28 U.S.C.
   §636(b)(1) ......................................................................................................................5

Federal Rules of Civil Procedure
   Rule 23 ................................................................................................................. *passim*
   Rule 23(a)..................................................................................................3, 4, 5, 23
   Rule 23(b) .................................................................................................................5, 23
   Rule 23(b)(3) ........................................................................................................ *passim*
   Rule 23(c)(4) ........................................................................................................ *passim*
   Rule 72(b) .....................................................................................................................4
   Rule 72(b)(3).................................................................................................................4
   Rule 72(b)(2).................................................................................................................1

**SECONDARY AUTHORITIES**

Edward F. Sherman, *Class Actions and Duplicative Litig.,*
   62 Ind. L.J. 507 (1987)...............................................................................................23

7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice & Procedure* (3d ed. 2005)
   §1790...........................................................................................................................24

1367476_1

**Page**

12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
*Federal Practice and Procedure* (3d ed. 2014)
§3070.2..................................................................................................................................4

2 William B. Rubenstein,
*Newberg on Class Actions* (5th ed. 2012)
§4:51 ...................................................................................................................................6

- ix -

## I.      INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(b)(2), plaintiff Royal Park Investments SA/NV ("Royal Park") objects to the January 10, 2018 Opinion & Order and Report & Recommendation (the "R&R") (ECF No. 442), solely to the extent the R&R: (i) concludes that Royal Park failed to satisfy the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3); and (ii)  recommends against certifying a liability-only class pursuant to Rule 23(c)(4).

Upending decades of Supreme Court and Second Circuit jurisprudence, the R&R reaches a virtually unprecedented result – that in spite of fundamental common questions about Wells Fargo Bank, N.A.'s ("Wells Fargo") liability, individual inquiries regarding class members' standing, timeliness, and of damages are so significant as to overwhelm the efficiencies and benefits of certification.  In reaching this conclusion, the R&R relied on speculation by Wells Fargo, which has no basis in fact, and was asserted solely to avoid liability to class members, many of whom lack the ability to bring economically viable claims.

The R&R also commits clear legal error.  Predominance and superiority are comparative inquiries, requiring the Court to rigorously examine whether common issues predominate over individual inquiries, and whether a class action is superior to the alternative.  The R&R does not perform the required comparisons; had it done so, it could not have rejected certification.

With respect to predominance, the R&R never performs an actual comparison in concluding that resolving theoretical standing, statute of limitations, and damages questions predominant over the common question of Wells Fargo's liability for its contractual and common law violations. When liability is a common question, it is all but impossible for individual issues to predominate.

The R&R's superiority analysis is similarly flawed.  It is undisputed that the purported individual inquires identified in the R&R are not the product of the class mechanism, and, if relevant

at all, would be more laborious to resolve in individual actions brought by class members.  Instead, the R&R appears to reject superiority by reasoning that a class action would be more complex than the alternative of class members simply not bringing any claims at all, and having no opportunity to recover for their losses.  This is antithetical to the very purpose of Rule 23, and the case law soundly rejects the notion that the complexities inherent in the class mechanism provide a basis to shut the courthouse doors to aggrieved class members who choose to not directly litigate against one of the most powerful and well-resourced defendants in the world.

Finally, the R&R's recommendation against a liability-only class is erroneous because it rejects certification based on the very inquiries a liability-only class is designed to remove from consideration, neither of which are sufficient to deny Rule 23(b)(3) certification in the first place.

## II.    BACKGROUND

The Court is familiar with the factual allegations at issue in this case.  ECF No. 291 at 4-13. In short, Royal Park alleges that Wells Fargo violated its contractual and common law obligations as Trustee for two residential mortgage-backed securities ("RMBS") trusts.  ECF No. 24, ¶¶1-27.  The Complaint alleges that Wells Fargo discovered widespread documentation errors and pervasive seller representation and warranties ("R&Ws") breaches, and knew of systemic servicing violations.  *Id.*, ¶¶10, 15, 72.  Yet in conflict with Certificateholders' interests, Wells Fargo failed to protect Certificateholders because doing so would have exposed Wells Fargo to massive liability for its own RMBS selling and servicing misconduct.  *Id.*, ¶¶21-23.  On March 30, 2017, this Court largely denied Wells Fargo's motion to dismiss.  ECF No. 291.

On May 26, 2017, Royal Park filed its Motion for Class Certification and Appointment of Class Representative and Class Counsel and Memorandum of Law in Support (the "Motion"), seeking certification of the following class:

1367476_1

> All persons and entities who held Certificates in the Covered Trusts at any time between the date of issuance to no later than 60 days after notice of class certification and opportunity to opt out is issued and were damaged as a result of Wells Fargo Bank, N.A.'s conduct alleged in the Complaint. Excluded from the Class are defendant, the loan originators, the Warrantors, the Master Servicers and the Servicers to the Covered Trusts, and their officers and directors, their legal representatives, successors or assigns, and any entity in which they have or had a controlling interest.

ECF No. 359 at 1.[1]  The Motion, as well as the Reply in Support of Plaintiff Royal Park Investments SA/NV's Motion for Class Certification and Appointment of Class Representative and Class Counsel (the "Reply") (ECF No. 397), described in detail how Wells Fargo's breaches of its contractual and common law obligations to the class, and the necessary methodology for calculating damages, were exclusively questions common to the class that predominated over any individual inquiries.  ECF No. 448 at 2-5, 7-8, 13-18, 21-15; ECF No. 397 at 2-12.

On January 10, 2018, Magistrate Judge Netburn issued the R&R, (i) denying Wells Fargo's motion to exclude the opinions of Royal Park's damages expert, W. Scott Dalyrmple; and (ii) recommending that Royal Park's Motion be denied.[2]  ECF No. 442.

