**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **ROYAL PARK INVESTMENTS SA/NV,** **Individually and on Behalf of All Others** **Similarly Situated,** | X : : : |
| **Plaintiffs,** | : : |
| -against- | : : |
| **WELLS FARGO BANK, N.A., as Trustee,** | : : : |
| **Defendant.** | : : |
|  | X |

Case No. 1:14-cv-09764-KPF-SN

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ROYAL PARK**
**INVESTMENTS SA/NV'S RULE 72 OBJECTION AND MOTION TO VACATE**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.    JUDGE NETBURN CORRECTLY CONCLUDED THAT A CLASS
CANNOT BE CERTIFIED BECAUSE INDIVIDUAL ISSUES
PREDOMINATE ............................................................................... 3

    A.    Extensive Individual Inquiries Are Needed To Determine
Article III Standing ............................................................... 3

        1.    The need to prove standing individually defeats
predominance ............................................................ 7

        2.    Trading records lack sufficient information to avoid
individual inquiries, negating—not supporting—
predominance ............................................................ 8

        3.    Questions of assignment of litigation rights are not
hypothetical ............................................................ 10

    B.    Wells Fargo's Statute of Limitations Defenses Are Highly
Individualized ..................................................................... 11

    C.    Royal Park Has Not Shown Injury, Causation, Or Damages
Classwide ........................................................................... 14

    D.    Liability Does Not Simply Turn On Whether Wells Fargo
"Breached" The Agreements, And The Issue Of Breach Does Not
Predominate ....................................................................... 17

    E.    Conflicts Among Class Members Further Defeat Predominance
And Adequacy .................................................................... 19

II.    JUDGE NETBURN RIGHTLY FOUND SUPERIORITY WAS NOT
MET ............................................................................................... 21

III.    JUDGE NETBURN'S R&R CAN ALSO BE ADOPTED ON OTHER
GROUNDS ...................................................................................... 24

IV.    A LIABILITY-ONLY CLASS CANNOT RESOLVE THE
INDIVIDUALIZED ISSUES AND WILL NOT MATERIALLY
ADVANCE THE LITIGATION ......................................................... 24

CONCLUSION .................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*2138747 Ontario, Inc. v. Samsung C&T Corp.*,
  144 A.D. 3d 122 (N.Y. App. Div. 2016) ...............................................................12

*ACE Secs. Corp. v. DB Structured Prods., Inc.*,
  36 N.E. 3d 623 (N.Y. 2015)...................................................................................4

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................11, 21

*Arch v. Am. Tobacco Co., Inc.*,
  175 F.R.D. 469 (E.D. Pa. 1997).............................................................................23

*Augustin v. Jablonsky*,
  2001 WL 770839 (E.D.N.Y. Mar. 8, 2001).............................................................8

*Bd. of Trs. v. BNY Mellon*,
  287 F.R.D. 216 (S.D.N.Y. 2012) .....................................................................19, 24

*Benner v. Becton Dickinson & Co.*,
  214 F.R.D. 157 (S.D.N.Y. 2003) .....................................................................23, 25

*Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*,
  767 N.E. 2d 672 (N.Y. 2002)..................................................................................4

*Bluebird Partners, LP v. First Fidelity Bank, N.A. N.J.*,
  85 F.3d 970 (2d Cir. 1996).....................................................................................9

*Brecher v. Republic of Argentina*,
  806 F.3d 22 (2d Cir. 2015).....................................................................................5

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...............................................................................8

*Broussard v. Meineke Disc. Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ...............................................................................19

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .................................................................................23

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ....................................................................................3, 15, 16, 17

*Commerzbank AG v. Deutsche Bank*,
  234 F. Supp. 3d 462 (S.D.N.Y. 2017) .................................................................13

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ................................................................................4

*DiPilato v. 7-Eleven, Inc.*,
  662 F. Supp. 2d 333 (S.D.N.Y. 2009) ............................................................3, 15

*Duchardt v. Midland Nat'l Life Ins. Co.*,
  265 F.R.D. 436 (S.D. Iowa 2009) ......................................................................20

*Ely Cruikshank Co. v. Bank of Montreal*,
  615 N.E. 2d 985 (N.Y. 1993) ...............................................................................4

*Free World Foreign Cars, Inc. v. Alfa Romeo, S.p.A.*,
  55 F.R.D. 26 (S.D.N.Y. 1972) ...........................................................................19

*Freeland v. Iridium World Commc'ns, Ltd.*,
  233 F.R.D. 40 (D.D.C. 2006) ...............................................................................8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*,
  903 F.2d 176 (2d Cir. 1990) ...............................................................................24

*Global Fin. Corp. v. Triarc Corp.*,
  715 N.E. 2d 482 (N.Y. 1999) ..............................................................................12

*Hamilton v. Accu-tek*,
  935 F. Supp. 1307 (S.D.N.Y. 1996) ..............................................................24, 25

*Hayes v. Wal-Mart Stores, Inc.*,
  725 F.3d 349 (3d Cir. 2013) ...............................................................................24

*Hickory Secs. Ltd. v. Rep. of Argentina*,
  493 F. App'x 156 (2d Cir. 2012) .........................................................................17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hughes v. Ester C Co.*,
    317 F.R.D. 333 (E.D.N.Y. 2016) ...............................................................................................14

*IKB Int'l S.A. v. Bank of Am.*,
    2014 WL 1377801 (S.D.N.Y. Mar. 31, 2014) ..........................................................................13

*In re Consol. RNC Cases*,
    2009 WL 130178 (S.D.N.Y. Jan. 8, 2009) ...............................................................3, 10, 22

*In re Countrywide Fin. Corp. MBS Litig.*,
    2014 WL 3529677 (C.D. Cal. July 14, 2014) .........................................................................13

*In re Fosamax Prods. Liab. Litig.*,
    248 F.R.D. 389 (S.D.N.Y. 2008) .....................................................................................23, 25

*In re MTBE Prods.*,
    209 F.R.D. 323 (S.D.N.Y. 2002) ............................................................................21, 24, 25

*In re Petrobras Secs. Litig.*,
    862 F.3d 250 (2d Cir. 2017)......................................................................................1, 3, 4, 8

*In re Visa Check Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)....................................................................................................21

*In re Yasmin Mktg.*,
    275 F.R.D. 270 (S.D. Ill. 2011) .............................................................................................25

*Jacob v. Duane Reade, Inc.*,
    293 F.R.D. 578 (S.D.N.Y. 2013) ...........................................................................................25

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)........................................................................................3, 8, 23

*Kanowitz v. Broadridge Fin. Sol., Inc.*,
    2014 WL 1338370 (E.D.N.Y. Mar. 31, 2014) .......................................................................12

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ....................................................................................9, 19, 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lazard Freres & Co. v. Prot. Life Ins. Co.*,
  108 F.3d 1531 (2d Cir. 1997)............................................................................6

*Lehman Bros. Holdings, Inc. v. Univ. Am. Mortg. Co., LLC*,
  660 F. App'x 554 (10th Cir. 2016) ..................................................................12

*Mazzei v. Money Store*,
  829 F.3d 260 (2d Cir. 2016)............................................................................11

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008)........................................................12, 14, 17, 25

*Moskowitz v. La Suisse*,
  282 F.R.D. 54 (S.D.N.Y. 2012) ......................................................................12

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)................................................................8, 12, 18

*N.J. Carpenters Health Fund v. Residential Capital, LLC*,
  272 F.R.D. 160 (S.D.N.Y. 2011) ....................................................................21

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
  392 F.3d 520 (2d Cir. 2005)............................................................................18

*Newton v. Merrill Lynch*,
  259 F.3d 154 (3d Cir. 2001)......................................................................15, 23

*PABF v. BNY Mellon*,
  775 F.3d 154 (2d Cir. 2014)................................................................8, 18, 19

*Phoenix Light v. U.S. Bank*,
  2015 WL 2359358 (S.D.N.Y. May 18, 2015) ................................................6, 7

*Racepoint Partners, LLC v. JP Morgan Chase Bank*,
  2006 WL 3044416 (S.D.N.Y. Oct. 26, 2006) ..................................................4

