UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
ROYAL PARK INVESTMENTS SA/NV,           : Civil Action No. 1:14-cv-09764-KPF-SN
Individually and on Behalf of All Others :
Similarly Situated,                      : <u>CLASS ACTION</u>
                                         :
                  Plaintiff,             : REPLY IN SUPPORT OF PLAINTIFF
                                         : ROYAL PARK INVESTMENTS SA/NV'S
        vs.                              : RULE 72 OBJECTION AND MOTION TO
                                         : VACATE THE MAGISTRATE JUDGE'S
WELLS FARGO BANK, N.A., as Trustee,      : OPINION & ORDER AND REPORT &
                                         : RECOMMENDATION CONCERNING
                  Defendant.             : MOTION FOR CLASS CERTIFICATION
---------------------------------------------------------------- x

1395427_1

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. Royal Park Has Established Predominance ............................................................3

        1. Wells Fargo's Violations Are Common to the Class...................................3

        2. Establishing Standing Does Not Defeat Predominance...............................4

        3. Injury, Causation and Damages Are Class-Wide Questions .......................6

        4. Statute of Limitations Defenses Require Class-Wide Answers...................7

    B. No Conflicts Defeat Predominance or Adequacy.....................................................8

    C. A Class Action Is Superior to Individual Actions, or No Actions at All.................9

    D. Royal Park Established Typicality, Adequacy and Numerosity ...........................10

    E. In the Alternative, the Court Should Certify a Liability-Only Class .....................10

III. CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................... 1, 9

*Belfiore v. P&G*,
   311 F.R.D. 29 (E.D.N.Y. 2015) ....................................................................................... 4

*BlackRock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n*,
   No. 1:14-cv-09401-PGG-AJP (S.D.N.Y. Jan. 31, 2018) .................................................. 2

*BlackRock Balanced Capital Portfolio (FI) v. HSBC Bank USA, N.A.*,
   No. 18-450 (2d Cir. Feb. 15, 2018) ................................................................................. 3

*Brecher v. Rep. of Arg.*,
   806 F.3d 22 (2d Cir. 2015) ........................................................................................... 2, 5

*Comcast Corp. v. Behrend*,
   ___ U.S. ___, 133 S. Ct. 1426 (2013) ............................................................................. 7

*Gortat v. Capala Bros.*,
   No. 07 Civ. 3629 (ILG)(SMG), 2012 WL 1116495
   (E.D.N.Y. Apr. 3, 2012) ................................................................................................. 10

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
   No. 12-CV-2548 (VSB), 2017 WL 1273963
   (S.D.N.Y. Mar. 31, 2017) ................................................................................................ 9

*In re Lehman Bros. Sec. & ERISA Litig.*,
   No. 09 MD 2017 (LAK), 2013 WL 440622
   (S.D.N.Y. Jan. 23, 2013) ................................................................................................. 9

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
   No. 11 MD 2262 (NRB), 2016 U.S. Dist. LEXIS 185766
   (S.D.N.Y. Sept. 20, 2016) ............................................................................................... 8

*In re Lloyd's Am. Tr. Fund Litig.*,
   96 Civ. 1262 (RWS), 1998 WL 50211
   (S.D.N.Y. Feb. 6, 1998) .................................................................................................. 4

*In re Petrobras Sec. Litig.*,
   862 F.3d 250 (2d Cir. 2017) ................................................................................. *passim*

Page

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................................9

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ..........................................................................................5, 9

*McCracken v. Verisma Sys., Inc.*,
    No. 6:14-cv-06248 (MAT), 2017 WL 3187365
    (W.D.N.Y. July 27, 2017)...................................................................................................4

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)...............................................................................................8

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)...........................................................................................4, 8

*Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*,
    No. 1:12-cv-02865-KBF (S.D.N.Y.) ..................................................................................6

*Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of
    N.Y. Mellon*,
    775 F.3d 154 (2d Cir. 2014)...............................................................................................5

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
    No. 14-cv-6502-GHW, 2017 WL 3835339
    (S.D.N.Y. Aug. 30, 2017) ..................................................................................................2