With respect to the Motion, the R&R first concluded that the members of the proposed Class could be ascertained, stating that "[t]hough it may be difficult, the Court is satisfied that it is possible to ascertain the class based on Royal Park's class definition."  R&R at 13-15.[3]

Next, the R&R concluded that the proposed class met the prerequisites of Fed. R. Civ. P. 23(a).  R&R at 16-22.  Royal Park established: (i) **_numerosity_**, because the proposed Class exceeded 40 members and "joinder of all members is impracticable"; (ii) **_commonality_**, because "questions of whether Wells Fargo breached certain provisions of the underlying agreements are common ones

---

[1]   A corrected version of the Motion was filed on August 10, 2017.  ECF No. 396.  Subsequently, on January 19, 2018, a less-redacted version of the Motion was filed.  ECF No. 448.

[2]   Wells Fargo did not timely object to any portion of the R&R, thereby waiving any potential objections.  _McCarthy v. Manson_, 714 F.2d 234, 237 (2d Cir. 1983).

[3]   Emphasis is added and citations are omitted throughout unless otherwise indicated.

- 3 -

material to the resolution of this litigation"; (iii) *typicality*, because "'defendants committed the same wrongful acts in the same manner, against all members of the class,'" and because Wells Fargo failed to demonstrate that "Royal Park is subject to 'unique' defenses that will 'become the focus of the litigation'"; and (iv) *adequacy*, because Robbins Geller "has demonstrated a thorough understanding of the litigation process and substantive subject matter," and Royal Park "could fairly and adequately protect the interests of other class members." *Id.*

Nonetheless, the R&R concluded (or "suggest[ed]") that Royal Park had not demonstrated predominance or superiority, and recommended against certification of a Rule 23(c)(4) class. R&R 22-36.

## III.   STANDARD OF REVIEW APPLICABLE TO THE R&R

"When a magistrate judge issues a report and recommendation regarding [class certification], '[t]he district judge *must* determine de novo any part of the magistrate judge's disposition that has been properly objected to.'" *Gortat v. Capala Bros.*, No. 07-cv-3629 (ILG), 2010 WL 1423018, at *1 (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 F. App'x 78 (2d Cir. 2014); Fed. R. Civ. P. 72(b). "Under the *de novo* standard, the Court will make an independent determination of the relevant issue, giving no deference to any previous resolution of such issue." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008) (citing Fed. R. Civ. P. 72(b)); *accord* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* §3070.2, at 443 (3d ed. 2014) ("'De novo review' means the district court must consider the matter referred to a magistrate judge anew, as if it had not been heard before and as if no decision previously had been rendered."). The "Court is not limited to consideration of evidence presented to the magistrate judge, but may review the entirety of the record." *Pall*, 249 F.R.D. at 52; *Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.*, 280 F. Supp. 2d 184, 198 (S.D.N.Y. 2003); Fed. R. Civ. P. 72(b)(3) ("The district judge may accept, reject, or modify

the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."); *Kazolias v. IBEW LU 363*, 806 F.3d 45, 54 (2d Cir. 2015) ("28 U.S.C. §636(b)(1) . . . expressly provides that the district court in these circumstances "may also receive further evidence.").

## IV.   STANDARD APPLICABLE TO CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

"The Second Circuit requires a 'liberal' construction of Rule 23," *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 178 (S.D.N.Y. 2005), "'rather than [a] restrictive construction, and ***courts are to adopt a standard of flexibility***' when assessing motions for class certification." *In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (LBS) (AJP), 2012 WL 1569827, at *3 (S.D.N.Y. May 3, 2012); *see also In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 378 (S.D.N.Y. 2010); *McNeill v. N.Y. City Hous. Auth.*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989) (remarking that a "liberal" construction of Rule 23 allows it to "best serve the ends of justice and promote judicial economy in a given case").  The Second Circuit has "explicitly noted its preference for class certification in securities cases."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995).  "'If there is to be an error made, ***let it be in favor and not against the maintenance of the class action***, for it is always subject to modification should later developments during the course of the trial so require.'"  *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 275 (S.D.N.Y. 2008) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968)).

A putative class must meet the four prerequisites of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy.  The putative class must also satisfy one of the three subparts of Rule 23(b).  Royal Park seeks certification under Rule 23(b)(3), which mandates certification when "questions of law or fact common to the class members predominate over any questions

affecting only individual members," and a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Regardless of "whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement," the Second Circuit encourages courts to certify liability-only classes pursuant to Rule 23(c)(4). *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006); *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013).

## V.     ARGUMENT

### A.     The R&R Erred in Finding that Individual Issues Predominate

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  The Court must determine "'whether the common, aggregation-enabling, issues in the case are ***more prevalent or important*** than the non-common, aggregation-defeating, individual issues.'"  *In re Petrobras Sec. Litig.*, 862 F.3d 250, 270 (2d Cir. 2017) (emphasis in original), *petition for cert. filed*, Nov. 1, 2017, *but stayed pending settlement*.  This analysis is qualitative and based on the nature of the issues to be addressed, rather than a quantitative determination of the number of issues to be decided or the time required to address each issue.  *Id.* at 271; 2 William B. Rubenstein, *Newberg on Class Actions* §4:51, at 199-200 (5th ed. 2012) ("The predominance test does not involve a comparison of court time needed to adjudicate common issues weighed against time needed to dispose of individual issues.").

In analyzing predominance, the court's inquiry focuses on issues of liability:

When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

- 6 -

*Tyson Foods, Inc. v. Bouaphakeo*, ___ U.S. ___, 136 S. Ct. 1036, 1045 (2016); *Osberg v. Foot Locker, Inc*., No. 07-cv-1358 (KBF), 2014 WL 5800501, at *2 (S.D.N.Y. Nov. 7, 2014) ("Whether the required elements of a claim may be demonstrated through generalized proof is the sine qua non of predominance."); *Nassau Cty.*, 461 F.3d at 227-29 (finding district court erred in finding that individual issues predominated over common liability issues and noting that individualized inquiries would not even apply to all class members).