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)............................................................................14

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Royal Park v. BNY Mellon*,
  2017 WL 3835339 (S.D.N.Y. Aug. 30, 2017).............................................................1

*Royal Park v. Deutsche Bank*,
  2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017).................................................. passim

*Royal Park v. HSBC*,
  2018 WL 679495 (S.D.N.Y. Feb. 1, 2018)................................................... passim

*Ruiz v. Citibank, N.A.*,
  2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015)...........................................................15

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ............................................................................19

*Stoudt v. E.F. Hutton & Co., Inc.*,
  121 F.R.D. 36 (S.D.N.Y. 1988) ............................................................................22

*Toldy v. Fifth Third Mortg. Co.*,
  2011 WL 4634154 (N.D. Ohio Sept. 30, 2011)....................................................25

*Tyson Foods, Inc. v. Bouaphaekeo*,
  136 S. Ct. 1036 (2016)..........................................................................................11

*U.S. v. Maldonado-Rivera*,
  922 F.2d 934 (2d Cir. 1990)....................................................................................3

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121 (2d Cir. 2010)............................................................................15, 18

*United States v. Raddatz*,
  447 U.S. 667 (1980)................................................................................................3

*Vaccariello v. XM Satellite Radio, Inc.*,
  295 F.R.D. 62 (S.D.N.Y. 2013) ......................................................................15, 18

*Valley Drug Co. v. Geneva Pharms., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) ......................................................................19, 20

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Vanwinkle v. U.S.*,
  645 F.3d 365 (6th Cir. 2011) ..................................................................3

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................3, 12, 18

*Weiner v. Snapple Bev. Corp.*,
  2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) .........................................16

*Wu v. Pearson Educ., Inc.*,
  2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012) ........................................19

*Yeatts v. Angelone*,
  166 F.3d 255 (4th Cir. 1999) ...................................................................3

STATUTES & RULES

10 Del. C. § 8106 ..........................................................................................14

42 Pa. Cons. Stat. § 5525 ..............................................................................14

42 Pa. Cons. Stat. § 5524 ..............................................................................14

28 U.S.C. § 636(b)(1) ......................................................................................2

Cal. Civ. Proc. Code § 337 ............................................................................14

Fed. R. Civ. P. 23 .............................................................................3, 14, 19, 22

Fla. Stat. § 95.11 ............................................................................................14

N.C. Gen. Stat. § 1-52 ...................................................................................14

N.Y. C.P.L.R. § 202 .......................................................................................12

N.Y. Gen. Oblig. Law § 13-107 .........................................................4, 6, 10, 21

N.H. RSA § 508:4 ..........................................................................................14

Tex. Civ. Prac. & Rem. Code § 16.004 .........................................................14

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Wright & Miller, 15A Fed. Prac. & Proc. § 3901.1 (2d ed. 2017) ..................................................3

## INTRODUCTION

Far from being "virtually unprecedented," RP Br. at 1, Judge Netburn's R&R joins four other judges in this district who have, consistently, denied class certification to Royal Park and other plaintiffs in RMBS trustee cases like this one. *Royal Park v. HSBC*, 2018 WL 679495 (S.D.N.Y. Feb. 1, 2018) (Schofield, J.) ("*HSBC*"); *Royal Park v. BNY Mellon*, 2017 WL 3835339 (S.D.N.Y. Aug. 30, 2017) (Woods, J.); *Royal Park v. Deutsche Bank*, 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) (Nathan, J.) ("*Deutsche Bank*"); Kcehowski Decl., Ex. 1 (*BlackRock v. U.S. Bank*, 14-cv-09401 (S.D.N.Y. Jan. 31, 2018) (Gardephe, J.) ("*U.S. Bank Tr.*")).  Royal Park's claims demand "individualized inquiries [that] predominate over issues common to the class."  R&R at 24.  The claims of its proposed class—all former and current noteholders in two different trusts—"differ by jurisdiction, time period, ownership and assignment histories, affirmative defenses, and damages."  *Id*.

Judge Netburn correctly identified three individualized inquiries that predominate.  First, "[t]he fact-intensive individualized inquiry necessary to determine standing and class membership would undermine any economies achieved by class treatment."  *HSBC*, 2018 WL 679495, *5.  The RMBS notes at issue have been actively traded, and there is no way to distinguish investors with standing from investors without standing absent individualized hearings.  "'[T]he fact-finder would have to look at every class member's [transaction] documents to determine who did and did not have a valid claim,' thereby defeating predominance."  R&R at 28 (quoting *In re Petrobras Secs. Litig.*, 862 F.3d 250, 274 (2d Cir. 2017)).

Second, Wells Fargo's statute of limitations defenses also require the Court to make "extensive, individualized, fact-based inquiries."  R&R at 29-30.  Investors in the two trusts at issue come from across the country and world, and "[t]o ascertain whether any given class member's claim is timely, the Court would have to determine the holder at the time the claim

accrued, that certificateholder's residency, and the statute of limitations in the applicable jurisdiction." *HSBC*, 2018 WL 679495, at *6. "[T]he limitations defenses will," as Judge Netburn held, "vary from class member to class member." R&R at 29-30; *U.S. Bank* Tr. 49-55.

Third, Royal Park has no way to determine the fact of injury, causation, or damages on a classwide basis. R&R at 30-31. Royal Park has proposed no classwide damages methodology at all, let alone one that fits the facts. A "damages model [that] fails to correspond to [its] theory of liability . . . provides another basis for denying Plaintiff['s] motion." *U.S. Bank* Tr. at 59:3-7. As Judge Netburn reasoned, under the relevant facts here, "determining by how much, and why" holders were harmed "will again engender an individualized inquiry." R&R at 31.

By contrast, the only common question Judge Netburn found was "whether Wells Fargo breached certain provisions of the underlying agreements." R&R at 19. This question does not predominate. It is not even substantial enough to prove Royal Park's affirmative liability case, and it fails to account for any defenses. Moreover, even if satisfying the "low hurdle" of commonality, *id*. at 18, the issue of whether Wells Fargo breached the governing agreements still raises numerous individual questions of its own, given the distinct trusts and holdings at issue.

Judge Netburn also correctly found superiority not met. The individualized questions that defeat predominance create significant manageability problems as well. As Royal Park admits, "[a]s predominance goes, so goes manageability." Royal Park Br. Supporting Rule 72 Obj. ("RP Br.") at 19. Moreover, the sophistication of class members and the individual and novel claims they present further preclude superiority. This Court should adopt Judge Netburn's R&R and, consistent with all other courts addressing these issues, deny certification.

## **ARGUMENT**

Although Royal Park suggests otherwise, 28 U.S.C. § 636(b)(1) "permit[s] whatever reliance a district judge, in the exercise of sound judicial discretion, cho[o]se[s] to place on a

magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980).  To the extent an objecting party makes only conclusory arguments, "the Court will review the Report strictly for clear error," not *de novo*.  *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009).  It also is "disfavored . . . to review new evidence or arguments" in objections, as doing so "would reduce the magistrate's work to something akin to a meaningless dress rehearsal."  *In re Consol. RNC Cases*, 2009 WL 130178, at *10 (S.D.N.Y. Jan. 8, 2009).[1]

Royal Park, as the "party seeking class certification[,] bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).  Rule 23 "does not set forth a mere pleading standard," and "evidentiary proof" is required.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  The Court cannot certify a class unless it "is satisfied, after a rigorous analysis," that the Rule's requirements are met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

## I.   JUDGE NETBURN CORRECTLY CONCLUDED THAT A CLASS CANNOT BE CERTIFIED BECAUSE INDIVIDUAL ISSUES PREDOMINATE.

The R&R should be adopted because, contrary to Royal Park's suggestion, RP Br. at 1, Judge Netburn made the right comparisons and correctly held that "individual inquiries predominate over issues common to the class."  R&R at 23-24, 14.  Predominance "is a core feature of the Rule 23(b)(3) class mechanism, and is not satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs."  *Petrobras*, 862 F.3d at 271.