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    No. 14-CV-4394 (AJN), 2017 WL 1331288
    (S.D.N.Y. Apr. 4, 2017)...........................................................................................2, 3, 5

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
    No. 14 Civ. 8175 (LGS), 2018 WL 679495
    (S.D.N.Y. Feb. 1, 2018) .................................................................................................2, 3

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
    No. 1:17-cv-06687-KPF (S.D.N.Y. Nov. 10, 2017) ...........................................................2

*Smilow v. Sw. Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003)................................................................................................1

*Traver v. Lowe's Home Ctrs., LLC*,
    No. 12 Civ. 3528 (AMD)(PK), 2016 WL 880169
    (E.D.N.Y. Mar. 1, 2016) ....................................................................................................2

**Page**

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010) ...........................................................................................4

*Vaccariello v. XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y 2013) .......................................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .......................................................................................................1

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ............................................................................................................................9
    Rule 23(b)(3) ...................................................................................................................1
    Rule 23(f) ........................................................................................................................3

**I.       INTRODUCTION**

"'What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original).[1]  Certification should be granted because the resolution of this litigation will be driven by answering a fundamental, class-wide question: whether defendant Wells Fargo Bank, N.A. ("Wells Fargo") complied with its contractual and common law obligations in connection with the Covered Trusts.  The rigorous comparative inquiry mandated by *In re Petrobras Sec. Litig.*, 862 F.3d 250, 264 (2d Cir. 2017), to which Wells Fargo gives only lip service, shows that any purported individual issues are predicated on inquiries that must be resolved on a class-wide basis in order to ensure "'uniformity of decision as to persons similarly situated,'" supporting certification. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

If a trier of fact concludes that Wells Fargo did not comply with its obligations, causing damages to the Covered Trusts, the only remaining questions will relate to how those damages are distributed to appropriate class members – questions that are present and answered in practically every class action, including a recent RMBS trustee settlement where no individual questions regarding the right of class members to recover had to be resolved by the court.  If a trier of fact concludes Wells Fargo complied with its obligations, the litigation will be over, all class members will be bound by the resulting judgment and *none* of the purported individual questions that Wells Fargo insists predominate will ever need to be asked, let alone answered.

Regardless of the ultimate outcome, certification should be granted now.  "The core purpose of Rule 23(b)(3) is to vindicate the claims of . . . people whose individual claims would be too small to warrant litigation." *Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 41 (1st Cir. 2003).  The evidence

---

[1]  Citations are omitted and emphasis is added throughout unless otherwise noted.

- 1 -

here establishes that many class members are unable to independently litigate a case of this complexity and magnitude, a prospect made all the more daunting by Wells Fargo's willingness to loot with alacrity the very assets they promised to protect in order to fund their defense. *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 1:17-cv-06687-KPF (S.D.N.Y. Nov. 10, 2017), ECF No. 19.  The Objection should be overruled and the proposed Class should be certified.

## II.     ARGUMENT

A "district judge need not review the conclusions of the magistrate judge to which there was no objection, as long as they are not 'clearly erroneous.'" *Traver v. Lowe's Home Ctrs., LLC*, No. 12 Civ. 3528 (AMD)(PK), 2016 WL 880169, at *1 (E.D.N.Y. Mar. 1, 2016).  None of the issues beyond those raised in the Objection were "clearly erroneous"; Wells Fargo does not contend otherwise.

Although Wells Fargo contends that courts have denied certification "in RMBS trustee cases like this one" (Opp. at 1-2), this Court should critically examine those opinions.  *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) ("*Deutsche Bank*"), relied almost exclusively on *Brecher v. Rep. of Arg.*, 806 F.3d 22 (2d Cir. 2015), and its ascertainability analysis was nullified by *Petrobras*. *Deutsche Bank*, 2017 WL 1331288, at *3-*9 (citing *Brecher* 30 times); *Petrobras*, 862 F.3d at 267-68.  *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 14-cv-6502-GHW, 2017 WL 3835339 (S.D.N.Y. Aug. 30, 2017) ("*BNY Mellon*"), relied on *Deutsche Bank*, and Royal Park's renewed motions for class certification in both cases have yet to be resolved.  *BNY Mellon*, ECF Nos. 150, 158, 160; *Deutsche Bank*, ECF Nos. 372, 383.  *U.S. Bank* did not include a written opinion, and focused on Trust Indenture Act questions not at issue here.  *BlackRock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-09401-PGG-AJP (S.D.N.Y. Jan. 31, 2018), ECF Nos. 252, 253.  *Royal*