Royal Park established that common issues predominate. ECF No. 448 at 2-5, 7-8, 13-18; ECF No. 397 at 4-12. In concluding to the contrary, the R&R ignored controlling Second Circuit authority and the evidentiary record, instead giving undue weight to hypothetical individual inquires that cannot possibly predominate over the common question of Wells Fargo's liability.

### 1.     The Central Question in This Case – Wells Fargo's Liability – Is Indisputably Common to All Class Members

There is no dispute that the question of Wells Fargo's contractual and tort liability is common to the class. The same set of governing agreements control Wells Fargo's obligations with respect to each trust, and Wells Fargo's witnesses testified on over 130 separate occasions that their obligations are defined by the governing agreements. *See* Wood Decl., Ex. E. The governing agreements require Wells Fargo to hold all trust assets "for the exclusive use and benefit of *all* present and future Certificateholders." ECF No. 360-11 at 68; *see also* ECF No. 360-12 at 70. Wells Fargo's failure to comply with these contractual and common law obligations impacted *all* class members similarly, regardless of an investor's position in the trust waterfall. ECF No. 360-6, ¶¶4, 30-39; ECF No. 360-17, ¶¶1, 17-31. Thus, proof of Wells Fargo's failure to comply with the governing agreements will establish Wells Fargo's liability to *all* class members.

The R&R "agree[d] with Royal Park that the questions of whether Wells Fargo breached certain provisions of the underlying agreements are common ones material to the resolution of this

ligation." R&R at 19.  This finding *alone* is sufficient to establish that common issues predominate. *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010); *accord Nassau Cty.*, 461 F.3d at 227-29; *Dover v. British Airways, PLC (UK)*, 321 F.R.D. 49, 57-58 (E.D.N.Y. 2017) (predominance element satisfied where "[p]laintiffs' central contention" was that defendant "breached the Contract during the entire class period," because that contention is "'central to the validity' of [p]laintiffs' claims and is capable of resolution 'in one stroke' without delving into the individual details"); *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405(CM), 2013 WL 12224042, at *3, *13 (S.D.N.Y. July 12, 2013) (finding common questions predominated in breach of contract action and noting that "'[c]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action'"); *In re Amla Litig.*, No. 16-cv-6593, 2017 WL 4792256, at *31 (S.D.N.Y. Oct. 24, 2017) ("The individual inquiry required to determine class membership is far outweighed by the central, common question of liability.").

### 2.     The Individual Issues Identified by the R&R Do Not Predominate and Are Irrelevant as a Matter of Law

The R&R concluded that questions of standing, statutes of limitations and damages were individual issues that predominated over the common question of Wells Fargo's liability.  R&R at 24-31.  This conclusion was erroneous.  *See Marin v. Apple-Metro, Inc.*, No. 12 CV 5274 (ENV) (CLP), 2017 WL 4950009, at *49 (E.D.N.Y. Oct. 4, 2017) ("to the extent that individual defenses 'may affect different class members differently,' their existence 'does not compel a finding that individual issues predominate over common ones'").

### a.     Proving a Class Member's Standing Does Not Predominate over Establishing Wells Fargo's Liability

The R&R concluded that the "individual inquiries required to ensure that all class members have Article III standing overwhelm any questions common to the proposed class."  R&R at 24.  But

courts routinely reject the notion that the standing of absent class members is sufficient to defeat

predominance:

> [A]ny difficulty by individual class members in tracing their particular [securities] is a secondary issue to be resolved after the predominant issue of [defendants'] liability has been decided. ***It would be inappropriate to foreclose such Plaintiffs' resort to the class action format simply because some of their cases may be difficult to prove***.

*Freeland v. Iridium World Commc'ns, Ltd*., 233 F.R.D. 40, 46 (D.D.C. 2006).  *Briseno v. ConAgra*

*Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), reached the same conclusion when addressing a class of

"consumers in eleven states who purchased Wesson-brand cooking oils labeled "100% Natural"

during the relevant period."  *Id.* at 1123.  The court held:

> Defendants will have similar opportunities to individually challenge the claims of absent class members if and when they file claims for damages.  At the claims administration stage, parties have long relied on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims.  *Mullins*, 795 F.3d at 667. ***Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability***. *See* FED. R. CIV. P. 23 advisory committee's note to 1966 amendment (explaining that certification may be proper "despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class") . . . .
>
> . . . As the Seventh Circuit put it, "[t]he due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward."  *Mullins*, 795 F.3d at 670. ***ConAgra may prefer to terminate this litigation in one fell swoop at class certification rather than later challenging each individual class member's claim to recovery, but there is no due process right to "a cost-effective procedure for challenging every individual claim to class membership***." *Id.* at 669.

*Id.* at 1131-32 (footnote omitted) (cited with approval in *Petrobras*, 862 F.3d 250).  Having found

that the identity of class members was ascertainable, the R&R erred in concluding that questions of

standing would predominate.  In fact, determining standing in this action will be ***far easier*** than in

many certified securities class actions.

- 9 -

### (1)    The Availability of Trading Records Strongly Support Predominance

Solely in an attempt to avoid liability for its misconduct, Wells Fargo and its incredible experts presented a fabricated dystopia wherein determining the class members eligible to recover damages would be so unwieldy as to defeat predominance.[4]  These contentions must be rejected.

*First*, the fact that certificates within a given tranche of a trust share the same CUSIP number (*see* R&R at 25) is unremarkable, and in fact strongly *supports* certification.  Courts in this District and around the country certify numerous securities class actions involving a single CUSIP and numerous investors every year, recognizing they "'are ideally suited for resolution by way of a class action.'"  *Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 BRO (PLAx), 2015 WL 12720322, at *18 (C.D. Cal. Feb. 17, 2015); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 429 (S.D.N.Y. 1986).  Securities class actions often involve purchasers of common stock, hundreds of thousands of class members, and millions or billions of outstanding shares, *all of which share a single CUSIP number*.  *E.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, No. 12 Civ. 03852 (GBD), 2015 WL 1043343, at *3 (S.D.N.Y. Sept. 29, 2015) (certifying a class of J.P. Morgan shareholders and noting that J.P. Morgan "had almost four billion shares of common stock outstanding in 2012, and over two-hundred thousand holders of record"); *see* ECF No. 360-17, ¶¶48-52; Wood Decl., Ex. J at 126:10-128:8 ██████████████████████████████████████.