### A.   Extensive individual inquiries are needed to determine Article III standing.

Individual questions of standing and claim ownership defeat predominance.  *See* R&R at

---

[1] For this reason, Royal Park's submission of new evidence, not presented to Judge Netburn, is improper. *E.g.*, Wood Decl., Exs. A-E, H-J.  Nor can it properly submit via attorney declaration fact testimony beyond counsel's personal knowledge.  *See* Wood Decl. ¶¶ 4-8; *U.S. v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990).  Wells Fargo also has not waived any arguments on class certification.  RP Br. at 3, n.2  As the prevailing party, it had no obligation to object.  *See* Wright & Miller, 15A Fed. Prac. & Proc. § 3901.1 (2d ed. 2017); *Vanwinkle v. U.S.*, 645 F.3d 365, 371 (6th Cir. 2011); *Yeatts v. Angelone*, 166 F.3d 255, 263 n.5 (4th Cir. 1999).

24-29.  "[T]he Court of Appeals has made clear that 'no class may be certified that contains members lacking Article III standing.'"  *Deutsche Bank*, 2017 WL 1331288, at *10 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)).  Here, Judge Netburn rightly found—just as Judge Schofield—that "[t]he individualized inquiries required to ensure that all class members have Article III standing overwhelm any" common questions.  R&R at 24.

Common law contract and trust claims, like those brought by Royal Park, accrue to holders "at the time of the breach."  *Ely Cruikshank Co. v. Bank of Montreal*, 615 N.E. 2d 985, 986-87 (N.Y. 1993); *see ACE Secs. Corp. v. DB Structured Prods., Inc.,* 36 N.E. 3d 623, 628 (N.Y. 2015).  Thus, a holder that neither owned its certificate at the time of the alleged breaches, nor was assigned or transferred the right to sue for those breaches, has no claim, lacks Article III standing, and cannot be part of the class—as Royal Park admits.  *Deutsche Bank*, 2017 WL 1331288, at *6-8, 10[2]; ECF 382 at 4 (admissions).  A "class member must have the right to sue." R&R at 28.  "If a current or former holder . . . does not . . ., it does not have Article III standing because it has no claim upon which it can recover."  *Id.*; *see HSBC*, 2018 WL 679495, at *3.

Royal Park, however, has no "class-wide proof of litigation rights," and without such proof, a highly individualized transaction-by-transaction review and choice-of-law analysis is required to determine who has standing.  R&R at 28; *see also Petrobras*, 862 F.3d at 274.  When an RMBS certificate is sold under N.Y. Gen. Oblig. Law § 13-107, accrued claims "for damages against the trustee" automatically transfer to the buyer, depriving the seller of standing, unless "expressly reserved in writing."  But "New York is the only state to have enacted such a provision for the automatic assignment of bondholders' claims."  *Racepoint Partners, LLC v. JP Morgan Chase Bank*, 2006 WL 3044416, at *4 (S.D.N.Y. Oct. 26, 2006); *see Bluebird Partners,*

---

[2] Although decided before *Petrobras*, the logic and rationale of Judge Nathan's opinion apply equally to the predominance inquiry under *Petrobras*.  *See HSBC*, 2018 WL 679495, at *4 & n.2.

*L.P. v. First Fidelity Bank, N.A.*, 767 N.E. 2d 672, 675 n.1 (N.Y. 2002).  Other jurisdictions generally require an assignor, consistent with that jurisdiction's common law, "to 'manifest an intention to transfer' . . . a litigation right or claim."  *Deutsche Bank*, 2017 WL 1331288, at *7.

Given this conflict, an individualized multi-step process is necessary to determine who has the litigation rights to pursue which breaches.  First, the Court must identify and trace each transaction in the chain of ownership between the date of each alleged breach and the present.  *See id*.  Second, the Court must analyze each transaction in that chain to determine the law governing the transactions.  *Id.*  Then, the Court must "apply the law relevant to each transaction to determine whether claims were assigned with the transfer of certificates or retained by the seller."  *HSBC*, 2018 WL 679495, at *4-5.  Each step involves innumerable individual inquiries.

Tracing RMBS ownership requires "highly detailed and individualized inquiry."  R&R at 25-27; *Deutsche Bank*, 2017 WL 1331288, at *6.  RMBS certificates lack unique identifiers, so "one cannot distinguish the holdings of two or more holders within the same tranche," R&R at 25, which can represent hundreds of millions of dollars each.  ECF 383-5 (Cohen-Cole Rep.) at Ex. 5.  Holdings are also fractured and combined in sales (ECF 383-4 (Dolan Rep.) ¶¶ 45-56; *see also Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015)), and there is "no central repository of trade history to allow one to follow changes in ownership over time."  ECF 383-4 ¶ 29.  Certificates are also "not held directly . . . by investors," but rather by clearing agencies such as Depository Trust Company ("DTC"), on behalf of various "participant[s]," whose own customers (or their customers) are the ultimate investors.  *Deutsche Bank*, 2017 WL 1331288, at *6.  "This 'layered nature' of Certificate ownership . . . compounds the challenge of identifying . . . all those who have ever 'held' Certificates . . . without resort to individualized inquiries."  *Id.*; ECF 383-4 ¶¶ 32-41.  Notably, Royal Park does not deny any of these features of RMBS.

After tracing the chains of ownership from each alleged breach to the present, the Court must then apply New York's fact-intensive "center of gravity" choice-of-law test to each transaction to determine what law applies—another highly individualized inquiry.  *See Lazard Freres & Co. v. Prot. Life Ins. Co.*, 108 F.3d 1531, 1538-39 (2d Cir. 1997).  The test looks to a "spectrum of significant contacts," including places of contracting, negotiation, and performance, location of subject matter, and residence of parties.  *See id*.  Here, the undisputed record shows hundreds of transactions with investors both in and outside of New York, in dozens of U.S. and foreign jurisdictions—and that record is based on incomplete trade data, accounting for only a fraction of total trades.  *See* ECF 383-6 No. 41; ECF 383-4 ¶¶ 38, 63 fig. 4; ECF 360-6 ¶ 48. These trades involve significant contacts outside of New York, requiring individualized inquiry to identify what law governs the many sales at issue.  *HSBC*, 2018 WL 679495, at *4-5.

Then, after identifying each past transaction and the law that applies to it, the "Court would have to apply that law to determine whether claims were assigned along with the Certificates or retained by the seller."  *Deutsche Bank*, 2017 WL 1331288, at *7.  To do so, the Court would need to examine the evidence on each transaction and assess whether it "was sufficient" under the applicable law to transfer claims.  *Phoenix Light v. U.S. Bank*, 2015 WL 2359358, at *2 (S.D.N.Y. May 18, 2015).  And "if the Court determined that the seller did not pass on the rights, the Court would have to trace the chain of assignment until it unearthed the party that did retain the rights."  R&R at 28; ECF 383-9 (Dolan Dep.) at 260:23-261:23.

These individualized inquiries are apparent in Royal Park's own claims.  Royal Park alleges that, pursuant to N.Y. Gen. Oblig. Law § 13-107, it "obtained all the rights and causes of action against Wells Fargo held by all of the previous holders of [Royal Park]'s RMBS."  Am. Compl. ¶ 32.  Royal Park, however, has no evidence that New York law applies to its purchases—it is a Belgian entity that acquired its certificates from a Cayman CDO through an

auction process it undertook from Belgium.  ECF 383-10 (30(b)(6) Dep.) at 112:8-127:6, 131:9-19.  Royal Park concedes that the documents governing its purchases do not assign it any litigation rights or choose New York law to govern the sales.  *See id.* at 127:18-128:24; ECF 383-28 at 200:11-16.  Royal Park also provides no evidence that the Cayman CDO acquired the claims of *its* sellers.  Notably, it took more than three years of discovery, including numerous disputes requiring Court intervention (*e.g.*, ECF 110, 188), to develop all these facts, and Royal Park's standing remains unresolved, showing how fact intensive any standing analysis would be.