- 2 -

*Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 14 Civ. 8175 (LGS), 2018 WL 679495 (S.D.N.Y. Feb. 1, 2018) ("*HSBC*"), also relies on *Deutsche Bank*, as well as Magistrate Judge Sarah Netburn's R&R in this action; two separate Fed. R. Civ. P. 23(f) petitions are currently pending. *Royal Park Invs. SA/NV, HSBC Bank USA, N.A.*, No. 18-455 (2d Cir. Feb. 16, 2018), ECF No. 1; *BlackRock Balanced Capital Portfolio (FI) v. HSBC Bank USA, N.A.*, No. 18-450 (2d Cir. Feb. 15, 2018), ECF No. 1. ***None*** of these opinions perform the comparative predominance or superiority analysis mandated by *Petrobras*, and the Court should not rely on them. *See* Obj. at 7-8; *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 18-455 (2d Cir. Feb. 16, 2018), ECF No. 1 at 8-10.

**A.     Royal Park Has Established Predominance**

**1.     Wells Fargo's Violations Are Common to the Class**

Wells Fargo did not object to the R&R's conclusion that the "questions of whether Wells Fargo breached certain provisions of the underlying agreements are common ones material to the resolution of this ligation," thereby waiving any objection. R&R at 19; Obj. at 3 n.2. Nevertheless, it repeats irrelevant contentions already rejected in the R&R to argue that the question of breach is "individualized" (Opp. at 18), contradicting the terms of the Governing Agreements that require Wells Fargo to hold all trust assets ***not*** for the benefit of any individual certificateholder but "'for the exclusive use and benefit of ***all*** present and future Certificateholders.'"[2] Obj. at 7. Nor does Wells Fargo explain how the relevant time period, number of offered securities, volume of loans or any other characteristic of the Covered Trusts is in any way relevant to whether it violated its obligations. *See* Opp. at 18. Wells Fargo relied on common policies and procedures, and its obligations to certificateholders in each trust were defined by the Governing Agreements, which imposed upon Wells Fargo substantially identical obligations. Obj. at 7; ECF No. 360-6, ¶¶21-27. Wells Fargo

---

[2] Losses caused by a trustee's failure to enforce R&W violations and EoDs impact every certificateholder in a trust because of the reduction in common collateral, irrespective of how many different servicers, originators, loans or tranches exist within an individual trust. *See* ECF No. 360-6, ¶¶30-39; ECF No. 360-17, ¶¶1, 107-110.

- 3 -

employees testified on more than 130 separate occasions that their obligations were defined by the Governing Agreements, yet Wells Fargo fails to point to a single provision in any Governing Agreement showing that it owes different obligations to different certificateholders.

Wells Fargo suggests establishing a breach is insufficient to show liability. *See* Opp. at 17-18. Yet causation and injury are prerequisites to class membership and are therefore class-wide questions. *See id.* at 3. Whether Wells Fargo acted with "negligence or willful misconduct," if relevant, is also subject to a class-wide answer because of Wells Fargo's identical obligations to all certificateholders. In any event, the common question of Wells Fargo's breach would be sufficient to predominate over any causation or damages questions. *E.g.*, *In re Lloyd's Am. Tr. Fund Litig.*, 96 Civ. 1262 (RWS), 1998 WL 50211, at *14 (S.D.N.Y. Feb. 6, 1998).