---

[4]    Remarkably, two out of Wells Fargo's three experts have been subject to serious claims of fraud or criminal misconduct, undermining their credibly.  Upon being confronted with the fact that Dr. Christopher James had personally participated in a fraudulent scheme to hide assets from investors/creditors in a company controlled by one of his friends, and may have committed perjury by providing "contradict[ory]" testimony regarding key events under oath, Wells Fargo appears to have jettisoned James as an expert in this case following the submission of his reports.  *See* Wood Decl., Ex. F at 17-21, 23-25.  Dr. Cohen-Cole's credibility fairs no better, having been accused of "unlawful conduct," including "misappropriation and improper use of . . . confidential and proprietary business information," and "criminal trespass," by his former employer – matters he substantially refused to testify about at his deposition.  Wood Decl., Ex. G, ¶3; Wood Decl., Ex. H.

This case, by contrast, involves just 2 trusts, 42 separate CUSIPs, and an estimated 185 potential class members. ECF No. 360-6, ¶45. Contrary to the R&R's conclusions, the nature of the certificates supports certification, as identifying class members will be far simpler than in a typical securities class action. *See* ECF No. 360-17, ¶¶48-52.

**Second**, the fact that the Certificates may have traded "over-the-counter" (as is true in general for RMBS securities), rather than on an exchange, supports, rather than detracts from, the predominance inquiry. R&R at 25-26. Nowhere does the R&R or Wells Fargo explain why trading on an exchange would make identification of class members easier, or how a "'central repository of trade history,'" exists, or is a requirement for certification, in any securities class action. Wood Decl., Ex. J at 13:13-21 █████████████████████████████████

█████████. Courts routinely certify and resolve RMBS and other securities class actions involving over-the-counter securities without "centralized trade histories."[5]

*Brecher* does not suggest a different conclusion. *See* R&R at 25-26. *Brecher*'s discussion of CUSIP numbers was dicta, and based on the failure to adduce any evidence regarding the class members. *Brecher v. Republic of Arg.*, No. 14-4385-cv (2d Cir. 2015), Dkt. No. 48 at 19-27; *see also id.*, Dkt. No. 51 at 8-14. In fact, according to the defendant in *Brecher*, "after six years of litigation, ***no member of this class other than the named purported class representative . . . ha[d]***

---

[5]   *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116 (S.D.N.Y. 2014) (certifying liability class of investors in nine trusts in an RMBS class action); *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226 (S.D.N.Y. 2012) (granting class certification across ten RMBS trusts); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97 (S.D.N.Y. 2011) (granting class certification across 18 RMBS trusts); *Farley v. Baird, Patrick & Co.*, No. 90 Civ. 2168 (MBM), 1992 WL 321632, at *9 (S.D.N.Y. Oct. 28, 1992) (certifying class of investors in OTC securities); *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) (same); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196 (E.D. Pa. 2008) (same), *aff'd*, 639 F.R.D. 623 (3d Cir. 2011).

*ever been identified*." *Id.*, Dkt. No. 35 at 18.[6]  The record here could not be more different, as Royal Park subpoenaed trading records showing the purchase and sale of beneficial ownership interests in the certificates, something the plaintiffs in *Brecher* failed to do.  Wood Decl., ¶¶2-6.

     *Third*, the R&R concludes that identifying "beneficial owners" will require difficult individualized analysis because records from DTC list only "participant institutions," and not actual beneficial owners, and that only "the Participants know the identities of the actual beneficial owners."  R&R at 26-27.  But the R&R ignores that the DTC Participants subpoenaed by Royal Park have already provided trading records identifying many of the beneficial owners of the certificates.  Wood Decl., ¶¶2-6.  Furthermore, the R&R's assertion that Royal Park did not elaborate on "how a complete set of records would be compiled" (R&R at 27), is inaccurate, as Royal Park provides just such a description, and Wells Fargo provides no evidence whatsoever that any such information was unavailable, having made no inquiry into the matter.  ECF No. 448 at 22-23; ECF No. 360-17, ¶¶57-58; Wood Decl., Ex. J at 71:16-72:9 ███████████████████████████████████████████████████████████████████████████████████.

     If anything, the fact that detailed trading records from a limited number of DTC Participants document the transactions in the Certificates strongly *supports* predominance, as these records will lessen the need for a complex administration process, or for class members to submit their own records documenting their transactions, as is typically the case.  *E.g.*, *Briseno*, 844 F.3d at 1131-32.

---

[6]   Notwithstanding the Second Circuit's conclusion that the plaintiff had failed to establish ascertainability at that time, Judge Griesa issued an Opinion and Order granting final approval to "settlements reached in nine class action cases against the Republic of Argentina," including the *Seijas* and *Brecher* actions.  *Seijas v. Republic of Arg.*, No. 04-cv-400 (TPG), 2017 WL 1511352, at *1 (S.D.N.Y. Apr. 27, 2017).  Judge Griesa approved a notice process designed to identify class members.  *Brecher v. Republic of Arg.*, No. 1:06-cv-15297-TPG (S.D.N.Y. 2016), Dkt. No. 115 at 2-3.  Identifying and determining the validity of the submitted claims from the class required no court intervention whatsoever.  *Id.*, Dkt. No. 135 at 7 ("the parties have been able to agree upon the validity of all of the filed claims").