Similar individualized inquiries would be necessary for each class member.  Putative class members Commerzbank AG and IKB International, S.A., for example, have brought their own individual lawsuits against Wells Fargo alleging that they *acquired* accrued claims of prior holders in a trust at issue here (ABFC 2006-OPT1), but also *retained* accrued claims when they later sold their interests.  *See* ECF 383-11 (*Commerzbank* Compl.) ¶¶ 17-20; ECF 383-12 (*IKB* Compl.) ¶¶ 9-12; ECF 383-4 ¶¶ 75-85.  Other past holders—including Royal Park in another case—have also sued trustees claiming retained litigation rights.  *See, e.g.*, *Deutsche Bank*, 2017 WL 1331288, at *7; *FDIC v. U.S. Bank*, No. 15-cv-06570 (S.D.N.Y. Aug. 19, 2015); *FDIC v. BNY Mellon*, No. 15-cv-6560 (S.D.N.Y. Aug. 19, 2015); *Phoenix Light*, 2015 WL 2359358, at *2 & n.3.  Individual inquiry into each transaction is needed to identify all holders and assess whether each current and former holder acquired or retained its claims—and the corresponding lack of standing of its counterparties.  *See* R&R at 20-21; ECF 383-4 (Dolan Rep.) ¶¶ 70-85.

For these reasons alone, the Court should adopt Judge Netburn's recommendation that class certification be denied.  Royal Park raises three challenges on standing, but all fail.

### 1.    The need to prove standing individually defeats predominance.

Royal Park first argues that "courts routinely reject the notion that the standing of absent class members is sufficient to defeat predominance."  RP Br. at 8-9.  But as the Second Circuit

held just last year, "classes that require highly individualized determinations of member
eligibility," like the one proposed here, run afoul of predominance. *Petrobras*, 862 F.3d at 268;
*see Myers v. Hertz Corp.*, 624 F.3d 537, 550 (2d Cir. 2010) ("common policy" was "clearly less
substantial" than "whether plaintiffs were *legally entitled*" to recovery); *Augustin v. Jablonsky*,
2001 WL 770839, at *10 n.5 (E.D.N.Y. Mar. 8, 2001) (no certification due to "the spectre of
individual standing determinations"); *HSBC*, 2018 WL 679495, at *3-6. This is particularly true
where, as here, "different jurisdictions' laws" must be applied. *Johnson*, 780 F.3d at 148.

       Royal Park's inapposite precedent from outside the Second Circuit does not change this
result. RP Br. at 8-9. The sole issue in the federal securities fraud case *Freeland v. Iridium
World Commc'ns, Ltd.*, 233 F.R.D. 40, 44 (D.D.C. 2006), was whether class members' stock
shares (not RMBS) were attributable to a registration statement, a question arising under a
uniform federal standard that did not require transaction-by-transaction choice-of-law analysis.
Similarly inapposite, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017), did
not analyze predominance at all and was a simple class of oil consumers, with no secondary
market, trading, or assignments of rights. *Briseno* also does not amend the Second Circuit's
holding in *Petrobras* that "individualized determinations of member eligibility" and "plaintiffs'
ability to offer *proof of membership*" must be considered in predominance. 862 F.3d at 268-69.

              **2.    Trading records lack sufficient information to avoid individual
                     inquiries, negating—not supporting—predominance.**

       Royal Park next argues that "the availability of trading records strongly support[s]
predominance," again analogizing to securities fraud cases. RP Br. at 10-12. Courts, however,
have universally rejected analogizing RMBS trustee cases to securities fraud cases because
liability is far more individualized in trustee cases. *See, e.g.*, *PABF v. BNY Mellon*, 775 F.3d
154, 162 (2d Cir. 2014) ("In contrast to [cases] where the defendants' alleged Securities Act

violations inhered in making the same misstatements across multiple offerings," a trustee's "alleged misconduct must be proved loan-by-loan and trust-by-trust"); ECF 273 at 12 (fraud "require[s] a critical mass of breaching loans rather than loan-specific breaches"); *see also Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007) ("Unlike a securities fraud lawsuit, in which class members have a uniform purpose . . ., here the goal is to second-guess judgments . . . involving a multitude of considerations over a period of years."). Securities fraud claims are also "not automatically assigned to a subsequent purchaser upon the sale of the underlying security," and do not implicate the chain of ownership issues here. *Bluebird Partners, LP v. First Fidelity Bank, N.A. N.J.*, 85 F.3d 970, 974 (2d Cir. 1996); *see Deutsche Bank*, 2017 WL 1331288, at *6. These differences between the securities fraud cases on which Royal Park relies and RMBS trustee cases make tracing claims here far more complicated, if not impossible. ECF 383-4 (Dolan Rep.) ¶¶ 27-85. As Judge Nathan aptly put it: "Determining a particular aftermarket investor's standing to assert claims under [the Securities Act] is, at least comparatively, a straightforward proposition." *Deutsche Bank*, 2017 WL 1331288, at *6.

Royal Park's claim that it "subpoenaed trading records showing the purchase and sale of beneficial ownership interests in the certificates" is equally unavailing. RP Br. at 11-12. The trade records, instead, demonstrate precisely why Judge Netburn was correct. Royal Park subpoenaed DTC and 26 participants for documents identifying beneficial owners of the subject RMBS, but DTC's response confirmed that it cannot identify "the beneficial owners of the subject securities." ECF 383-13 (8/10/15 DTC Letter). And what Royal Park obtained when it then subpoenaed some DTC participants was insufficient to identify ownership history, governing law, or assignments. ECF 383-4 (Dolan Rep.) ¶¶ 24, 34, 42-85. Royal Park's own expert testified that the subpoenaed records are insufficient to "ascertain the dates for every

transaction," ECF 383-8 at 26:17-25; "attempt to establish a chain of ownership," *id.* at 69:9-21; "identify any information . . . that relates to assignment of claims," *id.* at 70:6-18; or "determine whether [a holder] continued to hold this position beyond the end of 2008," *id.* at 294:6-300:3. The data only "sometimes provided" location, *id*. at 48:7-15, and could be "anonymized," *id*. at 50:12-51:13. Judge Netburn thus correctly found that trade records "do[] not show the actual beneficial owners of the notes"—a conclusion ignored by Royal Park. R&R at 26.

Royal Park's newly-attached trade records only further illustrate the point. *See* Wood Decl., Exs. A-D. Initially, Royal Park waived any argument relying on these new records because it did not present them to Judge Netburn. *See Consol. RNC*, 2009 WL 130178, at *10. Moreover, the records are a single snapshot in time and list only limited information like dates and numerical codes. ECF 383-4 (Dolan Rep.) ¶¶ 42-72. Royal Park does not explain how all current and former investors and their litigation rights can be deduced from the records, with good reason—any explanation would only underscore the individualized inquiries needed. *See id*. ¶ 24 ("impossible without individualized inquiries."). As Judge Nathan held, even if "all holders and former holders of Certificates could feasibly be identified with additional data," there is "no evidence that such an [] exercise would not require individualized hearings." *Deutsche Bank*, 2017 WL 1331288, at *8.

### 3. Questions of assignment of litigation rights are not hypothetical.

Finally, Judge Netburn's concerns relating to assignments are not "hypothetical," as Royal Park suggests. RP Br. at 13. Judge Netburn correctly held that it is "common to divorce" litigation rights for accrued claims from the underlying RMBS (R&R at 24), as that is what happens when neither N.Y. Gen. Oblig. Law § 13-107 nor an express assignment applies to a transfer, *see supra* 4-5. By defining the class to include former holders, Royal Park itself acknowledges that *some* former holders retained their litigation rights. Indeed, in other trustee

actions, Royal Park and others have sued as former holders.  *Deutsche Bank*, 2017 WL 1331288, at *7 ("Royal Park . . . sold some or all of its holdings under a contract by which it expressly retained its litigation rights."); *see supra* at 7.  For such investors to have standing, they must take the position that litigation rights have been divorced from the current ownership interests.