Courts distinguish *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 133 (2d Cir. 2010), where, like here, reliance is not an element of the claim. *See Belfiore v. P&G*, 311 F.R.D. 29, 69-70 (E.D.N.Y. 2015). *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010), involved certification of an FLSA class, which bears no relevance to these facts. Finally, *Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y 2013), was unique because it required individualized inquiries into reliance – whether a customer wanted renewal of an allegedly deceptive automatic radio subscription – in order to determine injury. *See McCracken v. Verisma Sys., Inc.*, No. 6:14-cv-06248 (MAT), 2017 WL 3187365, at *6 (W.D.N.Y. July 27, 2017). Here, determining whether certificateholders were injured by Wells Fargo's breaches does not require such individual inquiry because Wells Fargo's obligations were to certificateholders as a whole.

  **2.**  **Establishing Standing Does Not Defeat Predominance**

*Petrobras* did not hold that "'classes that require highly individualized determinations of member eligibility,' . . . run afoul of predominance." Opp. at 8. It held that such inquiries were

comparative, as the very portion cited by Wells Fargo makes clear when explaining why there is no freestanding "administrative feasibility test," as *Brecher* and *Deutsche Bank* wrongly concluded, and Wells Fargo continues to try to resurrect. *Petrobras*, 862 F.3d at 268; *Deutsche Bank*, 2017 WL 1331288, at *3. Nor did *Petrobras* find the proposed class uncertifiable, taking "no position as to whether, on remand, the district court might properly certify [a class]." 862 F.3d at 274. In fact, on remand, the parties reached an agreement to settle the case for $2.95 billion, which Judge Jed S. Rakoff preliminarily approved. *Petrobras*, No. 1:14-CV-09662-JSR (S.D.N.Y. Mar. 1, 2018), ECF No. 770 at 2.

Courts do not "reject[] analogizing RMBS trustee cases to securities fraud cases" with respect to identifying class members. *See* Opp. at 8-9. *Ret. Bd. of the Policemen's Annuity & Benefit Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162-63 (2d Cir. 2014), rejected the analogy with respect to standing to sue on trusts the class representative had not purchased – a question not at issue here. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315 (5th Cir. 2007), decided by a divided panel, does not even involve an RMBS trustee, and the portion quoted by Wells Fargo related to adequacy, which Royal Park has demonstrated. R&R at 21-22; ECF No. 396 at 12.

Wells Fargo's contention that assignment issues pose insurmountable individual questions misrepresents the record. Royal Park has ***never*** sued as a "former holder" in a trustee action.[3] *See* Opp. at 10-11. Wells Fargo provides no other evidence to support its speculation that it is "'common to divorce'" litigation rights. *Id.* Nor does Wells Fargo acknowledge that many certificateholders purchased and held their certificates, making such "issues" irrelevant in those instances.

Wells Fargo contends that the Court should ignore "settlement cases" because the amicable resolution of such cases would "moot[] individualized issues." Opp. at 11 n.3. But it is precisely in

---

[3] The portion of *Deutsche Bank* cited by Wells Fargo does not support its contention, and the document cited by *Deutsche Bank* – a document that Royal Park also produced to Wells Fargo – does not show that Royal Park sold certificates on which it subsequently brought litigation.

- 5 -

1395427_1

the settlement context (if ever), where money has already been recovered, that you might expect to see class members fight over who has the litigation rights sufficient to participate in the distribution. ***Wells Fargo has not cited a single case where such a dispute has arisen***. To the contrary, in *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*, No. 1:12-cv-02865-KBF (S.D.N.Y.), another action brought against an RMBS trustee, Judge Katherine B. Forrest certified a settlement class of current and former certificateholders and approved the distribution of a $69 million settlement fund without having to resolve any disputes between class members regarding litigation rights. *See id.*, ECF Nos. 345-348.

Finally, Wells Fargo ignores the comparative nature of the inquiry. Even if hypothetical issues regarding standing were to arise, it would be easier to resolve them after the common question of Wells Fargo's violations has been resolved, in a class-wide proceeding that can produce a uniform decision. ECF No. 360-6, ¶58 ("Not only is it possible to compute damages to the proposed class in a formulaic manner, it is necessary in order for each Investor's damages calculation to be consistent with damages of other Investors within the Covered Trust."); ECF No. 360-17, ¶60.