1367476_1

(2)    **Hypothetical Issues Regarding Assignment of Litigation Rights Are Insufficient to Defeat Predominance**

The R&R concluded that determining whether a certificateholder retained litigation rights is an individual inquiry militating against predominance.  R&R at 28-29.  Although Royal Park has the burden to demonstrate predominance by the preponderance of the evidence, it ***does not*** have an obligation to rebut potential or speculative assertions proffered without evidentiary support.  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) ("'speculative conflict should be disregarded at the class certification stage'"); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 396-400 (M.D.N.C. 2015) ("largely speculative" individual issues are insufficient to defeat predominance); *Kaye v. Amicus Mediation & Arbitration Grp., Inc.*, 300 F.R.D. 67, 81 (D. Conn. 2014) ("individual issues, if any, are merely speculative and insufficient to undermine the predominance of the questions otherwise central to liability").

***First***, there is no evidence supporting the R&R's conclusion that it is "apparently common to divorce the litigation rights from the underlying securities," or that determining which certificateholders had litigation rights would introduce additional complexities into the litigation. R&R at 28-29; Wood. Decl., Ex. J at 219:7-18 ████████████████████████████████ ███████████████████████████████████████████████████████████████████.  With respect to Royal Park, there has been no dispute whatsoever that it owns the Certificates at issue and any litigation rights for contractual claims associated therewith; nor did Royal Park "divorce [its] litigation rights from the" Certificates.[7]  ECF No. 397 at 17.  While Commerzbank apparently sold some securities while retaining litigation rights, the fact that one investor (who would almost

---

[7]    The R&R's statement that Royal Park "acquired its Certificates on the secondary market," and later "sold its holdings under a contract by which it explicitly retained those litigation rights," is imprecise.  R&R at 29.  Royal Park acquired the Certificates in the liquidation of a CDO which it previously owned and controlled, and still owns the Certificates today.  *See* ECF No. 24, ¶¶30-32.

- 13 -

certainly not be a class member) may have done so with respect to certain certificates cannot support

the conclusion that the practice is "common," or will require any Court intervention whatsoever.

    *Second*, even if such issues did arise, the fact that "'important matters will have to be tried

separately, such as damages or some affirmative defenses peculiar to some individual class

member,'" is insufficient to defeat predominance. *Tyson Foods*, 136 S. Ct. at 1045; *see also id.* at

1049-1050 (finding individual damages and standing determinations do not bar class certification).

    *Third*, the R&R misreads *Petrobras*' reference to *Mazzei v. Money Store*, 829 F.3d 260, 272

(2d Cir. 2016), where the Second Circuit found that it was within the district court's discretion to

conclude that common issues did not predominate, in part because "'the fact-finder would have to

look at every class member's [loan] documents to determine who did and who did not have a valid

claim.'"  R&R at 28.  As the *Mazzei* court later explained, that finding was based on the fact that

looking at those loan documents ***would not enable the fact-finder to resolve the issue***, not that

having to look at documentation on an individual basis barred class certification. *Mazzei*, 829 F.3d

at 273 ("there was no apparent basis on which the court or the parties could have determined which

members of the" class had valid claims).  To the contrary, examining documentation from individual

class members is ubiquitous.  *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 489

(S.D.N.Y. 2009) ("A requirement that potential class members provide documentation is not unusual

in securities litigations."); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV 13-02529 MMM

(VBKx), 2015 WL 12732462, at *29 (C.D. Cal. May 29, 2015) ("courts frequently approve

settlements that require class members to submit receipts or other documentation").  And the absence

of documentation or proof of standing, which Royal Park has already established exists, would not

defeat certification, it would simply mean that certain class members could not perfect their claims,

- 14 -

or that "their recovery would be limited or reduced."  *In re Dig. Music Antitrust Litig.*, 321 F.R.D. 64, 89-90 (S.D.N.Y. 2017).

**b.**      **A Hypothetical Statute of Limitations Defense Is Insufficient to Defeat Predominance**

The R&R concludes that "defendant's affirmative statute of limitations defense" weighs against a finding of predominance.[8]  R&R at 29-30.  Courts reject the notion that statute of limitations defenses defeat predominance.  *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 303 (S.D.N.Y. 2003) ("the existence of even a meritorious statute of limitations defense does not necessarily defeat certification"); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) ("'Courts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiff[,] does not preclude certification of a class action . . . .'"); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) ("'Challenges based on the statute of limitations . . . have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability.'").

Wells Fargo has never established that it has a meritorious statute of limitations defense against Royal Park or any class member, rendering any purported defense speculative.  *See Krakauer*, 311 F.R.D. at 396-400; *WorldCom*, 219 F.R.D. at 303 n.52 ("Defendants point to no particular plaintiff against whom they have a colorable statute of limitations defense, let alone a number sufficient to defeat a predominance finding"); *Osberg v. Foot Locker, Inc.*, 2014 WL 5800501, at *6 ("Defendants' argument regarding theoretical views as to the statute of limitations

---

[8]    The R&R's conclusion regarding defendant's statute of limitations contentions is not clear, stating its findings "would be insufficient to counsel against certifying a class," and in the next sentence concluding that "[t]hese individual issues will also predominate over any common issues shared by the class."  R&R at 30.

- 15 -

must fail. . . .  [D]efendant has offered only argument and ***not a shred of proof.  That is insufficient***.").  Indeed, in the decisions cited by Wells Fargo, the courts ***rejected*** Wells Fargo's statute of limitations defenses.  *Commerzbank AG v. Deutsche Bank Nat'l Trust Co.*, 234 F. Supp. 3d 462, 468, 473 (S.D.N.Y. 2017); ECF No. 291 at 26.

In any event, "'the mere fact that [an affirmative statute of limitations defense] may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones.'"  *WorldCom*, 219 F.R.D. at 303 *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (class certification "not precluded by the need to address individual statute of limitations defenses").

### c.    Individual Damage Calculations Do Not Predominate

The R&R concluded that calculating damages involves "individualized determinations," making "class-wide proof of damages difficult."  R&R at 30-31.  It is black-letter law that differences in class member damages ***never*** bar class certification.  *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) ("'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)").