Royal Park also mischaracterizes the threshold issue of standing as an issue of "damages" or "affirmative defenses."  RP Br. at 14.  However, as Judge Netburn correctly held (and Royal Park notably does not challenge), the ownership of litigation rights goes to a class member's "Article III standing" and its very right to be in court.  R&R at 24; *supra* 3-5.  These individualized issues distinguish Royal Park's claims from those in *Tyson Foods, Inc. v. Bouaphaekeo*, 136 S. Ct. 1036, 1049-50 (2016).  That case did not involve individualized issues of Article III standing, assignments of litigation rights, or fact-intensive conflicts of laws relating to those assignments.  Royal Park also attempts to distinguish *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016), by arguing that "there was no apparent basis on which the court or the parties could have determined which members of the" class had loans owned by the defendant. RP Br. at 14. But that is equally true here, as Judge Netburn concluded (R&R at 27-29), and the case controls.  As explained (*supra* 8-10), Royal Park's documents provide no way to discern who owns the right to sue for what breach.  *See HSBC*, 2018 WL 679495, *3.[3]

**B.      Wells Fargo's statute of limitations defenses are highly individualized.**

Judge Netburn also correctly concluded that individualized statute of limitations defenses "predominate over any common issues shared by the class."  R&R at 30.  A class action cannot "abridge . . . any substantive right" to litigate individual defenses, such as statutes of limitations.

---

[3] Royal Park's settlement cases are irrelevant (RP Br. at 12 n.6, 14-15 (citing cases)), as the parties in those cases amicably resolved and therefore mooted individualized issues, including damages, and manageability is not at issue in the settlement context as it is for the litigation here.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

*Wal-Mart*, 564 U.S. at 367.   Contrary to Royal Park's contentions (RP Br. at 15-16), the Second
Circuit has held that certification is improper where "plaintiffs have offered no reliable means of
collectively determining how many class members' claims are time barred."   *McLaughlin v. Am.
Tobacco Co.*, 522 F.3d 215, 232-34 (2d Cir. 2008); *Moskowitz v. La Suisse*, 282 F.R.D. 54, 62
(S.D.N.Y. 2012); *see also Myers*, 624 F.3d at 551 (holding "there is no reason the district court
ought to have given the 'defense' less weight in determining . . . predominance").

     The statute of limitations questions in this case require "extensive, individualized, fact-
based inquiries."   R&R at 29-30; *see U.S. Bank* Tr. at 49:10-55:14; *HSBC*, 2018 WL 679495, at
*6.   Purported holders are in no fewer than fourteen states, D.C., and thirteen foreign countries.
ECF 383-4 ¶¶ 38, 63 fig. 4; ECF 383-6 No. 41.   As Judge Netburn found and Royal Park does
not contest, New York's borrowing statute applies and requires claims brought by non-New
York plaintiffs to be timely under the statutes of limitations of both New York *and* the
jurisdiction where they accrued.[4]   R&R at 29-30; N.Y. C.P.L.R. § 202; *2138747 Ontario, Inc. v.
Samsung C&T Corp.*, 144 A.D. 3d 122, 126-27 (N.Y. App. Div. 2016).   Thus, Wells Fargo's
limitations defenses require determining each class member's residence—an issue requiring
"evaluation of several factors" (*Kanowitz v. Broadridge Fin. Sol., Inc.*, 2014 WL 1338370, at *9
(E.D.N.Y. Mar. 31, 2014))—and each claim's place of accrual, *i.e.*, where the breach's economic
impact was felt.   *See Global Fin. Corp. v. Triarc Corp.*, 715 N.E. 2d 482, 485 (N.Y. 1999).

     Notably, the statute of limitations inquiry here is not only a matter of identifying and
applying many different limitations through this fact-intensive choice-of-law inquiry.   Rather,
the Court will need to "trace the note ownership to identify who the noteholder was at the time
the claim accrued" to determine what limitations applies.   *U.S. Bank* Tr. at 52:5-53:3.   Assigned

---

[4] The borrowing statute applies when the trust documents choose New York law.   *See Ontario*, 144 A.D.
3d at 126-27; *Lehman Bros. Holdings, Inc. v. Univ. Am. Mortg. Co., LLC*, 660 F. App'x 554, 559 (10th Cir. 2016).

claims are governed by "the statute of limitations of the jurisdiction in which the claim accrued to the assignor."  R&R at 30 (quoting *IKB Int'l S.A. v. Bank of Am.*, 2014 WL 1377801, at *6 (S.D.N.Y. Mar. 31, 2014)); *see In re Countrywide Fin. Corp. MBS Litig.*, 2014 WL 3529677, at *5-6 (C.D. Cal. July 14, 2014) (dismissing Royal Park's claims under assignor's limitations). The Court would have to identify the original assignor of every claim asserted by every current holder, requiring it to "piec[e] together multiple sales and periods of ownership for just one investor, a daunting task given the lack of unique identifiers and the piecemeal trading . . . of the RMBS at issue."  R&R at 30; *see HSBC*, 2018 WL 679495, at *6; *U.S. Bank* Tr. at 50:7-55:10.

Royal Park's only argument on this point is that "Wells Fargo has never established that it has a meritorious statute of limitations defense."  RP Br. at 25.  This improperly tries to shift the burden of proof.  *U.S. Bank* Tr. at 54:15-55:10 (observing that it "is not Defendant's burden to show that . . . jurisdictions' limitations laws pose an insuperable obstacle to [] certification"). In any event, Royal Park ignores that both this Court and Judge Koetl spent dozens of pages analyzing the limitations applicable to putative class member Commerzbank, finding that "[d]iscovery may prove Defendant's timeliness challenge meritorious."  ECF 291 at 72-79; *Commerzbank AG v. Deutsche Bank*, 234 F. Supp. 3d 462, 469-73 (S.D.N.Y. 2017).  In doing so, the Court relied on Royal Park's own argument that "Wells Fargo's statute of limitations defense . . . involves factual questions as to when and against whom the claims accrued."  ECF 143 at 14.

More importantly, Royal Park does not contest the factual predicates that establish the merit of Wells Fargo's limitations defenses.  Royal Park has alleged breaches by Wells Fargo occurring as far back as July 2007 (Kcehowski Decl., Ex. 2 (10/30/17 Am. Resps.) at No. 3), yet Royal Park did not file this action until more than seven years later, in December 2014.  Am. Compl. ¶ 75; ECF 383-6 No. 74.  Investors are from states with 3-to-5 year statutes of limitations

for contract claims, including but not limited to Delaware (10 Del. C. § 8106), New Hampshire (N.H. RSA § 508:4), North Carolina (N.C. Gen. Stat. § 1-52), California (Cal. Civ. Proc. Code § 337), Pennsylvania (42 Pa. Cons. Stat. § 5525), Texas (Tex. Civ. Prac. & Rem. Code § 16.004), and Florida (Fla. Stat. § 95.11).  ECF 383-4 ¶ 38.  Limitations for breach of trust also vary by state.  *E.g.*, 42 Pa. Cons. Stat. § 5524 (2 years).  Investors are from foreign countries, too, with both shorter limitations and different accrual and tolling rules.  ECF 383-4 ¶¶ 38, 63.  Claims accruing in 2009 or 2010 or even 2011 are thus time-barred as to many investors, unless saved by tolling rules, which also vary.  These fact- and case-specific inquiries predominate.[5]

### C.    Royal Park has not shown injury, causation, or damages classwide.

Judge Netburn also rightly concluded that individual damages issues defeat class certification.  *See* R&R at 30-31.  Royal Park's one-page, conclusory objection on this point misstates both the law and facts.  *See* RP Br. at 22.  On the law, Royal Park is wrong that individualized damages questions never bar class certification.  *See, e.g.*, *McLaughlin*, 522 F.3d at 232; *Hughes v. Ester C Co.*, 317 F.R.D. 333, 356 (E.D.N.Y. 2016) ("Plaintiffs have not demonstrated that damages are calculable on a classwide basis and therefore individual questions of fact or law predominate.").  Royal Park's own lead case holds that individualized damages issues are a "factor that we had to consider" in the predominance analysis.  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (alterations omitted).