### 3. Injury, Causation and Damages Are Class-Wide Questions

Royal Park established that damages in this case are ***necessarily*** calculated on a class-wide basis, supporting predominance. R&R at 17-18; ECF No. 397 at 10-15, ECF No. 360-6, ¶¶49-58; ECF No. 360-17, ¶¶17-44, 59-71. The fact that trading records or a claims process might be used to determine a class member's specific recovery is exactly the type of inquiry that is ubiquitous in class actions and cannot possibly be a basis to deny certifications. Obj. at 14.

Wells Fargo's causation and injury assertions hinged on its failed effort to have the Court ignore the testimony of Royal Park's expert W. Scott Dalrymple. ECF No. 382 at 20-23. The R&R denied Wells Fargo's *Daubert* motion, holding that "Dalrymple's opinions regarding the ***common***

effects on the Certificates' value of the failure to cure or seek repurchase of breaching loans and servicer defaults and the methods he used to calculate the number of class members and damages can be reliably applied to the evidence in this case." R&R at 13.

Royal Park explained how its methodology calculates damages at the trust level and how those damages would be allocated to specific class members. R&R at 16-18; ECF No. 397 at 10-15; ECF No. 360-17, ¶¶17-44, 59-71. This methodology is entirely consistent with *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426, 1433 (2013), because, while Dalrymple opined on both a cash flow and certificate value measure of damages, Royal Park alleges both measures of damages in its "liability case." Dalrymple also explained how the assumptions raised by Wells Fargo could be incorporated, if relevant, into his damage model. R&R at 13; ECF No. 397 at 10-12.[4]

### 4. Statute of Limitations Defenses Require Class-Wide Answers

Assertions that statute of limitations questions will be complex to resolve are by themselves irrelevant to whether, after "carefully weigh[ing] the relationship between common and individual questions in the case," such questions support or detract from a showing of predominance.[5] *Petrobras*, 862 F.3d at 274 n.27. Assuming Wells Fargo's breaches trigger the relevant statute of limitations, the threshold inquiry is (i) whether there was a breach; and (ii) when such breaches occurred. Because Wells Fargo owes identical obligations to all certificateholders, these questions are susceptible to class-wide answers. Obj. at 7-8. Any individual inquiry needed to address this hypothetical defense would be predicated on the class-wide answer to this threshold question. Requiring each class member to establish the existence and timing of such breaches would be wildly inefficient for the parties and the Court and economically impossible for most class members.

---

[4] It is not surprising that James did not "'see how damages can be calculated on a class-wide basis.'" Opp. at 17. He was never asked to opine on the question. ECF No. 360-14, ¶17.

[5] Wells Fargo has still never even credibly shown that it has a meritorious statute of limitations defense as to *any* class member. Obj. at 15-16.

- 7 -

1395427_1

*McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), acknowledged that "the presence of individual defenses does not by its terms preclude class certification" but found that the relevant statute of limitations question turned on discovery of "the alleged injury" and that defendants had shown "a substantial number of class members were on notice of defendants' alleged fraud before the class period." *Id.* at 233. Wells Fargo has failed to make a similar showing. *E.g.*, *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2016 U.S. Dist. LEXIS 185766, at *70 (S.D.N.Y. Sept. 20, 2016) (citing *McLaughlin* and denying motion to strike where defendants had not shown "a substantial number of class members[']" claims were time-barred). Finally, Wells Fargo fails to explain how "tracing assigned claims" (Opp. at 14 n.5) distinguishes the weight of authority rejecting "'differences in the application of a statute of limitations'" as a basis to deny certification. Obj. at 15-16. *Myers*, 624 F.3d at 548, reinforces that "'Rule 23(b)(3) requires that the district court determine what questions of law or fact are common to the members of the class,'" something the R&R failed to do. Moreover, the "defense" at issue in *Myers* – whether class members were exempt employees – was "the 'mirror image' of plaintiffs' claim." *Id.* at 551. Here, whether Wells Fargo violated its contractual obligations is not the basis for the individual defenses at issue.