Although the amount of a Class member's damages may vary, this "does not defeat certification [since] the method of calculating damages is [still] common to the class."  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008); *Dodona I, LLC v. Goldman, Sachs & Co.*, 296 F.R.D. 261, 271 (S.D.N.Y. 2014) (where plaintiff's expert has offered a "class-wide methodology for calculation of damages, any necessary individual inquiries are a far cry from the scope of individualized issues of proof that would defeat a finding of predominance").

Royal Park conclusively established that damages are calculable on a class-wide basis, and Wells Fargo did not even bother to ask their experts to examine this issue.  ECF No. 360-6, ¶¶4, 49-

58; ECF No. 360-17, ¶¶3, 17-20, 59-71; Wood Decl., Ex. I at 10:13-17 ███████████

███████████████████████████████████████████; Wood Decl., Ex. H at

68:8-21 (same).  The fact that damages are necessarily calculated on a classwide basis supports

certification.  ECF No. 360-17, ¶3 ("Class-wide damages are calculable and preferable given the

allegations in this matter.").

### d.   Conducting the Appropriate Comparative Analysis, Common Issues Predominate

"[P]redominance is a comparative standard." *Petrobras*, 862 F.3d at 268; *Tyson Foods,* 136

S. Ct. at 1045 (in analyzing predominance, courts are required to "give careful scrutiny to the

relation between common and individual questions in a case").

Answering the common question whether Wells Fargo is liable for failing to fulfill its

obligations under the governing agreements is the single most important question in this litigation;

one that every class member would have to answer, and is subject to common proof.  §V.A.1., *supra*.

Wells Fargo had the same contractual and common law obligations to *every* certificate holder under

the governing agreements.  *Id.*  Proving Wells Fargo's liability will require Royal Park and every

class member to prove that: (1) Wells Fargo discovered R&W breaches; (2) Wells Fargo became

aware of EoDs; (3) Wells Fargo failed to take the actions required of it under the governing

agreements as to the R&W breaches and EoDs; and (4) damages occurred as a result of Wells

Fargo's failures to act.  *See* ECF No. 291 at 16-20.

Wells Fargo's liability depends exclusively on its actions (or inaction) as to the loans in the

trusts.  Therefore, common and uniform proof will be used to establish whether Wells Fargo is or is

not liable to each member of the class.

To find that speculative inquiries regarding class members' ability to recover predominate

over the common liability question at the heart of this case is irreconcilable with the weight of cases

1367476_1

holding the exact opposite. *Merrill Lynch*, 277 F.R.D. at 117 n.26 (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp*., 89 F.R.D. 87, 93 (S.D.N.Y. 1981) ("'Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions.'"); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 760 (7th Cir. 2014) ("[I]f the class prevails on the common issue, it would be a straightforward matter for each purchaser to present her evidence on reliance and causation. Indeed, if the class prevails, 'the case would probably be quickly settled.'"). The class' claims rise and fall collectively on the common question of whether Wells Fargo complied with its obligations under the governing agreements. No individual inquiry regarding the extent to which a class member is able to recover for Wells Fargo's misconduct comes close to eclipsing this fundamental question of Wells Fargo's liability. The R&R erred in reaching the opposite conclusion.

### B.    The R&R Erred in Finding that a Class Action Is Not Superior

The R&R "suggest[ed]" that a class action is not a superior method of adjudication.[9] R&R at 33-35. To determine whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider the following factors:

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members;

> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

---

[9]    The R&R later states only that there are "genuine questions as to" superiority, suggesting that it did not in fact reach a specific conclusion. R&R at 36. This Court, however, "may not duck hard questions by observing that each side has some support . . . . Tough questions must be faced and squarely decided . . . ." *West v. Prudential Sec., Inc*., 282 F.3d 935, 938 (7th Cir. 2002)

Fed. R. Civ. P. 23(b)(3).  Like predominance, superiority is necessarily a comparative analysis; the Court must compare "class litigation and actions conducted separately by individual class members." *United States v. City of New York*, 276 F.R.D. 22, 49 (E.D.N.Y 2011).

The R&R wrongly concluded that Royal Park had not established superiority because (i) the predominance of individual questions "may" make a class action unmanageable; and (ii) the class would be compromised of sophisticated RMBS investors with a strong interest in controlling the prosecution of their own claims.[10]  R&R at 33-35.

### 1.     Royal Park Established Manageability

The R&R correctly recognized that there "is undeniable efficiency that stems from consolidating and concentrating the litigation of similar claims," but incorrectly suggested that "the individuated nature of claims in this case indicates that management of the litigation would be difficult, if not near impossible, and separate actions ***may*** be more appropriate."  R&R at 33.  But manageability is an issue only if "certification would create relatively more management problems than any other alternative."  *Demmick v. Cellco P'ship*, No. 06-2163 (JLL), 2010 WL 3636216, at *10 (D.N.J. Sept. 8, 2010).  Moreover, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).  Here, there is no evidence whatsoever that certification would create any management problems.  Royal Park demonstrated the exact opposite.

***First***, the R&R's manageability conclusion was based solely on its erroneous predominance findings.  R&R at 34.  As predominance goes, so goes manageability.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269, 1273 (11th Cir. 2004) ("where a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class

---

[10]    The R&R correctly found that Wells Fargo's contentions regarding the Lehman Settlement did not undermine superiority.  R&R at 32-33.  Royal Park does not object to this conclusion.

action is less manageable than individual actions"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1175 (JG) (VVP), 2014 WL 7882100, at *65 (E.D.N.Y. Oct. 15, 2014) (when common issues predominate, difficulties relating to managing a class action "pale in comparison to the difficulties that would be presented by requiring each claim to proceed individually").