Moreover, Royal Park's argument ignores that its failures here go beyond damages calculations, to proving causation and the fact of injury.  A plaintiff's "inability to prove class wide injury through common evidence is, alone, grounds for denying Rule 23(b)(3) certification

---

[5] Royal Park's limitations cases (RP Br. at 15-16) are distinguishable; none involved tracing assigned claims and assignor statutes of limitations.  *U.S. Bank* Tr. at 52:5-55:10 (holding court must trace ownership "to determine whether each individual claim is time-barred . . . no simple task").  Nor did they involve "limitations periods [that] vary widely across jurisdictions."  *Id.* at 53:4-54:4.

based on a lack of predominance." *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68-69, 74-76 (S.D.N.Y. 2013); *see Newton v. Merrill Lynch*, 259 F.3d 154, 187 (3d Cir. 2001); *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 134 (2d Cir. 2010).  The class is limited to holders who "were damaged as a result of" Wells Fargo's conduct, R&R at 4, making causation and injury elements of class membership.[6]  *See* ECF 397 (RP Reply) at 13 (admitting holders without losses "would not be Class members by definition").  There is no dispute that individual investors have experienced significantly varied performance over time—some with no losses of principal or interest, and others seeing increases in value, benefitting from Wells Fargo's alleged inaction.  R&R at 31; ECF 383-5 (Cohen-Cole Rep.) ¶¶ 57-64; ECF 383-4 (Dolan Rep.) ¶¶ 107-18.  Accordingly, to determine if Wells Fargo allegedly caused any particular holder injury—as opposed to only trust-level losses—Royal Park must show, among other things, what actions Wells Fargo should have taken and when, what added cash flows would have resulted to the trust, and what specific holders owned at that time and would have received those cash flows or other alleged benefits, if any.  ECF 383-15 (James Rep.) ¶ 63.  Yet Royal Park has no method to assess impacts to holders classwide, and its expert (and sole evidence on injury), in fact, admitted he did not assess if "any particular investors . . . have been damaged by Wells Fargo's conduct." ECF 383-8 at 46:6-18, 43:18-24.  Answering these questions demands individual analysis that "will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34.

The rest of Royal Park's damages argument is conclusory, and clear error review applies. *DiPilato*, 662 F. Supp. 2d at 339.  Royal Park states without analysis that it "conclusively established that damages are calculable on a class-wide basis." RP Br. at 16.  To the contrary, Judge

---

[6] The "were damaged" element of plaintiffs' class definition also creates an impermissible fail-safe class. *See, e.g.*, *Ruiz v. Citibank, N.A.*, 2015 WL 4629444, at *7 (S.D.N.Y. Aug. 4, 2015) (Failla, J.).  Alternatively, if the element is merely intended to ensure that the class "only contains those who have standing to sue," R&R at 16, then it leads to all the challenges of identifying class members with standing set out above.  *See supra* § I.A.

Netburn held that Royal Park's expert "has not shown that any single model could" assess class-wide damages, and that "his damages methodology require[s] individualized determinations." R&R at 30-31.  That holding was not clearly erroneous but amply supported by the record.

Royal Park's damages approach fails in at least two ways.  *First*, Royal Park's expert failed to "demonstrate in adequate detail how his proposed 'approaches' would be used" to determine damages.  *Weiner v. Snapple Bev. Corp.*, 2010 WL 3119452, at *7 (S.D.N.Y. Aug. 5, 2010).  Royal Park's expert admitted he "ha[s] not performed a damages analysis," or "committed to any particular approach."  ECF 383-8 at 95:5-8, 103:25-104:18.  He also did not rule out "us[ing] different approaches for different class members."  ECF 386-3 at 105:5-14.

*Second*, Royal Park's approach violates the rule that a methodology must "measure damages resulting from the particular . . . injury on which petitioners' liability . . . is premised." *Comcast*, 569 U.S. at 35.  In the RMBS trustee context, this requirement means that an appropriate model of damages would, at a minimum, "have to account for":

> (1) whether and when [the trustee] discovered the breaches; (2) whether the seller would have been in the financial position to repurchase or substitute the loan had [the trustee] acted; (3) if not, whether litigation would have been appropriate; [and] (4) for any litigation, whether it would have succeeded and whether any damages would have been collectible.

*U.S. Bank* Tr. at 58-59.  Royal Park's expert did not analyze what Royal Park must show to establish breach or causation here.  *See* ECF 383-8 at 86:23-88:11.  He acknowledged that "assumptions would be required" for his approach, but that he "ha[d] not developed any specific assumptions regarding the damages model in this case," *id.* at 96:12-97:22, and did not even "have a specific understanding of what the amount or timing of those inputs would be" or how they would be generated.  *Id.* at 125:7-126:15, 81:3-8, 97:23-99:4.  He did not analyze the actual repurchase process, along with its costs and risks, *see id.* at 163:13-179:9, and did not "perform[] any analysis with respect to any particular foreclosure process," ECF 386-3 at 144:22-154:2.  As

"[p]laintiffs' damages model does not address any of these issues," it "runs afoul of *Comcast*, and thus provides another basis for denying . . . certification." *U.S. Bank* Tr. at 58:20-59:7.

Moreover, Royal Park's approach was limited to aggregate trust-level damages, with no method to translate damages to investor-level damages, even though investors are the class members. ECF 383-8 at 190:25-193:3, 182:3-20. By ignoring that step, Royal Park fails to establish causation to any investor and impermissibly "mask[s] the prevalence of individual issues," *McLaughlin*, 522 F.3d at 232, such as when breaches and damages should be assessed, ECF 386-3 at 181:11-186:10, which investors were injured and entitled to recovery, *id.* at 99:6-100:11, 125:7-126:15, 262:5-18, or even what remedies Wells Fargo should have pursued, ECF 383-8 at 127:8-128:25. Such untethered aggregate measures fail. *See McLaughlin*, 522 F.3d at 231-33; *Hickory Secs. Ltd. v. Rep. of Argentina*, 493 F. App'x 156, 158-60 (2d Cir. 2012).

Royal Park does not deny that its damages approach does not yet account for these necessary factors. It argues only that Wells Fargo's experts did not reach their own conclusions that damages are not calculable classwide. That misstates the record—Wells Fargo's experts testified repeatedly that "I don't see how damages can be calculated on a class-wide basis." Kcehowski Decl., Ex. 3 (James Dep.) at 8:8-9:18; *see id.*, Ex. 4 (Cohen-Cole Dep.) at 65:14-68:25, 111:4-112:18.[7] In any event, Royal Park's attempt to "shift Plaintiffs' burden of proof onto Defendant" is improper. *U.S. Bank* Tr. at 54:18-19.

### D. Liability does not simply turn on whether Wells Fargo "breached" the agreements, and the issue of breach does not predominate.

Royal Park attempts to overcome the many individual issues above by incorrectly asserting that "Wells Fargo's contractual and tort liability is common to the class." RP Br. at 7.

---

[7] Royal Park's personal attacks on Wells Fargo's experts are also incorrect. ██████████████ ██████████████████████████████████████████ The plaintiffs also voluntarily dismissed their claims against Dr. James, conceding no wrongdoing. *See* N.D. Fla., Case No. 17-cv-00018 at ECF 33-1.

Judge Netburn, however, identified only one common issue—"whether Wells Fargo breached certain provisions of the underlying agreements."  R&R at 19.  *Breach* alone is not enough to establish *liability* here.  Liability also requires Royal Park to prove causation and injury, *see Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525-26 (2d Cir. 2005), as well as *inter alia* negligence or willful misconduct, *see, e.g.*, Kcehowski Decl., Ex. 7 (SASC Trust Agreement § 6.01(c)).  As discussed above (*supra* § I.C), Royal Park can show neither causation nor injury on a classwide basis, so certification is improper.  *See UFCW*, 620 F.3d at 134; *see also Myers*, 624 F.3d at 549; *Vaccariello*, 295 F.R.D. at 68-69, 74-76.