### B.     No Conflicts Defeat Predominance or Adequacy

The R&R concluded Royal Park had demonstrated adequacy: "[T]he Court is confident that it would zealously pursue the class's claims." R&R at 22. Wells Fargo has waived any objection to this finding. Obj. at 3 n.2. In any case, the fact that the trustee's contractual violations theoretically could have benefited some investors (Opp. at 20) is not a conflict because such an investor would not be a member of the class. ECF No. 397 at 13. Courts have rejected the notion that purported

conflicts between holders in different tranches to defeat certification.[6]  ECF No. 397 at 12-13.  Finally, Wells Fargo contends that conflicts will arise between investors who contend Wells Fargo should have resolved R&W breaches and EoDs differently.  *See* Opp. at 20-21.  But, as set forth above, Wells Fargo's obligations ran to certificateholders collectively, not individually.

### C. A Class Action Is Superior to Individual Actions, or No Actions at All

*First*, Rule 23 is designed to vindicate the "'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all,'" while not excluding from certification "cases in which individual damages run high."  *Amchem*, 521 U.S. at 617.  While Wells Fargo cherry-picks three class members who may have purchased more than $1 million of certificates in the aggregate, it ignores the rest, as well as the vast costs involved in litigating these actions – Wells Fargo has stated that it expects to spend ***over $455 million*** solely to reunderwrite the loans at issue in these related cases to support its defenses.   ECF No. 436 (151,949 loans); Transcript of 11/2/17 conference with Judge Netburn (stating that it cost $3,000 to reunderwrite each loan file).  *Second*, there is no evidence in the record that class members have a "'strong interest in individually controlling the prosecution of their own actions.'"  Opp. at 21.  The fact that only two individual lawsuits have been filed against Wells Fargo demonstrates the opposite.  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 305-06 (S.D.N.Y. 2003) ("[A]lthough scores of Individual Actions have been filed, the presence of those actions does not militate against class certification. . . .  Individual investors, small entities, and the many large investors who have not filed individual actions should not be deprived of their opportunity to pursue this action simply because some larger litigants with greater financial resources are presently pursuing parallel actions."); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2013 WL 440622, at *5 (S.D.N.Y. Jan. 23,

---

[6]    *Langbecker*, 476 F.3d at 315, upon which Wells Fargo relies, is a Fifth Circuit ERISA case, and courts in the Second Circuit have rejected its reasoning.  *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2017 WL 1273963, at *10 (S.D.N.Y. Mar. 31, 2017).

- 9 -

2013) ("Fewer than one in twenty class members have sought to maintain separate actions — the other nineteen out of twenty are entitled to the benefits of class treatment."). ***Third***, courts in this District have a wealth of experience resolving RMBS claims, and Royal Park's breach of contract and tort claims are anything but novel.

### D. Royal Park Established Typicality, Adequacy and Numerosity

Wells Fargo did not object to the R&R's typicality, adequacy and numerosity conclusions. R&R at 16-22; *see also* ECF No. 396 at 6-7, 8-13; ECF No. 397 at 12-19. It has therefore waived such objections. Obj. at 3 n.2. In any case, Royal Park previously refuted Wells Fargo's contentions that Royal Park "has an uncertain chain of ownership, adopted policies that prevented it from mitigating losses, and failed to cooperate in discovery." Opp. at 16-19. Nor has Wells Fargo provided any basis to reject the R&R's numerosity findings, which (i) found the methodology employed by Royal Park's expert to be reliable; (ii) recognized that courts "'may make common sense assumptions regarding numerosity'"; and (iii) concluded that "Royal Park has established a presumption that joinder of class members is impracticable."[7] R&R at 9-10, 16-18.

### E. In the Alternative, the Court Should Certify a Liability-Only Class

Wells Fargo's contentions that a liability-only class would not meaningfully advance the litigation are wrong. Opp. at 24-25. Determining the extent of Wells Fargo's breaches will not require any individual inquiry whatsoever, and most of Wells Fargo's authority involves individual questions of reliance not at issue here.

### III. CONCLUSION

The Court should overrule the R&R and certify the proposed Class.