*Second*, the conclusion that the "necessity of hearing . . . individualized evidence defeats a finding of superiority" (R&R at 34) ignores the comparative nature of the inquiry – whether certification is superior to individual actions. *None* of the purported individualized issues identified in the R&R, if they are even relevant, are created by the class mechanism; in fact, they would exist and would be more difficult to resolve if class members were to bring separate actions. ECF No. 360-17, ¶¶59-71; *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2016 WL 5371856, at *12 n.11 (D. Kan. Sept. 26, 2016) (rejecting class treatment as unmanageable is disfavored "'given the fact that the very concerns that might make a class suit difficult to manage also infect the procedural alternatives'"). To the extent questions of standing, timeliness, or damages are individual questions, they are necessarily interrelated amongst various class members. *See* ECF No. 360-6, ¶¶30-39. While there is no evidence class members assigned their litigation rights, any assignment would affect multiple potential class members, the assignor and the assignee, and would be inefficient to resolve across separate cases. Statute of limitations questions, if any, would be common across class members who purchased in the same jurisdiction, or which there are many. And, as set forth above, allocating individual damages to each class members necessarily requires that damages be calculated on a class-wide basis. §V.A.2.c., *supra*; ECF No. 360-17, ¶¶3, 17-20, 59-71, 99. Under these circumstances, certification is vastly superior, because it eliminates the "'risks of inconsistent adjudication'" and promotes the "'fair and efficient use of the judicial system.'" *IndyMac*, 286 F.R.D. at 243.

- 20 -

### 2.   Most Class Members Do Not Have the Ability to Individually Prosecute the Claims

The R&R wrongly speculates that class members (i) are large sophisticated financial investors who do not need Royal Park to defend their interests; and (ii) would have elected to bring litigation already had they believed they had meritorious claims.  R&R at 34-35.

Classes containing individual "claims in which the cost of enforcement in an individual action would exceed the expected individual recovery," provide the "'most compelling rationale for finding superiority.'"  *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 348 (N.D. Ohio 2001); *Lapin*, 254 F.R.D. at 187 ("'exclusion of class members who cannot afford separate representation would neither be 'fair' nor an adjudication of their claims'").

Trading records adduced from DTC participants show dozens of transactions in the two certificates for less than \$1 million each.[11]  Wood Decl., ¶7.  It would be uneconomical for investors with such small investments to file individual actions, which would cost millions of dollars to litigate.  By denying certification, this Court would be shutting the courthouse door to investors unable or unwilling to bring their own claims, eschewing decades of Supreme Court guidance. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"); *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980).

Further, "Rule 23 has no restrictions on wealth," and nothing precludes even sophisticated investors from relying on Rule 23 to secure redress.  *In re Revco Sec. Litig.*, 142 F.R.D. 659, 669

---

[11]   The data also show that purchases were made by a wide range of investors, including the ███████████████████████████████ and ████████ ██████████████ as well as several individuals and trusts, in addition to larger institutional investors and banks.  *See* Wood Decl., ¶7.

1367476_1

(N.D. Ohio 1992). "[T]he fact that the class includes 'sophisticated institutional investors' with 'large individual claims' [does not] defeat superiority when 'the advantages of unitary adjudication exist to determine the defendant's liability.'" *J.P. Morgan*, 301 F.R.D. at 143; *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1196 (6th Cir. 1988) (Rule 23 "was designed not solely as a means for assuring legal assistance in the vindication of small claims").

In any case, there are good reasons why even large financial institutions or sophisticated investors choose to avail themselves of Rule 23. As Judge Scheindlin held in *Bd. of Tr. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 355 (S.D.N.Y. 2010), sophisticated investors are just as likely as other investors to be "[un]willing and able to hire counsel to 'battle against the collective resources of the nation's largest financial industry firms'" or may have a "strong disincentive to 'initiate individual lawsuits because they may not be willing to sue [parties] . . . they have active ongoing relationships.'"

Speculating as to the motives of dozens of unnamed class members, the R&R appears to suggest that a class action would not be superior because the realistic alternative is not a plethora of individual litigation, but rather class members simply not bringing any claims at all, and having no opportunity to recover for their losses. R&R at 34-35. This is antithetical to the very purpose of Rule 23, and an inappropriate basis to deny certification. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (Posner, J.) (Where the "***realistic*** alternative to a class action is . . . zero individual suits. . . a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all.") (emphasis in original).

### C. The R&R Erred in Declining to Recommend that the Court Certify a Liability-Only Class Pursuant to Rule 23(c)(4)

The R&R recommended that the Court should not "exercise its discretion to certify a liability-only class under Rule 23(c)(4)," finding individual issues would still predominate, and that

- 22 -

there would be "genuine questions" as to superiority.  R&R at 35-36.  As demonstrated above, these findings are erroneous and contrary to law.  While certification under Rule 23(c)(4) may be discretionary, "'the failure to follow the proper legal standards in certifying a class . . . is an abuse of discretion.'"  *Blyden v. Mancusi*, 186 F.3d 252, 269 (2d Cir. 1999).

Rule 23(c)(4) provides that when "appropriate, an action may be brought or maintained as a class action with respect to particular issues."  The Second Circuit allows courts to "employ [Rule 23](c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."  *Nassau Cty.*, 461 F.3d at 227; *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 167 (2d Cir. 2001) (holding that district court erred in refusing to partially certify liability claims for class treatment and citing with approval Edward F. Sherman, *Class Actions and Duplicative Litig.*, 62 Ind. L.J. 507, 516 (1987) ("A class action should not be found unmanageable without [first] exploring the procedural devices available for bringing it in line. These include subclassing and trial of subclass issues separately, bifurcating liability and damages, . . . [and] appointing a special master for difficult evidentiary matters . . . ."); *see also Jacob*, 293 F.R.D. at 589 ("Nothing in *Comcast*, however, vitiates the longstanding principle in this Circuit that courts may certify a class as to liability, but not damages, utilizing Rule 23(c)(4), so long as the ***proposed liability class*** meets the requirements of Rule 23(a) and (b)."); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 253-54 (S.D.N.Y. 2014) (same).  District courts in this Circuit are encouraged to ""'take full advantage of this provision'" to certify separate issues 'in order . . . "to reduce the range of disputed issues" in complex litigation' and achieve judicial efficiencies."  *Robinson*, 267 F.3d at 167; *accord Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 242 (S.D.N.Y. 2010).