Even the question of breach is individualized and not common across the class, which includes both current and former holders.  Royal Park must prove all its claims "loan-by-loan and trust-by-trust," *PABF*, 775 F.3d at 162, using "loan-specific proof."  ECF 273 at 9-14.  Yet, as Wells Fargo explained in detail in its brief to Judge Netburn (*see* ECF 382 at 16-23), the duties and breaches Royal Park alleges involve a ten-year period, two separate trusts, five different loan groups, 31 unique offered securities, thousands of individual loans, different underwriting guidelines, at least four distinct originators and warrantors, and more than eight servicers.  *See* ECF 383-15 (James Rep.) ¶¶ 14, 98; ECF 383-5 ¶¶ 52-56.  The trusts have materially different waterfalls and contract terms, imposing different duties and prioritizing payments to different holders in different circumstances over time.  *See* ECF 383-5 ¶¶ 67-70; ECF 383-40 (exemplar differences in trust agreements).  Wells Fargo's conduct was also individualized, given that "every transaction document is different" (ECF 383-17 (Fay Dep.) at 176:2-177:15), and issues were managed "case-by-case" (ECF 383-20 (Stinson Dep.) at 229:13-18).  These differences mean there are no "common answers apt to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at 350 (denying certification without "proof of a company-

-18-

wide . . . policy"); *see Bd. of Trs. v. BNY Mellon*, 287 F.R.D. 216, 226 (S.D.N.Y. 2012) (no

predominance for "[im]prudently" investing; each "particular . . . note" had to be analyzed).  As

the Second Circuit has held, "the nature of the claims in this [RMBS trustee] case unavoidably

generates significant differences in proof . . . for each trust."  *PABF*, 775 F.3d at 162-63.

Royal Park's commonality cases all deal with challenges to a single, uniformly applicable

policy or contract.  *See* RP Br. at 8 (citing cases).  Courts, however, reject certification where, as

here, there are "different layers of contractual arrangements" impacting class members

differently over time.  *Wu v. Pearson Educ., Inc.,* 2012 WL 6681701, at *6-9 (S.D.N.Y. Dec. 21,

2012); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601

F.3d 1159, 1171 (11th Cir. 2010) ("common questions rarely will predominate" if "terms vary").

### E.     Conflicts among class members further defeat predominance and adequacy.

While the issues Judge Netburn addressed are enough to defeat predominance, the class

conflicts Wells Fargo raised are a further basis for denying certification.  "[D]isparate groups

cannot be mixed together under Rule 23(a) where the economic reality of the situation leads

some class members to have economic interests that are significantly different from—and

potentially antagonistic to—the named representatives purporting to represent them."  *Valley*

*Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1195 (11th Cir. 2003); *see Broussard v.*

*Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 339 (4th Cir. 1998); *Free World Foreign Cars,*

*Inc. v. Alfa Romeo, S.p.A.*, 55 F.R.D. 26, 29 (S.D.N.Y. 1972).  Certification is improper where

"some class members derive a net economic benefit from the very same conduct alleged to be

wrongful," *Valley Drug*, 350 F.3d at 1190, or "[t]he facts . . . may bear out different legitimate

theories" of liability that impact members' recoveries.  *Langbecker*, 476 F.3d at 315.

In this case, Royal Park seeks to represent "all persons and entities who held Certificates

in" 31 tranches of two different trusts, even though Royal Park claims to hold certificates in only

a single mezzanine tranche in each trust.  Am. Compl. ¶¶ 30, 47.  But every tranche is different, *see supra* 18-19, and "proposed class members have different interests regarding the Trustee's conduct," ECF 383-15 ¶ 115, as "trustee actions could have potentially benefitted some investors and harmed others," ECF 383-4 ¶ 122.  Royal Park has never disputed that these conflicts exist.

   ***For R&W breaches***, there are conflicts and, in fact, differing claims among investors regarding how or even whether*,* Wells Fargo should have taken action.  For example, in the ABFC 2006-OPT1 trust, if Wells Fargo had forced repurchases in January 2009 (as Royal Park alleges it should have), deal triggers would have shifted payments from senior to junior holders, and holders of the senior "Class A-1 Certificates would have received $2.63M less in principal payments . . . than they actually received as of Feb. 2017."  ECF 383-5 ¶¶ 100-01 & Ex. 12. Other holders would have had to bear the costs of enforcement actions without any possible share in benefits.  *See* ECF 383-15 ¶¶ 86, 121.  These holders benefitted from the inaction that Royal Park alleges as wrongful, and a class cannot be certified with them.  *See Valley Drug*, 350 F.3d at 1190; *Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436, 449-50 (S.D. Iowa 2009).

   ***For Servicer EODs***, Royal Park alleges that Wells Fargo failed to "take additional actions" to deal with EODs.  Am. Compl. ¶ 180.  But servicing actions affect tranches differently and often benefit some at others' expense.  *See, e.g.*, ECF 383-22 (Amherst Rep.) at 14 (loan modification was "most detrimental to the senior bond holders" while "the junior tranches benefit"); ECF 383-24 (Barclays Rep.) at 10 (servicing decisions "can change the timing of the cash flows and allocation to different tranches").  Thus, investors in different tranches have different claims and views on basic liability issues such as what servicing actions constitute EODs, and what action Wells Fargo should have taken.  *See Valley Drug*, 350 F.3d at 1189-95.

   In addition to conflicts among holders in different tranches, holders of even the same tranche at different times have different claims and are in conflict.  Different holders will want to

assert different dates of breach and recovery.  Whether a holder has a claim at all, and "the amount each tranche receives[,] can significantly vary when different dates are utilized."  ECF 383-5 ¶¶ 95-96.  Exacerbating this problem, Royal Park's proposed class definition includes both current and former holders, who will take opposing positions on whether N.Y. Gen. Oblig. Law § 13-107 applies to transfer claims to buyers.  *See supra* 4-5.  These conflicts go to the very right to litigate and recover and defeat certification.  *See Langbecker*, 476 F.3d at 315 (decertifying where "date on which the stock fund became an imprudent investment" affected recovery).

## II.   JUDGE NETBURN RIGHTLY FOUND SUPERIORITY WAS NOT MET.

Royal Park also failed to prove superiority, as Judge Netburn rightly held.  First, "the individualized nature of claims in this case indicates that management of the litigation would be difficult, if not near impossible."  R&R at 33.  As Royal Park's own cases recognize, "the issue of manageability of a proposed class action is always a matter of justifiable and serious concern for the trial court and is peculiarly within its discretion."  *In re Visa Check Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001).  Logistics of class adjudication here are staggering.  *See supra* § I.

Second, the putative class members are "highly sophisticated, knowledgeable financial institutions or wealthy private investors" with "a strong interest in individually controlling the prosecution of their own actions."  R&R at 34.  Class members' resources and sophistication are considered in assessing superiority because sophisticated plaintiffs can bring individual litigation if they believe their claims are meritorious, and have a stronger interest in controlling litigation. *See Amchem*, 521 U.S. at 616 (superiority weakest where class members have the "will and ability to take care of" themselves); *N.J. Carpenters Health Fund v. Residential Capital, LLC*, 272 F.R.D. 160, 170 (S.D.N.Y. 2011) ("the proposed class consists of large, institutional and sophisticated investors with the financial resources and incentive to pursue their own claims"); *In re MTBE Prods.*, 209 F.R.D. 323, 350 (S.D.N.Y. 2002) (no superiority where "several"

individual lawsuits filed); *Stoudt v. E.F. Hutton & Co., Inc.*, 121 F.R.D. 36, 38 (S.D.N.Y. 1988) (Rule 23 "not designed to permit large claimants . . . to strengthen their bargaining position[.]").

This case is a prime example of large, sophisticated class members with an interest in controlling their own litigation.  Already two individual lawsuits have been filed against Wells Fargo by putative members of Royal Park's class, each seeking at least $100 million under their own theories of liability and damages.  *See supra* 7; ECF 383-11; ECF 383-12.  Other investor suits against Wells Fargo and other RMBS trustees abound.  *See id.*

Royal Park's sole attack on Judge Netburn's finding here is a factual assertion by counsel that certain transactions were less than $1 million.  RP Br. at 21.  Royal Park never presented this "evidence" to Judge Netburn.  *Consol. RNC*, 2009 WL 130178, at *10.  Regardless, it establishes the sophistication, interests, and resources of putative class members.  For example, ██████

██████████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████.  This newly-submitted "evidence" only confirms Judge Netburn's finding small investors do not "represent a majority of the class."  R&R at 35.