---

[7] Despite numerous opportunities, Wells Fargo ***still*** has not disputed Royal Park's showing that, regardless of the exact number of class members, joinder is impractical. *See Gortat v. Capala Bros.*, No. 07 Civ. 3629 (ILG)(SMG), 2012 WL 1116495, at *3 (E.D.N.Y. Apr. 3, 2012) ("The Court has broad discretion to determine whether joinder of all members is impracticable, and in making its determination, must take into account more than simply the number of members.").

- 10 -

1395427_1

DATED:  March 21, 2018

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD

s/ Christopher M. Wood
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY
STEVEN W. PEPICH
LUCAS F. OLTS
DARRYL J. ALVARADO
HILLARY B. STAKEM
J. MARCO JANOSKI GRAY
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
stevep@rgrdlaw.com
lolts@rgrdlaw.com
dalvarado@rgrdlaw.com
hstakem@rgrdlaw.com
mjanoski@rgrdlaw.com
jsanchez@rgrdlaw.com

                        ROBBINS GELLER RUDMAN
                          & DOWD LLP
                        SAMUEL H. RUDMAN
                        58 South Service Road, Suite 200
                        Melville, NY  11747
                        Telephone:  631/367-7100
                        631/367-1173 (fax)
                        srudman@rgrdlaw.com

                        Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 21, 2018.

                                                                             s/ Christopher M. Wood
                                                                         CHRISTOPHER M. WOOD

ROBBINS GELLER RUDMAN
   & DOWD LLP
414 Union Street, Suite 900
Nashville, TN  37219
Telephone:  615/244-2203
615/252-3798 (fax)
E-mail: cwood@rgrdlaw.com

1395427_1

# Mailing Information for a Case 1:14-cv-09764-KPF-SN Royal Park Investments SA/NV v. Wells Fargo Bank, N.A.

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com,nhorstman@rgrdlaw.com

- **Amherst Advisory & Management, LLC**
  gklein@mckoolsmith.com

- **Joseph James Boylan**
  jboylan@jonesday.com,nydocket@jonesday.com

- **Harold Keith Gordon**
  hkgordon@jonesday.com,nydocket@jonesday.com

- **Kurt Michael Gosselin**
  kgosselin@jonesday.com,nydocket@jonesday.com

- **Paul Bartholomew Green**
  bartgreen@jonesday.com,nydocket@jonesday.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jason Jurgens**
  jjurgens@jonesday.com,nydocket@jonesday.com,jtreanor@JonesDay.com,tesolomon@JonesDay.com

- **Rebekah B. Kcehowski**
  rbkcehowski@jonesday.com,nydocket@jonesday.com

- **Gayle Rosenstein Klein**
  gklein@mckoolsmith.com,kmtrahan@mckoolsmith.com,gpineiro@mckoolsmith.com,gayle-klein-4119@ecf.pacerpro.com

- **Arthur C. Leahy**
  artl@rgrdlaw.com,susanw@rgrdlaw.com

- **Elisa Lee**
  elee@mckoolsmith.com,elisa-lee-0388@ecf.pacerpro.com

- **Traci Leigh Lovitt**
  tlovitt@jonesday.com,nydocket@jonesday.com

- **Lucas F. Olts**
  lolts@rgrdlaw.com,karenc@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Steven W. Pepich**
  stevep@rgrdlaw.com

- **Clay J. Pierce**
  clay.pierce@dbr.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com,susanw@rgrdlaw.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Tracy V. Schaffer**
  tschaffer@jonesday.com,nydocket@jonesday.com

- **Howard Fredrick Sidman**
  hfsidman@jonesday.com,nydocket@jonesday.com

- **Eric Peter Stephens**
  epstephens@jonesday.com,nydocket@jonesday.com

- **Jayant W. Tambe**
  jtambe@jonesday.com,mmarcucci@jonesday.com,nydocket@jonesday.com

- **Michael O. Thayer**
  mothayer@jonesday.com,nydocket@jonesday.com

- **Christopher M. Wood**
  cwood@rgrdlaw.com,e_file_sd@rgrdlaw.com,HDeshmukh@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`