The R&R correctly concluded that Wells Fargo's liability is an issue common to the Class. §V.A.1., *supra*.  By definition, Wells Fargo's liability is a common issue.  *See Deutsche Bank Nat'l*

*Tr. Co. v. WMC Mortg., LLC*, No. 3:12-CV-933 (CSH), 2015 WL 1650835, at *40 (D. Conn. Apr. 14, 2015) (noting that in an RMBS breach of contract action alleging breaches of R&Ws, "on the liability phase of the cases . . . , the only facts of consequence (and accordingly relevant) with respect to the timing and contents of ***notices of R&W breaches*** have to do solely with [defendant]," and that any argument regarding mitigation of damages would be reserved for "the damages phase of the cases") (emphasis in original).  Royal Park's allegations present a singular question of liability that can be independently certified for class-wide adjudication, reserving any individualized issues for further determination after the liability stage.  *See* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* §1790, at 589 (3d ed. 2005) ("[T]he theory of Rule 23(c)(4) . . . is that the advantages and economies of adjudicating issues that are common to the entire class on a representative basis may be secured even though other issues in the case may need to be litigated separately by each class member.").

In finding that issues of predominance and superiority would still remain, the R&R fundamentally misunderstood the purpose of Rule 23(c)(4) certification – which is to remove such issues from consideration to allow the case on liability to move forward.  *See In re Prograf Antitrust Litig.*, No. 1:11-md-02242-RWZ, 2014 WL 4745954, at *2-*9 (D. Mass. June 10, 2014) (recognizing the superiority of certifying an issue-specific class, as: (a) many "plaintiffs are unlikely to have the resources or incentive to litigate an entire [RMBS] case . . . on their own"; (b) "proving [breaching] conduct by [defendant], as evidenced by the parties' efforts to date, is a complex and costly endeavor"; and (c) "[e]ven if such separate legal actions are pursued, they are likely to require duplicative discovery and redundant litigation, and may result in inconsistent adjudications."); *J.P. Morgan Chase*, 301 F.R.D. at 144 (RMBS action certifying liability-only class).

- 24 -

Moreover, the Court is equipped with a variety of case-management tools to properly adjudicate any individualized issues that may arise.  ECF No. 397 at 9-10; *Petrobras*, 862 F.3d at 274 ("[D]istrict courts are authorized to implement management strategies tailored to the particularities of each case"); *Visa Check*, 280 F.3d at 141 (summarizing various class action "management tools" and collecting cases).  "These include subclassing and trial of subclass issues separately, bifurcating liability and damages, . . . [and] appointing a special master for difficult evidentiary matters."  *Robinson*, 267 F.3d at 168; *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014) ("[T]he predominance inquiry can still be satisfied under Rule 23(b)(3) if the proceedings are structured to establish 'liability on a class-wide basis, with separate hearings to determine – if liability is established – the damages of individual class members.'"); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 643 (S.D. Cal. 2015) ("Bifurcation will permit available defenses to be litigated and economies of class certification to be realized.").

## VI.    CONCLUSION

Upon *de novo* review, this Court should reject the R&R's recommendations regarding predominance and superiority and certify the Class.  In the alternative, the Court should certify a liability-only class pursuant to Rule 23(c)(4).

DATED:  February 7, 2018                     Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP
CHRISTOPHER M. WOOD


                                      s/ Christopher M. Wood
                            ————————————————————————
                                    CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
J. MARCO JANOSKI GRAY
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jsanchez@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

Attorneys for Plaintiff

1367476_1

CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 8, 2018.

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
& DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  800/449-4900
615/252-3798 (fax)

E-mail:  cwood@rgrdlaw.com

# Mailing Information for a Case 1:14-cv-09764-KPF-SN Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Amherst Advisory & Management, LLC**
  gklein@mckoolsmith.com

- **Joseph James Boylan**
  jboylan@jonesday.com,nydocket@jonesday.com

- **Harold Keith Gordon**
  hkgordon@jonesday.com,nydocket@jonesday.com

- **Kurt Michael Gosselin**
  kgosselin@jonesday.com,nydocket@jonesday.com

- **Paul Bartholomew Green**
  bartgreen@jonesday.com,nydocket@jonesday.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jason Jurgens**
  jjurgens@jonesday.com,nydocket@jonesday.com,jtreanor@JonesDay.com,tesolomon@JonesDay.com

- **Rebekah B. Kcehowski**
  rbkcehowski@jonesday.com,nydocket@jonesday.com

- **Gayle Rosenstein Klein**
  gklein@mckoolsmith.com,kmtrahan@mckoolsmith.com,gpineiro@mckoolsmith.com,gayle-klein-4119@ecf.pacerpro.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,susanw@rgrdlaw.com

- **Elisa Lee**
  elee@mckoolsmith.com,elisa-lee-0388@ecf.pacerpro.com

- **Traci Leigh Lovitt**
  tlovitt@jonesday.com,nydocket@jonesday.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Clay J. Pierce**
  clay.pierce@dbr.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Tracy V. Schaffer**
  tschaffer@jonesday.com,nydocket@jonesday.com

- **Howard Fredrick Sidman**
  hfsidman@jonesday.com,nydocket@jonesday.com

- **Eric Peter Stephens**
  epstephens@jonesday.com,nydocket@jonesday.com

- **Jayant W. Tambe**
  jtambe@jonesday.com,mmarcucci@jonesday.com,nydocket@jonesday.com

- **Michael O. Thayer**
  mothayer@jonesday.com,nydocket@jonesday.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`