The rest of Royal Park's criticisms of the superiority finding likewise miss the mark. Royal Park first mischaracterizes Judge Netburn's rejection of superiority as based on an improper comparison of a class action to no action at all.  RP Br. at 2, 20, 22.  But Judge Netburn expressly stated that, in light of the individualized nature of the claims, "separate actions" are

superior.  R&R at 33.  A situation where some class members sue and others do not—whether due to no standing, untimeliness, or a belief they have no cause of action—is a superior alternative to a class action under the facts here.  *See Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 173 (S.D.N.Y. 2003) ("classes are not superior to individual adjudication," even though "some class members may not seek to bring an individual action against defendants").

Royal Park's assertion that resolving individualized issues would be less manageable in separate cases, RP Br. at 20, is also "pure speculation."  *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 747-48 & n.26 (5th Cir. 1996)[8]; *Arch v. Am. Tobacco Co., Inc.*, 175 F.R.D. 469, 495 (E.D. Pa. 1997); *see also In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 403 (S.D.N.Y. 2008) (no superiority where plaintiffs "submitted no real proposal" for managing individual issues).  All the issues here—standing, assignments, timeliness, and damages—can be resolved more concretely and efficiently in separate cases, with plaintiffs who have access to necessary information about their ownership of the relevant RMBS.  Individual cases also avoid the conflicts of interest and the need for a classwide damages model.  Indeed, several individual cases are proceeding, and they have not caused a "judicial crisis."  *Castano*, 84 F.3d at 747.

The novelty of Royal Park's claims is another basis to conclude that a class action is not superior, *see id.* ("certification of an immature tort results in a higher than  normal risk that the class action may not be superior"); *Newton*, 259 F.3d at 192-93 (3d Cir. 2001) (no "track record"), as is the existence of the *Lehman* bankruptcy proceedings, *see* ECF 389 (WF Br.) at 7-10.  Here, Royal Park unfairly proposes to bind an entire class to a single court's decision on its novel and still-fluctuating theories of liability.  *See Newton*, 259 F.3d at 192.

---

[8] Royal Park argued to Judge Netburn that *Castano* "has been rejected in the Second Circuit."  ECF 397 at 10.  Any Second Circuit criticism of *Castano* was on issues unrelated to those cited here, and the Second Circuit has continued to cite *Castano* favorably in analyzing the elements of class certification.  *Johnson*, 780 F.3d at 141.

## III.   JUDGE NETBURN'S R&R CAN ALSO BE ADOPTED ON OTHER GROUNDS.

Royal Park's class can also be rejected on alternative grounds, namely:

*Typicality & Adequacy*.  Royal Park cannot show typicality or adequacy because it is subject to numerous conflicts of interest and unique defenses.  *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 & n.8 (2017).  Royal Park was created to acquire bad assets, did not purchase at arm's length, has an uncertain chain of ownership, adopted policies that prevented it from mitigating losses, and failed to cooperate in discovery.  *See* ECF 382 (WF Br.) at 31-33; R&R at 21 (such defenses "certainly problematic").

*Numerosity*.  Royal Park has also not shown numerosity.  *See* ECF 382 (WF Br.) at 28-30.  Its only evidence is its expert's overinclusive count that admittedly was not "necessarily representative of the numbers in the class."  ECF 383-8 at 40:5-43:17, 46:19-47:10.  The "court may not infer numerosity" from an admittedly overinclusive count.  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013); *see Bd. of Trs.*, 287 F.R.D. at 223; ECF 382 at 28-30.

## IV.   A LIABILITY-ONLY CLASS CANNOT RESOLVE THE INDIVIDUALIZED ISSUES AND WILL NOT MATERIALLY ADVANCE THE LITIGATION.

Finally, for at least two reasons, Judge Netburn correctly concluded that Royal Park's proposed "liability-only" class does not resolve the individualized issues.  *See* R&R at 35-36.

First, Royal Park has not shown that a liability-only class would "independently meet" predominance and superiority for the issues sought to be certified.  *MTBE*, 209 F.R.D. at 351; *Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1332 (S.D.N.Y. 1996).  Unlike the lone putback case Royal Park mis-cites (RP Br. at 24-25), Wells Fargo's liability as a trustee is not a common issue.  *See supra* 17-19.  Causation and injury are wholly individual, and even the determination of breach (and negligence or willful misconduct) requires individual inquiries.  *See id*.  Courts

deny issue certification under such facts.  *E.g., In re Yasmin Mktg.*, 275 F.R.D. 270, 278 (S.D. Ill. 2011) (no liability-only class where "causation, duty of care, and reliance" were individual).

Second, the proposed liability-only class "would not materially advance the litigation." *McLaughlin*, 522 F.3d at 234; *Benner*, 214 F.R.D. at 170 ("substantial individual actions . . . would still be necessary"); *MTBE.*, 209 F.R.D. at 351-53 ("countless individual trials . . . would follow").  A liability-only class cannot resolve difficult questions of standing, causation, and injury, much less defenses or damages.  Courts reject liability-only classes that cannot resolve such questions.  *McLaughlin*, 522 F.3d at 234 ("it would not dispose of larger issues such as reliance, injury, and damages"); *Hamilton*, 935 F. Supp. at 1332 ("assuming . . . defendants collectively breached a duty, they must still establish that this breach caused each plaintiff's injury").  Royal Park's own precedent recognizes as much, holding certification for liability inappropriate in breach cases where, as here, a plaintiff "must still establish this breach caused each plaintiff's injury."  *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 593 (S.D.N.Y. 2013).

Unable to show that the requirements for a liability-only class are met, Royal Park states that "a variety of case-management tools" can adjudicate individualized issues.  RP Br. at 25.  Yet, Royal Park never identifies which "tools" Judge Netburn should have considered using, and does not explain how they could efficiently and fairly resolve the problems discussed above.  *See Fosamax Prods.*, 248 F.R.D. at 403 ("no real proposal" for managing individual issues).  As Judge Netburn rightly held (R&R at 27), and Royal Park does not now contest, no claims process could be used because standing is a "central issue[] bearing on liability" that "cannot be deferred until a claims-administration process."  *Toldy v. Fifth Third Mortg. Co.*, 2011 WL 4634154, at *3-4 (N.D. Ohio Sept. 30, 2011); ECF 382 at 12 (collecting cases); ECF 389 at 6-7.

## CONCLUSION

The Court should adopt Judge Netburn's R&R and deny class certification.

Dated:  March 7, 2018

JONES DAY

By: */s/ Rebekah B. Kcehowski*
    Jayant W. Tambe, Esq.
    Howard F. Sidman, Esq.
    Tracy V. Schaffer, Esq.
    Jason Jurgens, Esq.
    JONES DAY
    222 East 41st Street
    New York, NY 10017
    Tel:  (212) 326-3939
    Fax:  (212) 755-7306
    jtambe@jonesday.com
    hfsidman@jonesday.com
    tschaffer@jonesday.com
    jjurgens@jonesday.com

    Rebekah B. Kcehowski, Esq.
    JONES DAY
    500 Grant Street
    Pittsburgh, PA  15219
    Tel:  (412) 391-3939
    Fax:  (412) 394-7959
    rbkcehowski@jonesday.com

    Attorneys for Defendant
    Wells Fargo Bank, N.A.

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on March 7, 2018, I caused the Memorandum of Law in Opposition to

Plaintiff Royal Park Investments SA/NV's Rule 72 Objection and Motion to be served by

electronic mail on all counsel of record.

JONES DAY

By: <u>*/s/ Rebekah B. Kcehowski*</u>
Jayant W. Tambe, Esq.
Howard F. Sidman, Esq.
Tracy V. Schaffer, Esq.
Jason Jurgens, Esq.
JONES DAY
250 Vesey Street
New York, NY  10281
Tel:  (212) 326-3939
Fax: (212) 755-7306
jtambe@jonesday.com
hfsidman@jonesday.com
tschaffer@jonesday.com
jjurgens@jonesday.com

Rebekah B. Kcehowski, Esq.
JONES DAY
500 Grant Street
Pittsburgh, PA  15219
Tel:  (412) 391-3939
Fax:  (412) 394-7959
rbkcehowski@jonesday.com

Attorneys for Defendant
Wells Fargo Bank, N.A.